UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

E. JEAN CARROLL,                                  Civil Action No.:
                                                  1:20-cv-7311-LAK-JLC

                    *Plaintiff*,

        v.                                        <u>**NOTICE OF APPEAL**</u>

DONALD J. TRUMP, in his personal capacity,

                    *Defendant*,

------------------------------------------------------------X

     Notice is hereby given that the Defendant, Donald J. Trump, appeals to the United States

Court of Appeals for the Second Circuit from the Memorandum Opinion (Corrected) of the Hon.

Lewis A. Kaplan. U.S.D.J., entered July 5, 2023 (Dkt. 173), attached hereto as Exhibit A, denying

Defendant's Motion for Summary Judgment (Dkt. 107).


Dated: New York, New York              HABBA MADAIO & ASSOCIATES LLP
       July 19, 2023

                                       _____
                                       Michael T. Madaio, Esq.
                                       1430 US Highway 206, Suite 240
                                       Bedminster, New Jersey 07921
                                                 -and-
                                       112 West 34th Street, 17th & 18th Floors
                                       New York, New York 10120
                                       mmadaio@habbalaw.com
                                       Telephone: (908) 869-1188
                                       Facsimile: (908) 450-1881


To:     All Counsel of Record (via ECF)

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

E. JEAN CARROLL,

                Plaintiff,

        -against-                            20-cv-7311 (LAK)

DONALD J. TRUMP,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OPINION DENYING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## (Corrected)


        Appearances:

                Roberta Kaplan
                Joshua Matz
                Shawn Crowley
                Matthew Craig
                Trevor Morrison
                Michael Ferrara
                KAPLAN HECKER & FINK LLP

                *Attorneys for Plaintiff*

                Alina Habba
                Michael T. Madaio
                HABBA MADAIO & ASSOCIATES LLP

                *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

        This is a defamation case brought by writer E. Jean Carroll against President Donald

Trump, as he then was, for statements Mr. Trump made in June 2019 shortly after Ms. Carroll publicly accused him of sexual assault. In those statements, Mr. Trump denied Ms. Carroll's accusation, stated that he "has no idea who this woman is," and suggested that she fabricated her accusation for ulterior and improper purposes, including to increase sales of her then-forthcoming book in which she discusses having been sexually assaulted by Mr. Trump and other men.

In a second and very closely related case ("*Carroll II*"), Ms. Carroll sued Mr. Trump for the alleged sexual assault itself and for defamation based on a statement that Mr. Trump published on his social media platform in October 2022 that was substantially similar to his June 2019 statements. That case was tried in April and May 2023. The jury unanimously found that Mr. Trump had sexually abused Ms. Carroll and defamed her in his October 2022 statement.[1]  It awarded Ms. Carroll a total of $5 million in compensatory and punitive damages: $2.02 million for her sexual assault claim, and $2.98 million for her defamation claim.[2]

In this case ("*Carroll I*"), Ms. Carroll seeks damages and other relief for defamation

---

[1]

It found also that Ms. Carroll had not established that Mr. Trump "raped" her within the relevant definition of that term in the New York Penal Law.

[2]

The Court assumes familiarity with its prior decisions, which describe in detail the facts and procedural histories of both cases. Dkt 32, *Carroll v. Trump*, 498 F. Supp. 3d 422 (S.D.N.Y. 2020), *rev'd in part, vacated in part*, 49 F.4th 759 (2d Cir. 2022); Dkt 73, *Carroll v. Trump*, 590 F. Supp. 3d 575 (S.D.N.Y. 2022); Dkt 96, *Carroll v. Trump*, No. 20-cv-7311 (LAK), 2022 WL 6897075 (S.D.N.Y. Oct. 12, 2022); Dkt 145, *Carroll v. Trump*, No. 20-cv-7311 (LAK), 2023 WL 2441795 (S.D.N.Y. Mar. 10, 2023); Doc. No. 22-cv-10016 (*Carroll II),* Dkt 38, *Carroll v. Trump*, No. 22-cv-10016 (LAK), 2023 WL 185507 (S.D.N.Y. Jan. 13, 2023); *Carroll II*, Dkt 56, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2006312 (S.D.N.Y. Feb. 15, 2023); *Carroll II*, Dkt 92, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 3000562 (S.D.N.Y. Mar. 20, 2023); *Carroll II*, Dkt 95, *Carroll v. Trump*, No. 22-cv-10016 (LAK), 2023 WL 2652636 (S.D.N.Y. Mar. 27, 2023); *Carroll II*, Dkt 96, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2669790 (S.D.N.Y. Mar. 28, 2023).

Except where preceded by *"Carroll II"*, "Dkt" references are to the docket in this case.

for Mr. Trump's June 2019 statements only.[3]  The matter now is before me on  Mr. Trump's motion for summary judgment dismissing the action on four grounds:

    (1)     Mr. Trump is entitled to absolute presidential immunity

    (2)     Mr. Trump's statements were not defamatory *per se* and Ms. Carroll cannot establish special damages

    (3)      the majority of Mr. Trump's statements were nonactionable opinion

    (4)     Ms. Carroll consented to Mr. Trump's allegedly defamatory statements.[4]

He argues also that punitive damages in any case would be unwarranted on Ms. Carroll's defamation claim. His arguments are without merit.

### Facts

*Mr. Trump's Allegedly Defamatory June 2019 Statements*

        Ms. Carroll's accusation that Mr. Trump sexually assaulted her first became public on June 21, 2019, when *New York* magazine published on the Internet an excerpt from her then-forthcoming book in which Ms. Carroll described Mr. Trump's alleged assault of her, which she referred to as "rape."  Over the next several hours and days, Mr. Trump issued three allegedly

---

[3]       When Ms. Carroll brought this lawsuit in 2019, she presumably was foreclosed from suing for sexual battery by New York's then-existing statute of limitations. As noted above, the Adults Survivors Act enacted by New York in 2022 temporarily revived the ability to bring such claims without regard to the otherwise applicable statute of limitations. She therefore was permitted to bring that claim in her second lawsuit now referred to as *Carroll II*.

[4]       For avoidance of confusion: In his memorandum, Mr. Trump argues what is identified as ground four here before what is identified as ground three here. This opinion discusses Mr. Trump's arguments in the sequence noted above.

defamatory statements in response to Ms. Carroll's accusation.

*Statement One*

Two hours and seventeen minutes after Ms. Carroll's accusation became public, Mr. Trump published this statement on Twitter[5]:

"Regarding the 'story' by E. Jean Carroll, claiming she once encountered me at Bergdorf Goodman 23 years ago. I've never met this person in my life. She is trying to sell a new book—that should indicate her motivation. It should be sold in the fiction section.

"Shame on those who make up false stories of assault to try to get publicity for themselves, or sell a book, or carry out a political agenda—like Julie Swetnick who falsely accused Justice Brett Kavanaugh. It's just as bad for people to believe it, particularly when there is zero evidence. Worse still for a dying publication to try to prop itself up by peddling fake news—it's an epidemic.

"Ms. Carroll & New York Magazine: No pictures? No surveillance? No video? No reports? No sales attendants around?? I would like to thank Bergdorf Goodman for confirming that they have no video footage of any such incident, because it never happened.

"False accusations diminish the severity of real assault. All should condemn false accusations and any actual assault in the strongest possible terms.

---

[5]

Mr. Trump testified in his deposition that he provided the statement to his staff to give to the press. Dkt 135-3 (Def. Dep.) at 59:20-23.

"If anyone has information that the Democratic Party is working with Ms.

Carroll or New York Magazine, please notify us as soon as possible. The world

should know what's really going on. It is a disgrace and people should pay dearly for

such false accusations."[6]

*Statement Two*

The next day, Mr. Trump made the following comments that were reported in the

national press and published in a White House press release entitled "Remarks by President Trump

Before Marine One Departure" issued on June 22, 2019:

"[Reporter]: [Y]ou had said earlier that you never met E. Jean Carroll. There

was a photograph of you and her in the late 1980's—

"[Trump]: I have no idea who this woman is. This is a woman who has also

accused other men of things, as you know. It is a totally false accusation. I think she

was married—as I read; I have no idea who she is—but she was married to a,

actually, nice guy, Johnson—a newscaster.

"[Reporter]: You were in a photograph with her.

"[Trump]: Standing with coat on in a line—give me a break—with my back

to the camera. I have no idea who she is. What she did is—it's terrible, what's going

---

[6]

Dkt 157-1 (Pl. Amend. Compl.) at 15-16, ¶ 83.

On June 13, 2023, this Court granted Ms. Carroll's motion to amend her complaint. The amended complaint did not add any new claims or otherwise change the focus of her original complaint. Unless indicated otherwise, citations to Ms. Carroll's complaint are to the amended complaint.

on. So it's a total false accusation and I don't know anything about her. And she's made this charge against others.

"And, you know, people have to be careful because they're playing with very dangerous territory. And when they do that—and it's happening more and more. When you look at what happened to Justice Kavanaugh and you look at what's happening to others, you can't do that for the sake of publicity.

"New York Magazine is a failing magazine. It's ready to go out of business, from what I hear. They'll do anything they can. But this was about many men, and I was one of the many men that she wrote about. It's a totally false accusation. I have absolutely no idea who she is. There's some picture where we're shaking hands. It looks like at some kind of event. I have my coat on. I have my wife standing next to me. And I didn't know her husband, but he was a newscaster. But I have no idea who she is—none whatsoever.

"It's a false accusation and it's a disgrace that a magazine like New York—which is one of the reasons it's failing. People don't read it anymore, so they're trying to get readership by using me. It's not good.

"You know, there were cases that the mainstream media didn't pick up. And I don't know if you've seen them. And they were put on Fox. But there were numerous cases where women were paid money to say bad things about me. You can't do that. You can't do that. And those women did wrong things—that women were actually paid money to say bad things about me.

"But here's a case, it's an absolute disgrace that she's allowed to do that."[7]

*Statement Three*

Finally, on June 24, 2019, Mr. Trump stated in an interview with the newspaper *The Hill*: "I'll say it with great respect: Number one, she's not my type. Number two, it never happened. It never happened, OK?"[8]

*Ms. Carroll's Defamation Claim*

Ms. Carroll initiated this lawsuit against Mr. Trump in November 2019 for defaming her in these statements. The case originally began in a state court in New York before being removed to this Court for reasons explained in the Court's previous decisions.[9] Ms. Carroll alleges that:

"When [her] account [of the alleged assault] was published, Trump lashed out with a series of false and defamatory statements. He denied the sexual assault. But there was more: he also denied ever having met Carroll or even knowing who she was. Through express statements and deliberate implications, he accused Carroll of fabricating her allegations in order to increase book sales, carry out a political agenda, advance a conspiracy with the Democratic Party, and make money. He also

---

[7]
    *Id.* at 18, ¶ 92.

[8]
    *Id.* at 20, ¶ 98.

[9]
    *E.g.*, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2006312, at *4 (S.D.N.Y. Feb. 15, 2023); *Carroll v. Trump*, 498 F. Supp. 3d 422 (S.D.N.Y. 2020), *rev'd in part, vacated in part*, 49 F.4th 759 (2d Cir. 2022), *remanded in part*, 66 F.4th 91 (2d Cir. 2023).

deliberately implied that she had falsely accused other men of assault. For good measure, he insulted her physical appearance."[10]

The core of Ms. Carroll's defamation claim is that Mr. Trump lied in accusing her of fabricating her sexual assault allegation against him in order to increase sales of her book and for other improper purposes and that he thus caused Ms. Carroll professional and reputational harm as well as emotional pain and suffering.

*Mr. Trump's Answer*

In his formal answer to Ms. Carroll's complaint, which originally was filed in state court in February 2020, Mr. Trump raised nine affirmative defenses, including as relevant here that:

- "[t]he [c]omplaint fails to state a cause of action,"

- "Plaintiff's claim is barred because defendant is immune, under the Supremacy Clause of the United States Constitution, from suit in state court while serving as President of the United States,"

- "[t]he allegedly defamatory statements are privileged or protected by one or more immunities, including, but not limited to, under the Constitution of the United States,"

- "Plaintiff is not entitled to punitive damages as a matter of law," and

- "Plaintiff has not sufficiently alleged defamation *per se*," and

---

[10]     Dkt 157-1 (Pl. Amend. Compl.) at 3, ¶ 11.

9

• "Plaintiff has failed to plead damages with the required specificity."[11]

Noticeably missing from this list is any mention of the absolute presidential immunity defense that Mr. Trump now asserts for the first time.[12]

## *Discussion*

*Legal Standard*

The standards for summary judgment are well established. In brief:

"Summary judgment may be granted only where there is no genuine issue as to any material fact and the moving party . . . is entitled to a judgment as a matter of law. . . . In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. . . . To grant the motion, the court must determine that there is no genuine issue of material fact to be tried. . . . The Supreme Court teaches that 'all that is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.' . . . It is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the

---

[11]    Dkt 14-69 (Def. Answer).

[12]    Nor did Mr. Trump seek to add this defense to his answer when he moved to amend his answer in January 2022 to add an affirmative defense and counterclaim based on New York's "anti-SLAPP" law. Dkt 63.

jury, not for the court on a motion for summary judgment.'"[13]

"A material fact is one that might 'affect the outcome of the suit under the governing law,' and a dispute about a genuine issue of material fact occurs if the evidence is such that 'a reasonable [fact finder] could return a verdict for the nonmoving party.'"[14]

*Ground One: Absolute Presidential Immunity*

In *Nixon v. Fitzgerald*,[15] the Supreme Court held that the President of the United States is entitled to "absolute Presidential immunity from damages liability for acts within the 'outer perimeter' of his official responsibility."[16]  Mr. Trump argues that the allegedly defamatory statements in this case came within this "outer perimeter" because he made those statements "in direct response to Plaintiff's allegations which impugned his character and, in turn, threatened his ability to effectively govern the nation."[17]

Before the Court even may address the merits of Mr. Trump's absolute immunity defense, it must decide a threshold question: whether Mr. Trump is barred from raising this defense

---

[13]
     *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir.2006) (alterations in original) (citations omitted).

[14]
     *Madison Nat. Life Ins. Co. v. Travelers Prop. Cas. Co. of Am.*, 462 F. App'x 102, 103–04 (2d Cir. 2012) (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[15]
     457 U.S. 731 (1982).

[16]
     *Id.* at 756.

[17]
     Dkt 109 (Def. Mem.) at 17.

because he waived it by failing to raise it earlier. Mr. Trump does not dispute that, under the controlling rules of civil procedure, he waived the defense by failing to plead it as an affirmative defense in his answer.[18]  Instead, he contends that any such waiver can have no effect because absolute presidential immunity is an unwaivable obstacle to any court exercising subject matter jurisdiction over any claim within its ambit. In the alternative, if the Court determines that absolute presidential immunity can be waived, Mr. Trump argues that his motion for summary judgment should be construed as a motion for leave to amend his answer so that he can assert the absolute immunity defense.  Neither argument is persuasive.

### *Absolute Presidential Immunity Can Be Waived*

Mr. Trump argues that "whether presidential immunity applies in this case is a non-waivable question of subject matter jurisdiction."[19]  His argument relies on the theory that absolute presidential immunity is non-waivable because it is different from absolute immunity available to judges and prosecutors – which decidedly is waivable – due to what he claims, mistakenly, is "its

---

[18]

In the table of contents to Mr. Trump's reply brief, the first argument heading reads: "Defendant did not waive his entitlement to presidential immunity."  Dkt 122 (Def. Reply Mem.) at i. However, that heading never reappears in his brief. Instead, the first heading of his argument section is "Presidential immunity cannot be waived," followed by his argument that Ms. Carroll's claim that he waived his absolute immunity defense by failing to raise it in his answer "is flawed in its premise" because absolute presidential immunity is not waivable. *Id.* at 1. In a recent letter, Mr. Trump again did not dispute that he waived the defense and instead wrote that he "unequivocally stated that absolute immunity is a non-waivable question of subject matter jurisdiction." Dkt 160 at 2. It accordingly is clear that Mr. Trump does not dispute that if absolute presidential immunity can be waived, he in fact waived it in this case.

[19]

Dkt 122 (Def. Reply Mem.) at 5.

unique rooting in the separation of powers doctrine."[20]

Absolute presidential immunity is no such anomaly. There is nothing so exceptional about absolute immunity available to a president that makes it non-waivable unlike other types of absolute immunity. For starters, "[m]ost immunities are affirmative defenses."[21] Failure to assert an affirmative defense, including absolute immunity, in an answer or other responsive pleading results in waiver of that defense.[22] Moreover, as the Supreme Court has stated, "[t]here is no

---

[20]      *Id.* at 1.

[21]      *In re Stock Exchanges Options Trading Antitrust Litig.*, 317 F.3d 134, 151 (2d Cir. 2003). *See also San Filippo v. U.S. Tr. Co. of New York*, 737 F.2d 246, 252 (2d Cir. 1984) ("In their answer and amended answer, defendants asserted several affirmative defenses, including their absolute immunity from § 1983 liability for their grand jury testimony or prior discussions with the prosecutor.").

[22]      As noted above, Mr. Trump's answer first was filed in a state court in New York before this case was removed to this Court. Assuming his answer was governed by New York's Civil Practice Law and Rules, he was required to plead absolute immunity as an affirmative defense in his answer or in a pre-answer motion. N.Y. CPLR § 3018(b) ("A party shall plead all matters which if not pleaded would be likely to take the adverse party by surprise or would raise issues of fact not appearing on the face of a prior pleading."); *Pitts v. State*, 166 A.D.3d 1505, 1506 (4th Dept. 2018) ("Defendant waived that affirmative defense [of governmental function immunity] inasmuch as defendant did not plead it in its amended answer.") (citing cases).

The result would be the same if Mr. Trump's answer were governed by Federal Rule of Civil Procedure 8(c), which requires a party to "affirmatively state any . . . affirmative defense" in responding to a pleading. *E.g.*, 5 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 1278 (4th ed.) ("It is a frequently stated proposition of virtually universal acceptance by the federal courts that a failure to plead an affirmative defense as required by [Rule] 8(c) results in the waiver of that defense and its exclusion from the case.") (citing cases); *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 154 n.3 (2d Cir. 2006) ("Appellees mention an absolute immunity defense in passing, but that defense is considered waived since it only appears in a footnote. . . . And we decline to overlook the waiver."); *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 428 (3d Cir. 2003) ("Absolute immunity is an affirmative defense that should be asserted in an answer."); *Collyer v. Darling*, 98 F.3d 211, 222 (6th Cir. 1996) ("It is well established that unless affirmatively pleaded, the defenses of qualified and absolute immunity are waived."); *Bentley v. Cleveland Cnty. Bd. of Cnty. Comm'rs*, 41 F.3d 600, 604 (10th Cir. 1994) ("[T]his

authority whatever for the proposition that absolute- and qualified-immunity defenses pertain to the court's jurisdiction."[23] To prevail in his argument, Mr. Trump must demonstrate that absolute immunity available to a president deviates from these well-settled norms. He has not done so.

   The focal point of Mr. Trump's reasoning is the foundation of absolute presidential immunity in separation of powers principles. His argument goes: (1) absolute presidential immunity is grounded in the separation of powers doctrine, (2) "the separation of powers doctrine is a creature of Article III standing" and "Article III standing, in turn, is an issue of subject matter jurisdiction,"[24] and (3) absolute presidential immunity therefore is an unwaivable obstacle to the exercise of subject matter jurisdiction. His theory fails for two reasons. First, absolute presidential immunity is not the only type of absolute immunity that raises separation of powers concerns. Second, and more importantly, "separation of powers" is not a magic phrase that automatically transforms any issue it touches into an impediment to the exercise of subject matter jurisdiction. Indeed, a determination that absolute presidential immunity is an issue of subject matter jurisdiction would present its own separation of powers concerns and contravene many of the same principles that underpin absolute presidential immunity.

   The Supreme Court in *Nixon v. Fitzgerald* determined that absolute presidential

---

Court has long held that both qualified and absolute immunity are affirmative defenses that must be pleaded."); *Cozzo v. Tangipahoa Par. Council--President Gov't*, 279 F.3d 273, 283 (5th Cir. 2002) ("Absolute immunity is an affirmative defense that is waived if it is not pleaded.").

[23]

*Nevada v. Hicks*, 533 U.S. 353, 373 (2001). *See also Mordkofsky v. Calabresi*, 159 F. App'x 938, 939 (11th Cir. 2005) ("[J]udicial immunity is an affirmative defense and does not divest the court of subject matter jurisdiction.").

[24]

Dkt 122 (Def. Reply Mem.) at 3.

immunity is "a functionally mandated incident of the President's unique office, rooted in the constitutional tradition of the separation of powers and supported by our history."[25]  In reaching its decision, the Court discussed common law precedents that recognized immunity for government officials, including absolute immunity for judges and prosecutors.[26]  These precedents, the Court noted, "have been guided by the Constitution, federal statutes, and history" and "at least in the absence of explicit constitutional or congressional guidance," they "have been informed by the common law."[27]  With respect to absolute presidential immunity, the Court explained:

> "Because the Presidency did not exist through most of the development of common law, any historical analysis must draw its evidence primarily from our constitutional heritage and structure. Historical inquiry thus merges almost at its inception with the kind of 'public policy' analysis appropriately undertaken by a federal court. This inquiry involves policies and principles that may be considered implicit in the nature of the President's office in a system structured to achieve effective government under a constitutionally mandated separation of powers."[28]

The heart of the separation of powers doctrine invoked in *Fitzgerald* is respect for the independence of the three branches of government. "In the often-quoted words of Justice Jackson: 'While the Constitution diffuses power the better to secure liberty, it also contemplates that practice

---

[25]  457 U.S. at 749.

[26]  *Id.* at 744-48.

[27]  *Id.* at 747.

[28]  *Id.* at 748.

will integrate the dispersed powers into a workable government. It enjoins upon its branches separateness but interdependence, autonomy but reciprocity.'"[29]  Accordingly, one of the central bases justifying absolute *judicial* immunity is the need to protect the "independence without which no judiciary can be either respectable or useful."[30]  Absolute *prosecutorial* immunity, although perhaps a bit removed from the constitutional doctrine of separation of powers, similarly is rooted in the "concern that harassment by unfounded litigation" could "shade [a prosecutor's] decisions instead of exercising the independence of judgment required by his public trust."[31]  Given the overlaps in reasoning, it is unsurprising that the Court in *Fitzgerald* compared explicitly the absolute immunity it recognized for the president with that already recognized for judges and prosecutors.[32]

---

[29]

> *Morrison v. Olson*, 487 U.S. 654, 694 (1988) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) (Jackson, J., concurring)).

[30]

> *Bradley v. Fisher*, 80 U.S. 335, 347 (1871). *See also id.* ("If civil actions could be maintained in such cases against the judge, because the losing party should see fit to allege in his complaint that the acts of the judge were done with partiality, or maliciously, or corruptly, the protection essential to judicial independence would be entirely swept away.").

[31]

> *Imbler v. Pachtman*, 424 U.S. 409, 423 (1976).

[32]

> 457 U.S. at 758 ("For the President, as for judges and prosecutors, absolute immunity merely precludes a particular private remedy for alleged misconduct in order to advance compelling public ends."); *id.* at 751-52 ("As is the case with prosecutors and judges— for whom absolute immunity now is established—a President must concern himself with matters likely to 'arouse the most intense feelings.') (citation omitted).  *See also Trump v. Vance*, 140 S. Ct. 2412, 2426 (2020) ("We instead [(in *Fitzgerald*)] drew a careful analogy to the common law absolute immunity of judges and prosecutors, concluding that a President, like those officials, must 'deal fearlessly and impartially with the duties of his office'—not be made 'unduly cautious in the discharge of [those] duties" by the prospect of civil liability for official acts.'") (quoting *Fitzgerald*, 457 U.S. at 751-752 & n.32).

Perhaps aware of these comparisons, Mr. Trump does not argue specifically that absolute presidential immunity is distinct from absolute judicial and prosecutorial immunity by its foundation in separation-of-powers principles.  Instead, he cites a footnote in *Harlow v. Fitzgerald*, in which the Supreme Court stated that "the recognition of absolute immunity

Moreover, the fact that presidential immunity is grounded in separation of powers principles does not convert it into a jurisdictional issue. Mr. Trump relies chiefly on two points in support of his argument to the contrary. Neither withstands analysis.

First, he quotes the following from *Fitzgerald*:

> "[O]ur cases [] have established that a court, before exercising jurisdiction, must balance the constitutional weight of the interest to be served against the dangers of intrusion on the authority and functions of the Executive Branch. When judicial action is needed to serve broad public interests—as when the Court acts, not in derogation of the separation of powers, but to maintain their proper balance . . . or to vindicate the public interest in an ongoing criminal prosecution . . . the exercise of jurisdiction has been held warranted. In the case of [a] merely private suit for damages based on a President's official acts, we hold it is not."[33]

Mr. Trump's selected passage, however, omits the sentence preceding it, that "[i]t is settled law that the separation-of-powers doctrine does not bar every exercise of jurisdiction over the President of the United States."[34]   Even more to the point, "[j]urisdiction . . . is a word of many, too many,

---

for all of a President's acts in office derives in principal part from factors unique to his constitutional responsibilities and station. Suits against other officials—including Presidential aides—generally do not invoke separation-of-powers considerations to the same extent as suits against the President himself." 457 U.S. 800, 811 n.17 (1982). *Harlow*, however, dealt with the scope of immunity available to aides and advisers of the President and held that presidential aides are entitled to qualified, rather than absolute, immunity.  It therefore is inapposite here.

[33]

Dkt 122 (Def. Reply Mem.) at 2 (alterations in original) (emphasis omitted) (quoting *Fitzgerald*, 457 U.S. at 754).

[34]

*Fitzgerald*, 457 U.S. at 753-54.

meanings."[35]  And the Court in *Fitzgerald* did not use the word "jurisdiction" in reference to a federal court's fundamental ability to adjudicate a case on its merits. Indeed, it there specifically left unresolved the "the immunity question as it would arise if Congress expressly had created a damages action against the President of the United States."[36]  If the Court had understood presidential immunity as a restriction on a court's exercise of subject matter jurisdiction, there would have been no need for the Court to have left that question open. The possibility would have been foreclosed by the long-standing principle that Congress cannot expand the scope of federal courts' jurisdiction beyond what is permitted by Article III.[37]

This detail helps to underscore the confusion in Mr. Trump's second point that "the separation of powers doctrine is a creature of Article III standing."[38]  As the cases Mr. Trump quotes make clear, it is Article III standing that "is built on separation-of-powers principles," not *vice versa*.[39]  Therefore, although Article III standing of course is an issue of subject matter jurisdiction, it does not follow that the separation of powers doctrine in all circumstances is as well.  Mr. Trump's

---

[35]  *Wilkins v. United States*, 143 S. Ct. 870, 875 (2023) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006)).

[36]  *Fitzgerald*, 457 U.S. at 748 n.27.

[37]  *Marbury v. Madison*, 5 U.S. 137, 138 (1803); *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 65 (1996); *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 66 (2d Cir. 2012) ("Neither we nor Congress may [expand the federal courts' subject matter jurisdiction], for the Constitution alone defines the outer limits of subject-matter jurisdiction.").

[38]  Dkt 122 (Def. Reply Mem.) at 3.

[39]  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

18

argument in this respect lacks logical coherence and plainly is frivolous.

More fundamentally, Mr. Trump's argument that absolute presidential immunity is jurisdictional runs afoul of many of the same principles on which the immunity is based. As the Supreme Court stated in *Clinton v. Jones*,[40] the "dominant concern [in *Fitzgerald*] was with the diversion of the President's attention during the decisionmaking process caused by needless worry as to the possibility of damages actions stemming from any particular official decision."[41] The Court was concerned with intruding on the president's scope of authority and ability to make decisions to govern effectively. It sought to protect the president's autonomy, not diminish it by denying the president the ability to choose whether or not to defend himself or herself in a civil lawsuit in federal court. As law professor Akhil Amar and former Acting Solicitor General Neal Katyal wrote:

> "[The president's] immunity is of course waivable . Surely the President in whatever spare time he has should be allowed to litigate civil damage actions — or to watch basketball for that matter — but he should not be legally obliged to do either. As a practical matter, politics may sometimes create strong pressure to litigate now — or, again, to watch a basketball game — but political pressure should not be confused with legal obligation. In a civil damage action in the early 1960s, then-President John Kennedy asserted litigation immunity under a statute. When that failed, he settled the case instead of asserting presidential immunity . . . ."[42]

---

[40]

520 U.S. 681 (1997).

[41]

*Id.* at 694 n.19.

[42]

Akhil Reed Amar & Neal Kumar Katyal, *Executive Privileges and Immunities: The Nixon and Clinton Cases*, 108 HARV. L. REV. 701, 726 n.53 (1995).

19

Yet the rule Mr. Trump advocates would remove this choice from the president. Under Mr. Trump's approach, each time a president is sued in federal court, the court would be obligated to raise and resolve the issue of absolute presidential immunity *sua sponte* and, if the defense applied, it would be obligated to dismiss the case for want of subject matter jurisdiction *even if* the president wished to litigate in that case. Such a requirement would contradict the results in many of the other civil lawsuits filed against Mr. Trump for actions during his presidency, in at least one of which, as Ms. Carroll points out, Mr. Trump agreed with the plaintiff that absolute presidential immunity was not a "threshold issue[] that must be decided before reaching the merits."[43]  More importantly, it would risk encroachment by the judiciary into the president's domain by eliminating the president's ability to choose. There is no indication in *Fitzgerald* or in its progeny that absolute presidential immunity ever was meant to be so patronizing.

*Leave to Amend Mr. Trump's Answer Is Not Warranted*

In the alternative, Mr. Trump argues that the Court should construe his motion for summary judgment as a motion for leave to amend his answer to resurrect the previously waived absolute presidential immunity defense. The standard governing this request is clear. Although Rule

---

[43]

K&D, LLC v. Trump Old Post Off., LLC, No. CV 17-731 (RJL), 2018 WL 6173449, at *3 n.2 (D. D.C. Nov. 26, 2018), *aff'd*, 951 F.3d 503 (D.C. Cir. 2020) (emphasis omitted).

There possibly is an argument that Mr. Trump is judicially estopped from taking the opposite position now in this case. *See Clark v. AII Acquisition, LLC*, 886 F.3d 261, 264 (2d Cir. 2018) ("[T]he equitable doctrine of judicial estoppel . . . 'prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding.'") (citation omitted).  Given that neither party has briefed this issue and it is unnecessary to my decision, I do not address it here.

15(a) provides that leave to amend "shall be freely given when justice so requires,"[44] "it is within the sound discretion of the district court to grant or deny leave to amend."[45] "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."[46]

      Mr. Trump's request is denied on two independent grounds. First, it is denied on the ground that the proposed amendment would be futile. In the alternative, it is denied on the ground that Mr. Trump delayed unduly in raising his presidential immunity defense and granting his request would prejudice Ms. Carroll unfairly.

*Futility of Mr. Trump's Proposed Amendment*

      A motion for leave to amend an answer to assert an affirmative defense may be denied as futile when the affirmative defense would be meritless.[47] "In fact, it is unexceptional for federal courts to deny leave to amend on the basis of futility where the proposed amended pleading would not withstand a motion to dismiss."[48]

---

[44]    Fed. R. Civ. P. 15(a).

[45]    *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted).

[46]    *Id*.

[47]    *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *Quanta Specialty Lines Ins. Co. v. Investors Capital Corp.*, 403 F. App'x 530, 532–33 (2d Cir.2010)*; Fireman's Fund Ins. Co. v. Krohn*, No. 91-cv-3546 (PKL), 1993 WL 299268, at *3 (S.D.N.Y. Aug. 3, 1993) (citing cases).

[48]    *Carroll v. Trump*, 590 F. Supp. 3d 575, 579 (S.D.N.Y. 2022) (citing cases).

As noted above, the president is entitled to absolute immunity from liability in civil damages lawsuits "for acts within the 'outer perimeter' of [the president's] official responsibility."[49] The expansive scope of this immunity is based on "the special nature of the President's constitutional office and functions," the president's "discretionary responsibilities in a broad variety of areas, many of them highly sensitive," and the "difficult[y] [in] determin[ing] which of the President's innumerable 'functions' encompass[] a particular action."[50]  Implicit in that statement of the scope of presidential immunity, however, is the acknowledgment that there indeed is an "outer perimeter" of the president's official duties, and that the president is not immune from liability for acts outside that perimeter. As the Supreme Court explained in *Jones*:

> "The principal rationale for affording certain public servants immunity from suits for money damages arising out of their official acts is inapplicable to unofficial conduct. . . .  As we explained in *Fitzgerald*, 'the sphere of protected action must be related closely to the immunity's justifying purposes.' . . . Because of the President's broad responsibilities, we recognized in that case an immunity from damages claims arising out of official acts extending to the 'outer perimeter of his authority.' . . . But we have never suggested that the President, or any other official, has an immunity that extends beyond the scope of any action taken in an official capacity."

> "Moreover, when defining the scope of an immunity for acts clearly taken *within* an official capacity, we have applied a functional approach. 'Frequently our

---

[49]

    *Fitzgerald*, 457 U.S. at 756.

[50]

    *Id*.

decisions have held that an official's absolute immunity should extend only to acts in performance of particular functions of his office.' . . . As our opinions have made clear, immunities are grounded in 'the nature of the function performed, not the identity of the actor who performed it.'"[51]

Mr. Trump argues that he is entitled to absolute presidential immunity because he "made the three alleged defamatory statements in direct response to Plaintiff's allegations which impugned his character and, in turn, threatened his ability to effectively govern the nation."[52]  He states that:

> "As both the leader of the nation and head of the Executive Branch, [he] could not sit idly while a 'media frenzy' erupted around allegations that attempted to paint him as a rapist. Indeed, faced with this widely-reported, unprovoked attack on his character, the President had a duty to respond; at a minimum, this action was necessary to 'maintain the continued trust and respect of [his] constituents' and to 'preserve his ability to carry out his [] responsibilities.' . . . Thus, it cannot be reasonably disputed that [Mr. Trump's] conduct was 'presidential' in nature because he was addressing an issue of grave public concern that weighed on the character and competency of the leader of the nation."[53]

Mr. Trump accordingly contends that his responses to Ms. Carroll's accusation "fell squarely within

---

[51]  520 U.S. at 692–95 (emphasis in original) (citations omitted).

[52]  Dkt 109 (Def. Mem.) at 17.

[53]  *Id.* (citations omitted).

the 'outer perimeter' of [his] official duties as President."[54]

The fatal flaw in Mr. Trump's reasoning is that he ignores the precise acts that are the subject of this lawsuit. For the sake of argument, the Court assumes that, when Mr. Trump responded to Ms. Carroll's sexual assault accusation, he was addressing a matter of public concern because the accusation "impugned his character and, in turn, threatened his ability to effectively govern the nation."[55] It accepts also, for the sake of argument, that the president's speech on a matter of public concern comes within the president's official responsibilities. These points, however, do not lead to the conclusion that Mr. Trump's statements in this case came within the outer perimeter of his official duties as president. As Judge Mehta thoughtfully wrote in another case where Mr. Trump asserted an absolute presidential immunity defense, an analysis with which this Court agrees:

"[T]o say that speaking on matters of public concern is a function of the presidency does not answer the question at hand: Were President Trump's words in this case uttered in performance of official acts, or were his words expressed in some other, unofficial capacity? The President's proposed test—that whenever and wherever a President speaks on a matter of public concern he is immune from civil suit—goes too far. It mirrors what the Supreme Court has said cannot be the basis for absolute immunity: '[T]o construct an immunity from suit for unofficial acts

---

[54] *Id.* at 16.

[55] *Id.* at 17. *See Snyder v. Phelps,* 562 U.S. 443, 453 (2011) ("Speech deals with matters of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' . . . or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public[.]'") (citations omitted).

grounded purely in the identity of [the President's] office is unsupported by precedent.' . . . And the Supreme Court has recognized different capacities in which the person occupying the Office of the President can act: 'Presidents and other officials face a variety of demands on their time, . . . some private, some political, and some as a result of official duty.' . . . Thus, to say that the President spoke on a matter of public concern does not dispositively answer the question of whether he enjoys absolute immunity for such speech.

"Consider some examples. At a rally promoting his reelection, an incumbent President touts his policy accomplishments and makes promises about a second term, but during his speech he instructs members of the crowd to 'punch' a protester 'in the face right now.' Or, take a President who speaks at a party fundraising event before a group of high-dollar donors, where he not only discusses pending legislation but also falsely and with malice accuses a political opponent who is blocking the legislation of running a child-trafficking operation. Or, consider a President who appears at a campaign event for a candidate of his party who is running for Congress, and during his remarks touts the candidate because his election will help advance his agenda, but also calls on the crowd to destroy property as a sign of support. In each of these scenarios, the conduct of the President comes in the context of words uttered on matters of public concern, but it is doubtful that anyone would consider the President immune from tort liability for harm resulting from his speech. To be sure, these scenarios may seem far-fetched, but they illustrate an important point: blanket immunity cannot shield a President from suit merely because his words touch on

matters of public concern. *The context in which those words are spoken and what is said matter.*[56]

The conduct at issue here consists not only of what Mr. Trump did (*i.e.*, make public statements in response to Ms. Carroll's accusation) but also, and importantly, the *content* of his statements (*i.e.*, what he said in his statements). Mr. Trump did not merely deny Ms. Carroll's accusation of sexual assault. Instead, he accused Ms. Carroll of lying about him sexually assaulting her in order to increase sales of her book, gain publicity, and/or carry out a political agenda. Even assuming that the president's decision publicly to deny an accusation of personal wrongdoing comes within the outer perimeter of his official duties, it does not follow that the president's own personal attacks on his or her accuser equally fall within that boundary. Mr. Trump does not identify any connection between the allegedly defamatory content of his statements – that Ms. Carroll fabricated her sexual assault accusation and did so for financial and personal gain – to any official responsibility of the president. Nor can the Court think of any possible connection.

The justifying purposes of presidential immunity support this determination. The fundamental purpose of presidential immunity is to avoid "diversion of [the president's] energies" and "distract[ing] a President from his [or her] public duties" by subjecting the president to "concern with private lawsuits."[57] It is not a "get out of damages liability free" card that permits the president to say or do anything he or she desires even if that conduct is disconnected entirely from an official function. On the facts presented here, there is no concern that the president "would [be] subject ...

---

[56]     *Thompson v. Trump*, 590 F. Supp. 3d 46, 79–80 (D. D.C. 2022) (emphasis added) (citations omitted).

[57]     *Fitzgerald*, 457 U.S. at 751–53.

to trial on virtually every allegation that an action was unlawful, or was taken for a forbidden purpose."[58]  The question of whether presidential immunity applies in this case turns not on an allegation that Mr. Trump acted unlawfully or made the statements with actual and common law malice, but on whether the act itself – accusing an individual who has charged the president with a personal wrongdoing of fabricating the charge for ulterior and improper purposes – is within the outer perimeter of the president's official responsibility.[59]  Subjecting the president to damages liability for making a personal attack that is unrelated to the president's official responsibilities would not threaten to distract the president from his or her official duties.

*Undue Delay and Unfair Prejudice*

Leave to amend is denied also on the basis of undue delay, dilatory motive, bad faith and/or prejudice to the opposing party.

"The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith. . . . However, '*the longer the period of an unexplained delay, the less will be required of the*

---

[58]

*Id.* at 756.

[59]

Mr. Trump compares this case to *Barr v. Matteo*, 360 U.S. 564 (1959), where the Supreme Court determined that the director of a federal agency was protected by an absolute privilege in a libel action brought by former employees based on a press release in which the director announced his intention to suspend the employees. The Court stated that "[t]e fact that the action here taken was within the outer perimeter of [the director's] line of duty is enough to render the privilege applicable, despite the allegations of malice in the complaint." *Id.* at 575.  The decision in that case makes no difference to the analysis here.  As noted above, the question of whether presidential immunity applies here does not require crediting Ms. Carroll's allegation of malice or any consideration of Mr. Trump's motives.  His accusation against Ms. Carroll, which forms the basis of Ms. Carroll's defamation claim, suffices to render his presidential immunity defense meritless.

> *nonmoving party in terms of a showing of prejudice*.' . . . In determining what constitutes 'prejudice,' we consider whether the assertion of the new claim would: (I) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.... 'Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.'"[60]

Mr. Trump's three-year delay in raising his presidential immunity defense, for which he offers no explanation, coupled with the unfair prejudice that would result from an amendment for this purpose to Ms. Carroll, warrant denial of leave to amend.

The Court has set forth in its prior opinions the record of Mr. Trump's efforts to delay both this case and *Carroll II*.[61]  Those details need not be repeated here. It suffices for present purposes to note that the Court denied Mr. Trump's prior request for leave to amend his answer in January 2022.  Mr. Trump then sought leave to amend to assert an affirmative defense and counterclaim based on New York's "anti-SLAPP" law and to argue that Ms. Carroll's defamation

---

60

    *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (emphasis added) (citations omitted).

61

    *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2960061 (S.D.N.Y. Apr. 17, 2023) (denying Mr. Trump's application for a month-long postponement of the trial of *Carroll II*); *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2006312 (S.D.N.Y. Feb. 15, 2023) (denying Mr. Trump's offer to provide a DNA sample in exchange for production by Ms. Carroll of an undisclosed appendix to a report examining the DNA found on the dress Ms. Carroll wore when she was assaulted); *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2022 WL 6897075 (S.D.N.Y. Oct. 12, 2022) (denying Mr. Trump's motion to substitute the United States for him as the defendant and to stay the action); *Carroll v. Trump*, 590 F. Supp. 3d 575  (S.D.N.Y. 2022) (denying Mr. Trump's motion for leave to amend his answer).

claim is baseless and intended for harassment. That motion was denied on two alternative grounds. First, on the basis that the proposed amendment would be futile. Second, on the additional ground that Mr. Trump's motion was delayed unduly and made at least in part for a dilatory purpose. As the Court explained:

> "[D]efendant's actions have been dilatory throughout the litigation. As [Ms. Carroll] aptly puts it, he 'has slow-rolled his defenses, asserting or inventing a new one each time his prior effort to delay the case fails. . . . Taken together, these actions [(the history of defendant's motions to stay and other litigation conduct)] demonstrate that defendant's litigation tactics have had a dilatory effect and, indeed, strongly suggest that he is acting out of a strong desire to delay any opportunity plaintiff may have to present her case against him."[62]

Since that decision was issued in March 2022, Mr. Trump's conduct both in this case and in *Carroll II* – as discussed in detail in my prior decisions and incorporated herein by reference – only has corroborated the Court's earlier hypothesis of his dilatory motive.

These facts perhaps would suffice on their own to deny Mr. Trump's request for leave to amend. But the Court does not rely solely on them in denying the relief Mr. Trump seeks. The unfair prejudice to Ms. Carroll if leave to amend were granted also is clear.

The effect of granting leave, and thus relieving Mr. Trump of his prior waiver, even assuming his absolute immunity defense were meritorious, would be the dismissal of this case. And, to be sure, the dismissal, in and of itself, would not be *unfair* prejudice to Ms. Carroll because it

---

[62] *Carroll*, 590 F. Supp. 3d at 588.

would reflect the fact that there was an insurmountable obstacle to her claim in the first place. But such a dismissal cannot be considered in isolation. Ms. Carroll now has litigated this case for more than three and a half years. She has completed discovery, engaged in extensive motion practice, resisted the government's attempt to defeat her claim before Court, the Second Circuit and the D.C. Court of Appeals, and devoted untold hours and resources to pursuing her claim. And that weighs very heavily in the analysis. For, if Mr. Trump's absolute immunity argument were valid, his failure to assert it at the outset of this lawsuit needlessly, unfairly, and inexcusably subjected Mr. Carroll to all of those burdens. The undue delay in asserting the defense thus was inherently and unfairly prejudicial even if this Court is mistaken in concluding that it is legally insufficient.

Finally, there is the one more consideration. If Mr. Trump were granted leave to amend and this Court were to reject his absolute immunity claim, the order doing so likely would be appealable. No doubt Mr. Trump would appeal. And an appeal likely would cause "significant additional delays in this litigation arising from a defense that Trump chose not to assert for the first three years of the proceedings."[63] Were this Court's rejection of his defense upheld on appeal, those additional delays would further prejudice Ms. Carroll unfairly. She now is 79 years old and, as just mentioned, has been litigating this case for more than three and a half years. There is no basis to risk prolonging the resolution of this litigation further by permitting Mr. Trump to raise his absolute immunity defense now at the eleventh hour when he could have done so years ago.

For all these reasons, leave to amend would be unjustified.

---

[63]  Dkt 113 (Pl. Opp. Mem.) at 15.

*Ground Two: Defamatory Per Se*

Mr. Trump's remaining arguments concern the substance of his allegedly defamatory statements. First, he argues that his statements were not defamatory *per se*. As this Court stated in denying Mr. Trump's motion to dismiss Ms. Carroll's defamation claim in *Carroll II* on the same basis:

> "There are two categories of defamation under New York law: *libel*, for written statements, and *slander*, for spoken statements. Written statements actionable as libel include statements published on social media outlets and on the Internet....
>
> "A written statement is libelous *per se* if it '*tends* to disparage a person in the way of his [or her] office profession or trade.' A writing also is libelous *per se* if it 'tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him [or her] in the minds of a substantial number of the community, even though it may impute no moral turpitude to him [or her].' . . .
>
> "Mr. Trump's argument to dismiss this claim is premised on his mistaken conflation of the higher standard applied to slander *per se* with the lower standard for libel *per se*. Mr. Trump argues that there are 'four narrowly defined categories of statements which are considered to be defamatory *per se*,' and that Ms. Carroll has failed to state a claim for defamation *per se* 'because it does not, on its face, defame [P]laintiff in her trade, business or profession,' one of the four categories. However, nearly every authority Mr. Trump cites, including the case identifying those four categories and the cases describing the category of injury in one's profession are slander *per se*, not libel, cases. Unlike a libelous *per se* statement, a slanderous *per*

*se* statement 'must be made with reference to a matter of significance and importance for that purpose [(of defaming a person in his or her trade, business, or profession)], rather than a more general reflection upon the plaintiff's character or qualities.' Moreover, if a complaint fails to allege sufficient facts to state a claim for slander *per se*, 'the plaintiff must show . . . that the statement complained of caused him or her special harm" – generally "the loss of something having economic or pecuniary value.' The more stringent standard for slander *per se* is grounded in sound logic: 'What gives the sting to the writing is its permanence of form. The spoken word dissolves, but the written one abides and perpetuates the scandal.'"[64]

Much of the same analysis applies to Mr. Trump's argument with respect to his 2019 statements. Mr. Trump concedes that his June 21, 2019 statement, which he provided in written form to his staff to distribute to the press, "can be considered under the libel per se standard."[65] His other two statements similarly sound in libel rather than slander. "Where a defamatory statement is oral, but is expected by the speaker to be reduced to writing and published, and is subsequently communicated in written form, such statement constitutes a libel."[66] "A statement made to a person known to be by the speaker to be a working newspaper reporter, for example, will be treated as libel,

---

[64]     *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 185507, at *10-11 (S.D.N.Y. Jan. 13, 2023) (emphases and alterations in original).

[65]     Dkt 122 (Def. Reply Mem.) at 9.

[66]     *Park Knoll Assocs. v. Schmidt*, 89 A.D.2d 164, 168 (2d Dept. 1982), *rev'd on other grounds*, 59 N.Y.2d 205 (1983) (citing ROBERT D. SACK, LIBEL AND SLANDER AND RELATED PROBLEMS § 2:3, p. 44)); *see also Macineirghe v. Cnty. of Suffolk*, No. 13-cv-1512 (ADS)(SIL), 2015 WL 4459456, at *9 (E.D.N.Y. July 21, 2015).

provided the statement is thereafter communicated in written form."[67]  Mr. Trump made the other two June 2019 statements to individuals he knew to be reporters. He does not argue that he did not understand his remarks would be publicly reported in writing.[68]  All three of Mr. Trump's June 2019 statements therefore properly are assessed under the libel *per se* standard.

Ms. Carroll adequately has alleged that Mr. Trump's statements are libelous *per se*. As in his 2022 statement, in his 2019 statements – particularly in his first two statements issued on June 21, 2019 and June 22, 2019, respectively – he accuses Ms. Carroll of making up a "totally false accusation" "to sell a new book" and "for the sake of publicity." As the Court wrote previously:

> "Ms. Carroll is a 'writer, advice columnist, and journalist.' Honesty and credibility are critical to these professions, which rely heavily on the trust and confidence of their audiences. A writer who writes about his or her own experiences, as Ms. Carroll did, depends on his or her readers believing the writer, which they may be less inclined to if the writer is called dishonest. The October 12 statement – in addition to accusing Ms. Carroll of 'completely ma[king] up a story' about Mr. Trump – states that Ms. Carroll 'changed her story from beginning to end' during an interview 'where she was promoting a . . . book.' Drawing all reasonable inferences

---

[67]  ROBERT D. SACK, SACK ON DEFAMATION: LIBEL, SLANDER, AND RELATED PROBLEMS § 2:3 (4th ed. 2011).

[68]  Indeed, with respect to the June 22, 2019 statement that Mr. Trump made to reporters before boarding Marine One, when Mr. Trump was asked during his deposition whether it is "fair to say that when [he] made comments while [he was] president on [his] way to somewhere . . . on [his] way to boarding Air Force One or Marine One that a transcript would be created like this [(transcript of the June 22, 2019 statement)] and released by [his] press office," he responded "oftentimes."  Dkt 117-6 (Def. Dep.) at 64:4-10.

in favor of plaintiff, the October 12 statement on the whole can be construed as Ms.

Carroll falsely accusing Mr. Trump of rape in order to promote her book and increase

its sales. Based on the facts alleged in the complaint, Ms. Carroll has sufficiently

pleaded a claim of libel *per se* because the October 12 statement may have affected

her in her profession by 'imputing to [her] . . . fraud, dishonesty, [and/or] misconduct

. . . .'"[69]

Similarly, Mr. Trump's 2019 statements reasonably can be construed as tending to

disparage Ms. Carroll in the way of her profession and/or by exposing her to hatred, contempt or

aversion or inducing an evil or unsavory opinion of her in the minds of a substantial number of the

community. Mr. Trump's contention that the statements "do not reference Plaintiff's profession as

an advice columnist, nor do they touch upon Plaintiff's 'Ask E. Jean' column" is inapposite to the

libel *per se* standard, which requires no such specific references.[70]  Nor was Ms. Carroll required to

plead special damages because she has sufficiently pleaded the elements of a libel *per se* claim.  Mr.

Trump's second argument to dismiss Ms. Carroll's claim therefore is without merit.

*Ground Three: Nonactionable Opinion*

Related also to the substance of his allegedly defamatory statements, Mr. Trump

argues that "nearly all of the content contained in the statements are immaterial since they constitute

---

[69]

*Carroll*, 2023 WL 185507, at *11 (emphases and alterations in original).

[70]

Dkt 122 (Def. Reply Mem.) at 9.

protected opinion speech."[71]  Specifically, he contends that "aside from [his] repudiation of Plaintiff's contention that he sexually assaulted her, the remainder of the language contained in the alleged defamatory statements is protected opinion speech. Therefore, these statements are not actionable as defamation."[72]

Statements of opinion are not actionable as defamation "however unreasonable the opinion or vituperous the expressing of it may be."[73]  "While it is clear that expressions of opinion receive absolute constitutional protection . . . , determining whether a given statement expresses fact or opinion may be difficult. The question is one of law for the court and one which must be answered on the basis of what the average person hearing or reading the communication would take it to mean."[74]

The New York Court of Appeals has identified three factors relevant to determining whether an average person would understand a statement as conveying fact or opinion:

"'(1) [W]hether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to

---

[71]  Dkt 109 (Def. Mem.) at 30.

[72]  *Id.* at 33.

[73]  *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir. 1977).

[74]  *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 290 (1986).

be opinion, not fact[.]'"

"The third factor 'lends both depth and difficulty to the analysis' . . . , and requires that the court consider the content of the communication as a whole, its tone and apparent purpose. Thus, we have adopted a holistic approach to this inquiry. Rather than sifting through a communication for the purpose of isolating and identifying assertions of fact, the court should look to the over-all context in which the assertions were made and determine on that basis 'whether the reasonable reader would have believed that the challenged statements were conveying facts about the . . . plaintiff.'"[75]

"The dispositive inquiry . . . is whether a reasonable [reader] could have concluded that [the statements were] conveying facts about the plaintiff."[76]

Mr. Trump has not addressed the first and third factors. In any event, both weigh against his position. Mr. Trump "used specific, easily understood language to communicate" that Ms. Carroll made up a false story about Mr. Trump sexually assaulting her to increase sales of her book, to get publicity, and/or for political reasons.[77] Indeed, the third sentence of his June 21, 2019 statement makes plain his central message that "[s]he [(Ms. Carroll)] is trying to sell a new book – that should indicate her motivation." Considering each statement as a whole, there is nothing vague or ambiguous about the statements that would make it difficult for an average reader to appreciate

---

[75] *Davis v. Boeheim*, 24 N.Y.3d 262, 269–70 (2014) (citations omitted).

[76] *Id.* (alterations in original) (internal quotation marks and citation omitted).

[77] *Id.* at 271.

their main point: that Ms. Carroll lied and her motives for lying.

The contexts in which the statements were made also convey that they were assertions of fact. The heading of the June 21, 2019 statement reads "Statement from President Donald J. Trump" and was prepared by Mr. Trump to distribute to the press. The June 22, and June 24, 2019 statements were made to reporters, the former expected by Mr. Trump to be transcribed and released by his press office and the latter made by Mr. Trump in the course of an exclusive interview with a newspaper focused on political coverage. Unlike other contexts that courts have determined tended to signal expressions of opinion, such as the Republican presidential primary debate or a character-limited post on Twitter,[78] the circumstances here indicate that Mr. Trump's apparent purpose was to state that Ms. Carroll falsely accused him of sexual assault for financial and/or personal gain as a matter of fact, not as a matter of his personal belief or opinion.

The only factor that Mr. Trump touches upon is the second, whether the statements are capable of being proven true or false. Mr. Trump argues that his statements are "no more than non-actionable opinions about Plaintiff's state of mind and are not capable of being proven true or false" and he "was merely opining on Plaintiff's state of mind and motivations for coming forward with her allegation, thus invalidating Plaintiff's claims."[79] Courts have determined that statements that an individual made a false accusation or lied for financial or for personal gain are capable of

---

[78] *Jacobus v. Trump*, 51 N.Y.S.3d 330, 342 (N.Y. Sup. Ct. 2017), *aff'd*, 156 A.D.3d 452 (1st Dept. 2017).

[79] Dkt 109 (Def. Mem.) at 33.

being proven true or false.[80]  Importantly, Mr. Trump did not use speculative language in stating Ms.

Carroll's motives for falsely accusing him of sexual assault. Instead, he stated "[s]hame on those

who make up false stories of assault to try to get publicity for themselves, or sell a book, or carry out

a political agenda" and "you can't do that for the sake of publicity."  In another portion of his June

21, 2019 statement, he wrote "[t]he world should know what's really going on" after requesting

anyone who "has information that the Democratic Party is working with Ms. Carroll" to notify Mr.

Trump and his staff. The specificity of Mr. Trump's statements makes clear that he was not merely

guessing or speculating as to Ms. Carroll's motive. Instead, he attributes to Ms. Carroll specific and

objectively verifiable motives for fabricating her sexual assault accusation.

      The cases Mr. Trump cites are inapposite. For example, "the loose and generalized

statement that [the plaintiffs who brought a sexual harassment lawsuit] 'do not want to work' or

'hold jobs' and simply 'want to make easy money' . . ."[81] and the statement "I think he wanted me

to divorce him,"[82] are a far cry from Mr. Trump's clear and definite statement that Ms. Carroll "is

---

[80]
    *E.g.*, *Mr. Chow of New York v. Ste. Jour Azur S.A.*, 759 F.2d 219, 225 n.4 (2d Cir. 1985) ("In *Edwards*, we distinguished the epithet 'liar' from the epithet 'paid liar.' We found that unlike calling someone a liar, charging someone with being a paid liar was an assertion of fact. We explained: '[T]o call the appellees, all of whom were university professors, paid liars clearly involves defamation that far exceeds the bounds of the prior controversy.... And, to say a scientist is paid to lie implies corruption, and not merely a poor opinion of his scientific integrity. Such a statement requires a factual basis....'") (alteration in original) (quoting *Edwards v. Nat'l Audubon Soc., Inc.*, 556 F.2d 113, 121 n.5 (2d Cir. 1977)); *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 382 (1977) ("The ordinary and average reader would likely understand the use of these words [[(that the plaintiff is "probably corrupt")], in the context of the entire article, as meaning that plaintiff had committed illegal and unethical actions.").

[81]
    *Gentile v. Grand St. Med. Assocs.*, 79 A.D.3d 1351, 1353 (3d Dept. 2010).

[82]
    *Huggins v. Povitch*, No. 131164/94, 1996 WL 515498, at *4 (N.Y. Sup. Ct. Apr. 19, 1996).

trying to sell a new book–that should indicate her motivation," among other assertions he made.

Although some courts have been reluctant to find statements concerning a "plaintiff's frame of mind and motivation" to be capable of being objectively verifiable,[83] whether or not that is so is a case-specific determination dependent on the specific statements at issue and the other factors relevant to this analysis. Here, although there perhaps was a subjective component to Mr. Trump's statements that Ms. Carroll was trying to increase sales of her book and gain publicity, in these circumstances, her "state of mind is a fact question [susceptible to proof] the same as any other fact."[84]

All three factors therefore weigh in favor of a determination that Mr. Trump's statements were factual assertions rather than expressions of opinion.[85]

---

[83]

E.g., *Treppel v. Biovail Corp.*, No. 03-cv-3002 (PKL), 2004 WL 2339759, at *14 (S.D.N.Y. Oct. 15, 2004), *on reconsideration*, 2005 WL 427538 (S.D.N.Y. Feb. 22, 2005); *Coleman v. Grand*, 523 F. Supp. 3d 244, 264 (E.D.N.Y. 2021).

In *Immuno AG. v. Moor-Jankowski*, the New York Court of Appeals stated that "[s]peculations as to the motivations and potential future consequences of proposed conduct generally are not readily verifiable, and are therefore intrinsically unsuited as a foundation for libel." 74 N.Y.2d 548, 560 (1989). The court's judgment was vacated, 497 U.S. 1021 (1990), and that statement did not appear again in the court's opinion on remand. 77 N.Y.2d 235 (1991). Notably, the original opinion cited to *Rinaldi v. Holt* (cited above, *supra* n. 80). In *Rinaldi*, however, Judge Gabrielli wrote in his dissent: "[a]s the majority quite properly observes, the charge that plaintiff is 'probably corrupt' is a statement of fact and not an expression of opinion," and in a footnote to that statement, he wrote "[a] charge of corruption goes essentially to the motive behind an individual's acts. As one court has noted, '(t)he state of a man's mind is as much a fact as the state of his digestion' (*Edgington v. Fritzmaurice*, 29 Ch.D. 459, 483 (CA))." 42 N.Y.2d at 954 & n.1. It therefore is possible that some of the modern case law on whether a statement as to an individual's state of mind is objectively verifiable is based in part on a misconstruction of the precedents on this issue.

[84]

*Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 134 (2d Cir. 2009) (quoting *In re Air Disaster at Lockerbie Scotland on Dec. 21, 1988*, 37 F.3d 804, 838 (2d Cir.1994) (Van Graafeiland, J., dissenting)).

[85]

Neither party addresses specifically Mr. Trump's June 24, 2019 statement, in which he said only: "I'll say it with great respect: Number one, she's not my type. Number two, it never

*Ground Four: Consent*

Mr. Trump contends also that Ms. Carroll's claim is barred because she consented to Mr. Trump's allegedly defamatory statements. Under New York law, "[c]onsent is a bar to a recovery for defamation under the general principle of *volenti non fit injuria* or, as it is sometimes put, the plaintiff's consent to the publication of the defamation confers an absolute immunity or an absolute privilege upon the defendant[.]."[86] "Decisions of New York's intermediate appellate courts have established that the consent of the person defamed to the making of a defamatory statement bars that person from suing for the defamation, and that, in some circumstances, a person's intentional eliciting of a statement she expects will be defamatory can constitute her consent to the making of the statement."[87] As the Second Circuit has stated:

> "The contours and purposes of the rule are somewhat illuminated by the Restatement (Second) of Torts (1977), which in defamation cases has been cited with approval by the highest court of New York. . . . Section 583 of the Restatement provides, 'Except as stated in § 584, the consent of another to the publication of defamatory matter concerning him is a complete defense to his action for

---

happened. It never happened, OK?". In her complaint, Ms. Carroll alleges that all three June 2019 statements were defamatory. However, as stated above, the crux of Ms. Carroll's defamation claim lies in Mr. Trump's statements that Ms. Carroll lied for financial and/or personal gain. Indeed, Mr. Trump appears to ground his argument that "the majority" of his statements are nonactionable opinion on the assumption that Ms. Carroll does not allege his "general repudiation of Plaintiff's allegations" in itself was defamatory. Dkt 109 (Def. Mem.) at 32. As the parties have not adequately addressed this point, the Court does not now decide it.

[86]

*Teichner v. Bellan*, 7 A.D.2d 247, 251 (4th Dept. 1959).

[87]

*Sleepy's LLC v. Select Comfort Wholesale Corp.*, 779 F.3d 191, 199 (2d Cir. 2015) (citing cases).

defamation.' Comment d to this Section says, 'It is not necessary that the other know that the matter to the publication of which he consents is defamatory in character. It is enough that . . . he has reason to know that it may be defamatory.' As an illustration, the Restatement notes that a summarily discharged school teacher who 'demands that the reason for his dismissal be made public . . . has consented to the publication [of the reason] though it turns out to be defamatory.' Restatement (Second) of Torts § 583 cmt. d (1977)."[88]

The Reporter's Note to Section 583 of the Restatement provides that "[t]he plaintiff's consent is a defense even though he procures the publication for the purpose of decoying the defendant into a lawsuit."[89]  The Restatement states also that:

"[c]onsent means that the person concerned *is in fact willing* for the conduct of another to occur. Normally this willingness is manifested directly to the other by words or acts that are intended to indicate that it exists. It need not, however, be so manifested by words or by affirmative action. It may equally be manifested by silence or inaction, if the circumstances or other evidence indicate that the silence or inaction is intended to give consent. Even without a manifestation, consent may be proved by any competent evidence to exist in fact, and when so proved it is as effective as if manifested."[90]

---

[88]    *Id.* (alteration in original) (citations omitted).

[89]    WILLIAM L. PROSSER AND JOHN W. WADE, RESTATEMENT (SECOND) OF TORTS § 583 (1977).

[90]    *Id.*  § 892, Comment b (1979) (emphasis added).

Mr. Trump argues that Ms. Carroll consented to Mr. Trump's allegedly defamatory remarks because she (1) "purposefully chose to publish her account in *New York Magazine* to garner as much attention as possible" and (2) "waited 27 years to publicly raise her allegations, a time when Defendant was the sitting President of the United States," leaving him "with no choice but to defend himself against th[e] heinous allegations."[91]  Neither of these points demonstrates that Ms. Carroll had any reason to expect Mr. Trump to make statements that would be defamatory. Indeed, Mr. Trump's argument amounts to suggesting that any time an individual comes forward with an accusation of wrongdoing against a public official, that person thereby consents to the official stating anything he or she wishes in response, no matter how calumnious. As Ms. Carroll aptly states, "[w]hen a survivor of sexual assault makes the choice to speak up, that choice does not constitute consent to whatever defamatory lies their abuser may unleash in response."[92]

The only evidence that Ms. Carroll possibly "had reason to anticipate that [Mr. Trump's] response [to her accusation] might be a defamatory one"[93] – which Mr. Trump entirely ignores – comes from her own words in the excerpt of her book published in *New York* Magazine:

> "*Why haven't I 'come forward' before now?*
>
> "Receiving death threats, being driven from my home, being dismissed, being dragged through the mud, and joining the 15 women who've come forward with credible stories about how the man [(Mr. Trump)] grabbed, badgered, belittled,

---

[91]  Dkt 109 (Def. Mem.) at 29-30.

[92]  Dkt 113 (Pl. Opp. Mem.) at 31.

[93]  *Handlin v. Burkhart*, 220 A.D.2d 559, 559 (2d Dept. 1995).

mauled, molested, and assaulted them, only to see the man turn it around, deny,

threaten, and attack them, never sounded like much fun. Also, I am a coward."[94]

It nevertheless fails to establish consent. First, as observed by another court in this circuit, "[a]

review of case law indicates that the type of consent accepted as a complete[] defense to a

defamation action is *specific* consent, typically initiated by the plaintiff, which clearly indicates that

the plaintiff was aware of and agreed to the possibility that defamatory statements might be

published."[95]  Ms. Carroll's generalized concern that she might be subject to the same attacks that

other women, as she stated, have experienced after coming forward with their accusations against

Mr. Trump does not demonstrate her awareness of and agreement to the possibility that Mr. Trump

might defame her in response to her specific accusation of sexual assault and rape.

Second, there is no evidence to suggest that Ms. Carroll had reason to know the type

or content of a public statement, if any, Mr. Trump might make in response to her accusation, let

alone that she agreed to it. "Implicit in the concept of consent is the conception that the consenting

party have the power to control the publication. Thus, there can be no finding of consent where, as

here, there is no effective control over the dissemination of the defamatory material."[96]  Indeed, when

asked in her deposition how she expected Mr. Trump would react to her sexual assault accusation,

---

[94]

      E. Jean Carroll, *Hideous Men: Donald Trump assaulted me in a Bergdorf Goodman dressing room 23 years ago. But he's not alone on the list of awful men in my life*, THE CUT, NEW YORK MAGAZINE, Jun. 21, 2019, https://www.thecut.com/2019/06/donald-trump-assault-e-jean-carroll-other-hideous-men.html.

[95]

      *McNamee v. Clemens*, 762 F. Supp. 2d 584, 604–05 (E.D.N.Y. 2011) (emphasis added) (citing cases).

[96]

      *Van-Go Transp. Co. v. New York City Bd. of Educ.*, 971 F. Supp. 90, 104 (E.D.N.Y. 1997).

Ms. Carroll testified that:

> "I didn't think he would deny it. I thought he would just say it didn't happen that way. She agreed to it or it was consensual sex. . . . I just was shocked that he absolutely denied it because he was there and he denied it. That's what gets me every time. He was there, he denied it.[97]

She testified also that she "ha[s] no idea" if she would have sued Mr. Trump if he had instead said that it was consensual sex because "it would have been him saying yeah, it happened and then we could have disagreed and then I could have vehemently said no, I did not consent."[98]

Drawing all factual inferences in favor of Ms. Carroll, as the Court must on this motion for summary judgment, Ms. Carroll's testimony makes clear that any generalized concern Ms. Carroll harbored based on Mr. Trump's "den[ials], threat[s], and attack[s]" against his other accusers did not translate to her consenting to the possibility the same would occur with her.[99]

*Punitive Damages*

Lastly, Mr. Trump argues that Ms. Carroll's punitive damages claim should be dismissed because she cannot demonstrate that Mr. Trump acted with common law malice.

"Punitive damages may only be assessed under New York law if the plaintiff has

---

[97]
   Dkt 116-1 (Pl. Dep.) at 166:2-6, 167:3-7.

[98]
   *Id.* at 166:9-15.

[99]
   In the alternative, there at least is a genuine issue of material fact based on the evidence as to whether Ms. Carroll consented to Mr. Trump's allegedly defamatory statements, precluding dismissal as a matter of law on summary judgment.

established common law malice in addition to the other elements of libel. . . . To do so, plaintiffs must prove by a preponderance of the evidence that the libelous statements were made out of 'hatred, ill will, [or] spite.'"[100]  The Appellate Division, First Department, one of New York's intermediate appellate courts, has "held that a triable issue of common-law malice is raised only if a reasonable jury could find that the speaker was *solely* motivated by a desire to injure plaintiff, and that there must be some evidence that the animus was 'the one and only cause for the publication.'"[101] "Common law malice is established by examining all of the relevant circumstances surrounding the dispute, including any rivalries and earlier disputes between the parties so long as they are not too remote."[102]

Mr. Trump contends that his "statements could not have been 'motivated by a desire to injure plaintiff'" because "they were strictly made in Defendant's own defense."[103]  His argument merely presents his characterization of his own conduct, which of course is favorable to him. He fails

---

[100]

*Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 184 (2d Cir. 2000).

[101]

 *Morsette v. "The Final Call"*, 309 A.D.2d 249, 255 (1st Dept 2003) (emphasis in original) (citation omitted).

[102]

*Celle*, 209 F.3d at 185.

[103]

Dkt 109 (Def. Mem.) at 34 (quoting *Morsette*, 309 A.D. at 255).

In passing, Mr. Trump raises also the point that "[i]ndeed, in these types of circumstances, New York courts have recognized a qualified privilege of reply when accused of charges of unlawful activity." *Id.* at 34 (citing cases).  First, his argument arguably has been waived because it was not raised in his answer and is "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *United States v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013). In any event, any such claim of a qualified privilege – as with his main argument against punitive damages – depends on weighing the evidence of Mr. Trump's motives for making the allegedly defamatory statements.

to address any of the relevant evidence, including, for example, his deposition testimony with respect to the circumstances in which he made the statements and whether he ever read the *New York* magazine article or Ms. Carroll's book that contain her sexual assault accusation.

Furthermore, it is relevant – although not dispositive – that the jury in *Carroll II* in fact awarded punitive damages to Ms. Carroll  for her defamation claim for Mr. Trump's 2022 statement, which as discussed above substantially is similar to Mr. Trump's statements in this case. To do so, the jury was required to find and did find that Ms. Carroll proved (1) Mr. Trump knew it was false or acted in reckless disregard of its truth or falsity when he made the statement accusing Ms. Carroll of lying about her sexual assault accusation to promote her book (actual malice) and (2) Mr. Trump made the statement with deliberate intent to injure or out of hatred, ill will, or spite or with willful, wanton or reckless disregard of another's rights (common law malice). This outcome undermines Mr. Trump's argument that the same result is impossible in this closely related case.

In all the circumstances, Mr. Trump has failed to establish that there is not a genuine issue of material fact as to whether the prerequisites to a punitive damages award in this case have been satisfied.

## *Conclusion*

For the foregoing reasons, Mr. Trump's motion for summary judgment dismissing the complaint (Dkt 107) and his alternative request for leave to amend his answer to assert the  absolute presidential immunity defense are denied.

SO ORDERED.

Dated:       June 29, 2023

Corrected:   July 5, 2023

_____
Lewis A. Kaplan
United States District Judge

APPEAL,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:20–cv–07311–LAK

Carroll v. Trump, et al.
Assigned to: Judge Lewis A. Kaplan
Related Case:  1:22–cv–10016–LAK
Case in other court:  State Court – Supreme, 160694–2019
Cause: 28:2679(d)(2) Federal Tort Claims Act – Employee of U.S.A.

Date Filed: 09/08/2020
Jury Demand: None
Nature of Suit: 360 P.I.: Other
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**E. Jean Carroll**                    represented by    **Roberta Ann Kaplan**
Kaplan Hecker & Fink LLP
350 Fifth Avenue
63rd Floor
10118
New York, NY 10118
212–763–0883
Fax: 212–564–0883
Email: rkaplan@kaplanhecker.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Adam Matz**
Kaplan Hecker & Fink LLP
1050 K Street NW
Suite 1040
Washington, DC 20001
929–294–2537
Email: jmatz@kaplanhecker.com
*ATTORNEY TO BE NOTICED*

**Matthew J. Craig**
Kaplan Hecker & Fink LLP
350 Fifith Avenue, Suite 7110
New York, NY 10118
(212)–763–0883
Fax: (212)–564–0883
Email: mcraig@kaplanhecker.com
*ATTORNEY TO BE NOTICED*

**Michael Ferrara**
Kaplan Hecker & Fink LLP
350 5th Ave.
Ste 63rd Floor
New York, NY 10118
929–294–2529
Email: mferrara@kaplanhecker.com
*ATTORNEY TO BE NOTICED*

**Shawn Geovjian Crowley**
Kaplan, Hecker & Fink LLP
350 Fifth Avenue
Ste 63rd Floor
New York, NY 10118
212–763–0883
Email: scrowley@kaplanhecker.com
*ATTORNEY TO BE NOTICED*

**Trevor Morrison**
Kaplan Hecker & Fink LLP

350 Fifth Avenue
Ste 63rd Floor
New York, NY 10118
212–763–0883
Email: tmorrison@kaplanhecker.com
*ATTORNEY TO BE NOTICED*

V.

**Movant**

| | | |
|---|---|---|
| **United States of America** | represented by | **William Kerwin Lane , III** |

DOJ–Civ
950 Pennsylvania Avenue, NW
Ste Main 3138
Washington, DC 20530
202–305–7920
Email: william.lane2@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Stephen Terrell**
DOJ–Enrd
Civl Division, Torts Branch
P.O. Box 888
Washington, DC 20044
202–353–1651
Email: stephen.terrell2@usdoj.gov
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **Donald J. Trump**<br>*in his personal capacity* | represented by | **Alina Habba** |

Habba Madaio & Associates LLP
1430 US Highway 206
Suite 240
Bedminster, NJ 07921
908–869–1188
Email: ahabba@habbalaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christine A. Montenegro**
Kasowitz, Benson, Torres LLP (NYC)
1633 Broadway
New York, NY 10019
(212) 506–1700
Fax: (212) 506–1800
Email: cmontenegro@kasowitz.com
*TERMINATED: 11/22/2021*
*LEAD ATTORNEY*

**Marc E. Kasowitz**
Kasowitz, Benson, Torres LLP (NYC)
1633 Broadway
New York, NY 10019
212–506–1710
Fax: 212–506–1800
Email: MEKcourtnotices@kasowitz.com
*TERMINATED: 11/22/2021*
*LEAD ATTORNEY*

**Paul J. Burgo**

Kasowitz, Benson, Torres LLP (NYC)
1633 Broadway
New York, NY 10019
(212)–506–1700
Fax: (212)–506–1800
Email: pburgo@kasowitz.com
*TERMINATED: 11/22/2021*
*LEAD ATTORNEY*

**Amicus**

**Government Accountability Project**         represented by   **John A. Kolar**
1612 K Street, N.W,                                          Government Accountability Project, Inc.
Suite 1100                                                  1612 K Street, NW
Washington, DC 20006                                        Ste 1100
202–457–0034 X197                                          Washington, DC 20006
                                                           202–457–0034
                                                           Email: jackk@whistleblower.org
                                                           *LEAD ATTORNEY*

**Counter Claimant**

**Donald J. Trump**                          represented by   **Alina Habba**
*in his personal capacity*                                  (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Christine A. Montenegro**
                                                           (See above for address)
                                                           *TERMINATED: 11/22/2021*
                                                           *LEAD ATTORNEY*

                                                           **Marc E. Kasowitz**
                                                           (See above for address)
                                                           *TERMINATED: 11/22/2021*
                                                           *LEAD ATTORNEY*

                                                           **Paul J. Burgo**
                                                           (See above for address)
                                                           *TERMINATED: 11/22/2021*
                                                           *LEAD ATTORNEY*

V.

**Counter Defendant**

**E. Jean Carroll**                          represented by   **Roberta Ann Kaplan**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Joshua Adam Matz**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Matthew J. Craig**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Michael Ferrara**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Shawn Geovjian Crowley**
                                                           (See above for address)

*ATTORNEY TO BE NOTICED*

**Trevor Morrison**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/08/2020 | 1 | **FILING ERROR – EXHIBITS NOT CLEARLY TITLED –** NOTICE OF REMOVAL from Supreme Court of the State of New York, County of New York. Case Number: 160694/2019..Document filed by UNITED STATES OF AMERICA. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D (Part 1), # 5 Exhibit D (Part 2), # 6 Exhibit D (Part 3), # 7 Certificate of Service).(Terrell, Stephen) Modified on 9/9/2020 (pne). (Entered: 09/08/2020) |
| 09/08/2020 | 2 | **FILING ERROR – PDF ERROR –**CIVIL COVER SHEET filed..(Terrell, Stephen) Modified on 9/9/2020 (pne). (Entered: 09/08/2020) |
| 09/08/2020 | 3 | MOTION to Substitute Party. Old Party: Donald J. Trump, New Party: United States of America . Document filed by UNITED STATES OF AMERICA. (Attachments: # 1 Memorandum of Points and Authorities, # 2 Affidavit, # 3 Exhibit A, # 4 Exhibit B, # 5 Certificate of Service).(Terrell, Stephen) (Entered: 09/08/2020) |
| 09/08/2020 | 4 | NOTICE OF APPEARANCE by Roberta Ann Kaplan on behalf of E. Jean Carroll..(Kaplan, Roberta) (Entered: 09/08/2020) |
| 09/08/2020 | 5 | NOTICE OF APPEARANCE by Joshua Adam Matz on behalf of E. Jean Carroll..(Matz, Joshua) (Entered: 09/08/2020) |
| 09/09/2020 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above–entitled action is assigned to Judge Lewis A. Kaplan. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district–judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf–related–instructions..(pne) (Entered: 09/09/2020) |
| 09/09/2020 | | Magistrate Judge James L. Cott is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018–06/AO–3.pdf. (pne) (Entered: 09/09/2020) |
| 09/09/2020 | | Case Designated ECF. (pne) (Entered: 09/09/2020) |
| 09/09/2020 | | ***NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Stephen Terrell. The party information for the following party/parties has been modified: Donald J. Trump. The information for the party/parties has been modified for the following reason/reasons: party name contained a typographical error; party text was omitted. (pne) (Entered: 09/09/2020) |
| 09/09/2020 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT CIVIL COVER SHEET. Notice to attorney Stephen Terrell to RE–FILE Document No. 1 Notice of Removal,. The filing is deficient for the following reason(s): caption entered on civil cover sheet does not match pleading caption. Re–file the document using the event type Civil Cover Sheet found under the event list Other Documents and attach the corrected PDF. (pne) (Entered: 09/09/2020) |
| 09/09/2020 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Stephen Terrell to RE–FILE Document No. 1 Notice of Removal,. The filing is deficient for the following reason(s): As per Rule 13.3, each attachment to the pleading must be clearly titled in the ECF entry so the subject of the exhibit is clear; do not put only "Exhibit A, B, etc.". Re–file the pleading using the event type Notice of Removal found under the event list Complaints and Other Initiating Documents – attach the PDF(s) – select the individually named filer/filers – select the individually named party/parties the pleading is against. (pne) (Entered: 09/09/2020) |
| 09/09/2020 | 6 | NOTICE OF REMOVAL from Supreme Court of the State of New York, County of New York. Case Number: 160694/2019..Document filed by Donald J. Trump. (Attachments: # 1 Exhibit A – State Court Complaint, # 2 Exhibit B – Westfall Act Certification, # 3 Exhibit C – State Court Docket Index, # 4 Exhibit D (Part 1) – State Court Process, Pleadings, and Orders (less exhibits), # 5 Exhibit D (Part 2) – State Court Process, Pleadings, and Orders (less exhibits), # 6 Exhibit D (Part 3) – State |

| | | |
|---|---|---|
| | | Court Process, Pleadings, and Orders (less exhibits)).(Terrell, Stephen) (Entered: 09/09/2020) |
| 09/09/2020 | 7 | CIVIL COVER SHEET filed..(Terrell, Stephen) (Entered: 09/09/2020) |
| 09/10/2020 | 8 | LETTER MOTION for Conference *re: Schedule* addressed to Judge Lewis A. Kaplan from Roberta A. Kaplan dated September 10, 2020. Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 09/10/2020) |
| 09/10/2020 | 9 | ORDER granting in part and denying in part 8 Letter Motion for Conference. (Signed by Judge Lewis A. Kaplan on 9/10/2020) (Kaplan, Lewis) (Entered: 09/10/2020) |
| 09/11/2020 | 10 | LETTER addressed to Judge Lewis A. Kaplan from Roberta A. Kaplan dated September 11, 2020 re: Court's Order of September 10, 2020 (ECF 9). Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 09/11/2020) |
| 09/11/2020 | 11 | MEMO ENDORSEMENT on re: 10 Letter filed by E. Jean Carroll. ENDORSEMENT: SO ORDERED. (Responses due by 10/5/2020, Replies due by 10/19/2020.) (Signed by Judge Lewis A. Kaplan on 9/11/2020) (jca) (Entered: 09/11/2020) |
| 09/14/2020 | 12 | NOTICE of Lodging State Court Process, Pleadings, and Orders. Document filed by Donald J. Trump. (Attachments: # 1 Process, Pleadings, and Orders Part 1, # 2 Process, Pleadings, and Orders Part 2, # 3 Process, Pleadings, and Orders Part 3, # 4 Process, Pleadings, and Orders Part 4, # 5 Process, Pleadings, and Orders Part 5, # 6 Process, Pleadings, and Orders Part 6, # 7 Process, Pleadings, and Orders Part 7, # 8 Process, Pleadings, and Orders Part 8, # 9 Process, Pleasings and Orders Part 9, # 10 Process, Pleadings, and Orders Part 10, # 11 Process, Pleadings, and Orders Part 11, # 12 Process, Pleadings, and Orders Part 12).(Terrell, Stephen) (Entered: 09/14/2020) |
| 09/15/2020 | 13 | ORDER: Accordingly, the United States, nor before September 18, 2020, shall file the entire state court record as of the time of removal. Each separate paper shall be filed as a separate numbered attachment, shall be clearly titled so hat the subject of the attachment is clear, and shall show the date of the attachment. Attachments hall be listed in chronological order. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 9/14/2020) (jca) (Entered: 09/15/2020) |
| 09/15/2020 | 14 | NOTICE of Lodging State Court Process, Pleadings, and Orders. Document filed by Donald J. Trump. (Attachments: # 1 Summons (11/04/2019), # 2 Complaint (11/04/2019), # 3 Affirmation re Identification of Related Case (11/08/2019), # 4 RJI Ex Parte Application (11/08/2019), # 5 Orioised Ex Oarte Order (11/08/2019), # 6 Affidavit in Support of Ex Parte Application (11/08/2019), # 7 Exhibit (Summons and Complaint) (11/08/2019), # 8 Exhibit (Trump Voter Registration ) (11/08/2019), # 9 Exhibit (Nov 4 Service Attempt) (11/08/2019), # 10 Exhibit (Nov 5 Service Attempt) (11/08/2019), # 11 Exhibit (Nov 6 Service Attempt) (11/08/2019), # 12 Exhibit (Nov 6 Service Attempt) (11/08/2019), # 13 Exhibit (Nov 6 at White House) (11/08/2019), # 14 Exhibit (E–mail) (11/08/2019, # 15 Ex Parte Order (11/13/2019), # 16 Notice of Appearance (11/13/2019), # 17 Affirmation of Service (11/13/2019), # 18 Notice of Appearance (11/13/2019), # 19 Notice of Appearance (11/25/2019), # 20 Stipulation – Briefing Schedule (11/26/2019), # 21 Notice of Appearance (11/26/2019), # 22 Letter/Correspondence – So Ordered (12/03/2019), # 23 Letter to Judge (12/03/2019), # 24 Exhibit (Affirmation re Identification of Related Case) (12/03/2019), # 25 Letter Application to Administrative Judge (12/05/2019), # 26 Letter to Judge (12/05/2019), # 27 Order – Preliminary Conference (12/12/2019), # 28 Proposed OSC (01/03/2020), # 29 Affidavit in Support (01/03/2020), # 30 Exhibit (Complaint) (01/03/2020), # 31 Exhibit (11–13–19 Ex Parte order) (01/03/2020), # 32 Exhibit (Preliminary Conference Order) (01/03/2020), # 33 Memorandum of Law (01/03/2020), # 34 Affirmation in Opposition to OSC (01/06/2020), # 35 OSC – Decline/Withdrawn (01/08/2020), # 36 Decision + Order of Motion (01/10/2020), # 37 Notice of Entry (01/13/2020), # 38 Stipulation (Briefing Schedule) (02/03/2020), # 39 Stipulation – So Ordered (02/04/2020), # 40 Notice of Appearance (02/04/2020), # 41 Notice of Appearance (02/04/2020), # 42 Notice of Appearance (02/04/2020), # 43 Notice of Motion to Stay (02/04/2020), # 44 Affidavit in Support of Motion (02/04/2020), # 45 Exhibit (RJI Submissions) (02/04/2020), # 46 Exhibit (Preliminary Conference Order) (02/04/2020), # 47 Exhibit (Letter from Ct of Appeals) (02/04/2020), # 48 Exhibit (So–Ordered Stipulation) (02/04/2020), # 49 Memorandum of Law (02/04/2020), # 50 Stipulation – Briefing Schedule (02/06/2020), # 51 Stipulation – So Ordered (02/10/2020), # 52 Stipulation – Adjournment of Motion (02/11/2020), # 53 Notice of Appearance (02/18/2020), # 54 Memorandum of Law in Opposition (02/18/2020), # 55 Affiavit in Opposition to Motion (02/18/2020), # 56 Exhibit (First Notice of Submit to Physical Examination (02/18/2020) (PART 1), # 57 Exhibit (First Notice of Submit to Physical Examination (02/18/2020) (PART 2), # 58 Exhibit (Discovery Stipulation) (02/18/2020), # 59 Exhibit (Letter) (02/18/2020), # 60 Exhibit (Notice of Motion) (02/18/2020), # 61 Exhibit (Order) (02/18/2020), # 62 Exhibit (Letter) (02/18/2020), # 63 Exhibit (Letter) (02/18/2020), # 64 Exhibit (Letter) (02/18/2020), # 65 Exhibit (Email) (02/18/2020), # 66 Exhibit (Memorandum of Law) (02/18/2020), # 67 Affidavit in Reply (02/28/2020), # 68 Exhibit |

| | | |
|---|---|---|
| | | (Article) (02/28/2020), # 69 Exhibit (Answer) (02/28/2020), # 70 Exhibit (Decision Granting Leave to Appeal) (02/28/2020), # 71 Memorandum of Law in Reply (02/28/2020), # 72 Letter to Judge (03/02/2020), # 73 Exhibit (Complaint in Trump for President v. NYT Co.) (03/02/2020), # 74 Letter to Judge (03/06/2020), # 75 Exhibit (Complaint in Trump for President v. WP Co.) (03/06/2020), # 76 Exhibit (Complaint in Trump for President v. CNN) (03/06/2020), # 77 Letter to Judge (03/10/2020), # 78 Letter to Judge (03/11/2020), # 79 Letter to Judge (03/11/2020), # 80 Court Appearance Update (03/20/2020), # 81 Notice (04/14/2020), # 82 Notice of Appearance (06/15/2020), # 83 Notice of Motion (06/15/2020), # 84 Affirmation in Support of Motion (06/15/2020), # 85 Exhibit (Logo for The Apprentice) (06/15/2020), # 86 Exhibit (Entry information page) (06/15/2020), # 87 Exhibit (Entry information page) (06/15/2020), # 88 Exhibit (FEC filing) (06/15/2020), # 89 Exhibit (Report titled Expenditures) (06/15/2020), # 90 Exhibit (Certified transcript of phone call) (06/15/2020), # 91 Exhibit (Florida Voter Registration Applications) (06/15/2020), # 92 Exhibit (Declaration of Use Agreement) (06/15/2020), # 93 Memorandum of Law in Support (06/15/2020), # 94 Letter to Judge (06/29/2020), # 95 Letter to Judge (06/29/2020), # 96 Exhibit (Correspondence Between Counsel) (06/29/2020), # 97 Decision + Order on Motion (07/01/2020), # 98 Letter to Judge (07/10/2020), # 99 Exhibit (Trump v. Vance Opinion) (07/10/2020), # 100 Letter to Judge (07/14/2020), # 101 Exhibit (Brief for Appellant in Zervos) (07/14/2020), # 102 Letter to Judge (07/15/2020), # 103 Exhibit (Trump v. Mazars Opinion) (07/16/2020), # 104 Letter to Judge (07/16/2020), # 105 Exhibit (Reply Brief of Appellant in Zervos) (07/16/2020), # 106 Letter to Judge (07/17/2020), # 107 Exhibit (Submission to Court of Appeals) (07/17/2020), # 108 Substitution of Attoeney (07/24/2020), # 109 Letter to Judge (07/28/2020), # 110 Exhibit (Letetr response to Court of Appeals) (07/28/2020), # 111 Decision + Order on Motion (08/06/2020), # 112 Notice of Entry (08/08/2020)).(Terrell, Stephen) (Entered: 09/15/2020) |
| 10/05/2020 | 15 | MOTION for Leave to File Amicus Brief *IN SUPPORT OF PLAINTIFFS OPPOSITION TO THE MOTION OF THE UNITED STATES TO SUBSTITUTE ITSELF AS THE DEFENDANT*. Document filed by Government Accountability Project. (Attachments: # 1 Exhibit Amicus Brief).(Kolar, John) (Entered: 10/05/2020) |
| 10/05/2020 | 16 | MEMORANDUM OF LAW in Opposition re: 3 MOTION to Substitute Party. Old Party: Donald J. Trump, New Party: United States of America . . Document filed by E. Jean Carroll. (Attachments: # 1 Affidavit of Roberta A. Kaplan In Support of Plaintiff's Opposition to Defendant's Motion to Substitute, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H).(Kaplan, Roberta) (Entered: 10/05/2020) |
| 10/09/2020 | 17 | LETTER MOTION for Leave to File Excess Pages *re: Reply in support of Motion to Substitute* addressed to Judge Lewis A. Kaplan from Stephen Terrell dated 10/09/2020. Document filed by Donald J. Trump..(Terrell, Stephen) (Entered: 10/09/2020) |
| 10/09/2020 | 18 | ORDER SCHEDULING ORAL ARGUMENT with respect to 3 MOTION to Substitute Party. Old Party: Donald J. Trump, New Party: United States of America. The Court will hear oral argument in the Ceremonial Courtroom on the motion of the United States to substitute the United States for President Donald J. Trump in his individual capacity on Wednesday, October 21, 2020 at 3:30 p.m. Thirty minutes are allocated to each of the plaintiff and the United States. Counsel for each of the plaintiff the defendant, and the United States each shall inform the deputy clerk on or before October 16, 202 of the number of attorneys and their assistants whom that party wishes to have present in the courtroom. The undersigned prohibits the bringing of any Personal Electronic Device or General Purpose Computing Device into courtrooms, witness rooms, robing rooms,jury rooms and associated spaces, and judicial chambers used by him absent written permission granted by him as provided by standing order of the Court. See In the Matter of Personal Electronic Devices and General Purpose Computing Devices, Standing Order MI0–468 (revised), 14–mc–0047 (filed Feb. 27, 2014). That prohibition shall apply to the oral argument an any other proceedings in this case scheduled hereby notwithstanding In re Coronavirus/COVID–19 pandemic, Standing Order MI0–468 (revised), 20–mc–316 (filed Sept. 9, 2020). SO ORDERED. (Signed by Judge Lewis A. Kaplan on 10/9/2020) (jca) (Entered: 10/09/2020) |
| 10/09/2020 | | Set/Reset Hearings: Oral Argument set for 10/21/2020 at 03:30 PM before Judge Lewis A. Kaplan. (jca) (Entered: 10/09/2020) |
| 10/11/2020 | 19 | ORDER granting 17 Letter Motion for Leave to File Excess Pages (HEREBY ORDERED by Judge Lewis A. Kaplan)(Text Only Order) (Kaplan, Lewis) (Entered: 10/11/2020) |
| 10/15/2020 | 20 | ORDER: The argument of the pending motion on October 21 shall take place in Courtroom 21B rather than the ceremonial courtroom. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 10/14/2020) (jca) (Entered: 10/15/2020) |

| | | |
|---|---|---|
| 10/19/2020 | 21 | REPLY MEMORANDUM OF LAW in Support re: 3 MOTION to Substitute Party. Old Party: Donald J. Trump, New Party: United States of America . . Document filed by Donald J. Trump..(Terrell, Stephen) (Entered: 10/19/2020) |
| 10/19/2020 | 22 | MEMORANDUM OF LAW in Opposition re: 15 MOTION for Leave to File Amicus Brief *IN SUPPORT OF PLAINTIFFS OPPOSITION TO THE MOTION OF THE UNITED STATES TO SUBSTITUTE ITSELF AS THE DEFENDANT*. . Document filed by Donald J. Trump..(Terrell, Stephen) (Entered: 10/19/2020) |
| 10/20/2020 | 23 | NOTICE OF APPEARANCE by William Kerwin Lane, III on behalf of Donald J. Trump..(Lane, William) (Entered: 10/20/2020) |
| 10/20/2020 | 24 | ORDER granting 15 Motion for Leave to File Document (HEREBY ORDERED by Judge Lewis A. Kaplan)(Text Only Order) (Kaplan, Lewis) (Entered: 10/20/2020) |
| 10/21/2020 | 25 | LETTER MOTION to Continue *Hearing* addressed to Judge Lewis A. Kaplan from Stephen R. Terrell dated 10/21/2020. Document filed by Donald J. Trump..(Terrell, Stephen) (Entered: 10/21/2020) |
| 10/21/2020 | 26 | ORDER with respect to 25 Letter Motion to Continue. Denied. The Court will hear the government's argument (a) in person if offered by an attorney who is permitted entry to the courthouse under existing rules and orders pertaining to COVID, or (b) by telephone from outside the courthouse if offered by any attorney not eligible to enter the courthouse. Alternatively, the Court will take the motion on submission without oral argument. The undersigned is not authorized to vary the existing restrictions on entry into the courthouse. The government shall advice the Courtroom deputy as promptly as possible what it intends to do.. (Signed by Judge Lewis A. Kaplan on 10/21/2020) (Mohan, Andrew) (Entered: 10/21/2020) |
| 10/21/2020 | 27 | CORRECTED ORDER denying 25 Letter Motion to Continue. Denied. The Court will hear the government's argument (a) in person if offered by an attorney who is permitted entry to the courthouse under existing rules and orders pertaining to COVID, or (b) by telephone from outside the courthouse if offered by any attorney not eligible to enter the courthouse. Alternatively, the Court will take the motion on submission without oral argument. The undersigned is not authorized to vary the existing restrictions on entry into the courthouse. It notes further that, contrary to the government's suggestion, it appears that Virginia was added to the list of Restricted States over a week ago. New York State, Governor Cuomo Announces Three States Added to Travel Advisory (Oct. 13, 2020), available at https://www.govenor.ny.gov/news/govenor–cuomo–announces–three–states–added–travel–advisory (last visited Oct. 21, 2020). The government shall advise the courtroom deputy as promptly as possible what it intends to do. So ordered. (Signed by Judge Lewis A. Kaplan on 10–21–2020) (Mohan, Andrew) (Entered: 10/21/2020) |
| 10/21/2020 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Motion Hearing held on 10/21/2020 re: 3 MOTION to Substitute Party. Old Party: Donald J. Trump, New Party: United States of America . filed by Donald J. Trump. Argument on submission. (Court Reporter Andrew Walker) (Mohan, Andrew) (Entered: 10/21/2020) |
| 10/26/2020 | 28 | TRANSCRIPT of Proceedings re: CONFERENCE held on 10/21/2020 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Andrew Walker, (212) 805–0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/16/2020. Redacted Transcript Deadline set for 11/27/2020. Release of Transcript Restriction set for 1/24/2021..(McGuirk, Kelly) (Entered: 10/26/2020) |
| 10/26/2020 | 29 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 10/21/20 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 10/26/2020) |
| 10/26/2020 | 31 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 9/17/20 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 10/26/2020) |

| | | |
|---|---|---|
| 10/26/2020 | | ***DELETED DOCUMENT. Deleted document number 30 TRANSCRIPT. The document was incorrectly filed in this case as per email of 12/7/2020. (rro) Modified on 12/7/2020 (rro). (Entered: 12/07/2020) |
| 10/27/2020 | 32 | Opinion and Order denying 3 Motion to Substitute Party. The President of the United States is not an employee of the Government within the meaning of the relevant statutes. Even if he were such an employee, President Trumps allegedly defamatory statements concerning Ms. Carroll would not have been within the scope of his employment. Accordingly, the motion to substitute the United States in place of President Trump [Dkt. 3] is denied.. (Signed by Judge Lewis A. Kaplan on 10/26/2020) (Mohan, Andrew) (Entered: 10/27/2020) |
| 10/27/2020 | 33 | RAJ PATEL'S (PRO SE)MOTION FOR PERMISSIVE INTERVENTION. Document filed by Raj Patel.(sc) (Entered: 10/27/2020) |
| 10/27/2020 | 34 | NOTICE OF PRO SE APPEARANCE. Document filed by Raj K. Patel, applicant to intervene in this action. (sc) (Entered: 10/27/2020) |
| 10/27/2020 | 35 | MEMORANDUM OF LAW in Opposition re: 33 MOTION to Intervene. . Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 10/27/2020) |
| 10/28/2020 | 36 | MEMO ENDORSEMENT denying 33 Motion to Intervene. ENDORSEMENT: Denied. See Doe v. Trump, No. 19–9936 (LGS), Dkt. 272 (Mag 26, 2020). SO ORDERED. (Signed by Judge Lewis A. Kaplan on 10/28/2020) (jca) (Entered: 10/28/2020) |
| 10/28/2020 | 37 | MOTION FOR COURT–APPOINTED COUNSEL.Document filed by intervenor–plaintiff applicant , Raj K. Patel.(sc) Modified on 10/28/2020 (sc). (Entered: 10/28/2020) |
| 11/05/2020 | 38 | ORDER denying as moot 37 MOTION FOR COURT–APPOINTED COUNSEL. Denied as moot and on true merits. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 11/5/2020) (jca) (Entered: 11/05/2020) |
| 11/09/2020 | 39 | TRANSCRIPT of Proceedings re: CONFERENCE held on 10/21/2020 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Andrew Walker, (212) 805–0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/30/2020. Redacted Transcript Deadline set for 12/10/2020. Release of Transcript Restriction set for 2/8/2021..(McGuirk, Kelly) (Entered: 11/09/2020) |
| 11/09/2020 | 40 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 10/21/20 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 11/09/2020) |
| 11/11/2020 | 41 | Initial Conference Order: The initial conference by telephone is set for 12/11/2020 at 09:30 AM before Judge Lewis A. Kaplan. Counsel for all parties are directed to confer regarding an agreed scheduling order. If counsel are able to agree on a schedule and the agreed schedule calls for filing of the pretrial order not more than six (6) months from the date of this order, counsel shall sign and file within twenty–one (21) days from the date hereof a consent order in the form annexed for consideration by the Court. If such a consent order is not filed within the time provided, a teleconference will be held on 12/11/2020 at 9:30 AM. The teleconference can be reached by calling 888–363–4749 and using access code 7664205. (Signed by Judge Lewis A. Kaplan on 11/11/2020) (Mohan, Andrew) (Entered: 11/11/2020) |
| 11/11/2020 | 42 | ORDER RE SCHEDULING AND INITIAL PRETRIAL CONFERENCE: It is hereby, ORDERED as follows: Counsel receiving this order shall promptly mail copies hereof to all other counsel of record or, in the case of parties for which no appearance has been made, to such parties. Counsel for all parties are directed to confer regarding an agreed scheduling order. If counsel are able to agree on a schedule and the agreed schedule calls for filing of the pretrial order not more than six (6) months from the date of this order, counsel shall sign and file within twenty–one (21) days from the date hereof a consent order in the form annexed for consideration by the Court. If such a consent order is not filed within the time provided, a teleconference will be held on 12/11/2020 at 9:30 AM. The teleconference can be reached by calling 888–363–4749 and using access code 7664205.( Initial Conference set for 12/11/2020 at 09:30 AM before Judge Lewis A. Kaplan.) (Signed by Judge Lewis A. Kaplan on 11/11/20) (yv) (Entered: 11/12/2020) |

| | | |
|---|---|---|
| 11/16/2020 | 43 | CERTIFICATE OF SERVICE of the Court's Order dated November 11, 2020 (Doc. No. 41) served on Donald J. Trump, in his personal capacity on November 13, 2020 and November 14, 2020. Document filed by E. Jean Carroll..(Matz, Joshua) (Entered: 11/16/2020) |
| 11/20/2020 | 44 | ORDER: This action was commenced against Donald J. Trump in his individual (not his official) capacity in New York State court. By substitution for the original private counsel for Mr. Trump, Mark E. Kasowitz, Christine A. Montenegro, and Paul J. Burgo of the firm of Kasowitz Benson Torres LLP appeared on defendant's behalf on July 24, 2020. Dkt. 14–108. On September 8, 2020, the United States of America – represented by Stephen Terrell and other attorneys at the Department of Justice (the "DOJ") – removed the action to this Court and later moved to substitute the United States as defendant in place of Mr. Trump. Dkt. 1. On October 27, 2020, I denied that motion. Dkt. 33. Section 1450 of the Judicial Code, 28 U.S.C. § 1450, provides in relevant part that "[a]ll injunctions, orders, and other proceedings had in such action [i.e., any removed action] prior to its removal shall remain in full force and effect until dissolved or modified by the district court." Accordingly, by virtue of their appearance on behalf of Mr. Trump in the state court, Messrs. Kasowitz and Burgo and Ms. Montenegro represent Mr. Trump in this removed action unless and until relieved by this Court. Nevertheless, the docket sheet erroneously lists Mr. Terrell and another attorney as counsel for defendant Trump. That is incorrect. They represent only the United States. The Clerk shall correct the docket sheet to reflect that (1) Messrs. Terrell and his colleagues at the DOJ represent only the United States of America and (2) Messrs. Kasowitz and Burgo and Ms. Montenegro represent Mr. Trump. The Clerk shall mail copies of this order, all others entered by this Court subsequent to removal, and the Court's opinion to counsel for Mr. Trump. Attorney Marc E. Kasowitz, Christine A. Montenegro, Paul J. Burgo for Donald J. Trump added. United States of America added. (Signed by Judge Lewis A. Kaplan on 11/18/2020) (tro) Transmission to Docket Assistant Clerk for processing. (Entered: 11/20/2020) |
| 11/20/2020 | | Mailed a copy of 36 Order on Motion to Intervene, 27 Order on Motion to Continue, 20 Order, 38 Order on Application for the Court to Request Counsel, 26 Order on Motion to Continue, 41 Scheduling Order, Set Hearings, 32 Order on Motion to Substitute Party, 13 Order, 11 Memo Endorsement, Set Deadlines, 42 Order for Initial Pretrial Conference, 19 Order on Motion for Leave to File Excess Pages, 9 Order on Motion for Conference, 44 Order, Add and Terminate Attorneys, Add and Terminate Parties, 24 Order on Motion for Leave to File Document, 18 Order on Motion to Substitute Party, to Christine A. Montenegro, Marc E. Kasowitz, Paul J. Burgo at Kasowitz, Benson, Torres LLP (NYC), 1633 Broadway, New York, NY 10019 Via UPS Tracking Number: 1Z E22 E53 37 1005 148 0.(dsh) (Entered: 11/20/2020) |
| 11/25/2020 | 45 | NOTICE OF INTERLOCUTORY APPEAL from 32 Order on Motion to Substitute Party,,. Document filed by United States of America. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Terrell, Stephen) (Entered: 11/25/2020) |
| 11/25/2020 | 46 | NOTICE OF INTERLOCUTORY APPEAL from 32 Order on Motion to Substitute Party,,. Document filed by Donald J. Trump. Filing fee $ 505.00, receipt number ANYSDC−22753482. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Attachments: # 1 Exhibit A – Order Denying Motion to Substitute).(Kasowitz, Marc) (Entered: 11/25/2020) |
| 11/30/2020 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 45 Notice of Interlocutory Appeal..(nd) (Entered: 11/30/2020) |
| 11/30/2020 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 45 Notice of Interlocutory Appeal filed by United States of America were transmitted to the U.S. Court of Appeals..(nd) (Entered: 11/30/2020) |
| 11/30/2020 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 46 Notice of Interlocutory Appeal..(nd) (Entered: 11/30/2020) |
| 11/30/2020 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 46 Notice of Interlocutory Appeal, filed by Donald J. Trump were transmitted to the U.S. Court of Appeals..(nd) (Entered: 11/30/2020) |
| 12/10/2020 | 47 | LETTER MOTION to Stay addressed to Judge Lewis A. Kaplan from Marc E. Kasowitz dated December 10, 2020. Document filed by Donald J. Trump..(Kasowitz, Marc) (Entered: 12/10/2020) |
| 12/11/2020 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Telephone Conference held on 12/11/2020. Plaintiff's opposition to defendants motion to stay is due 12/17/2020 and Defendant's reply is due 12/21/2020. (Court Reporter Andrew Walker) (Mohan, Andrew) (Entered: 12/11/2020) |
| 12/14/2020 | 48 | TRANSCRIPT of Proceedings re: CONFERENCE held on 12/11/2020 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Andrew Walker, (212) 805–0300. Transcript may be viewed at |

| | | |
|---|---|---|
| | | the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/4/2021. Redacted Transcript Deadline set for 1/14/2021. Release of Transcript Restriction set for 3/15/2021..(McGuirk, Kelly) (Entered: 12/14/2020) |
| 12/14/2020 | 49 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 12/11/20 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 12/14/2020) |
| 12/17/2020 | 50 | MEMORANDUM OF LAW in Opposition re: 47 LETTER MOTION to Stay addressed to Judge Lewis A. Kaplan from Marc E. Kasowitz dated December 10, 2020. . Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 12/17/2020) |
| 12/21/2020 | 51 | LETTER REPLY to Response to Motion addressed to Judge Lewis A. Kaplan from Marc E. Kasowitz dated December 21, 2020 re: 47 LETTER MOTION to Stay addressed to Judge Lewis A. Kaplan from Marc E. Kasowitz dated December 10, 2020. . Document filed by Donald J. Trump. (Attachments: # 1 Exhibit 1 – Mar. 9, 2007 LEXIS Decision, In re World Trade Ctr. Disaster Site Litig. (2d Cir.)).(Kasowitz, Marc) (Entered: 12/21/2020) |
| 01/15/2021 | 52 | MOTION for Joshua Matz to Withdraw as Attorney . Document filed by E. Jean Carroll. (Attachments: # 1 Declaration of J. Matz in Support).(Matz, Joshua) (Entered: 01/15/2021) |
| 01/18/2021 | 53 | MOTION for William Kerwin Lane III to Withdraw as Attorney . Document filed by United States of America..(Lane, William) (Entered: 01/18/2021) |
| 01/18/2021 | 54 | ORDER granting 52 Motion to Withdraw as Attorney. Attorney Joshua Adam Matz terminated (Kaplan, Lewis) (Entered: 01/18/2021) |
| 01/18/2021 | 55 | ORDER granting 53 Motion to Withdraw as Attorney.. (Signed by Judge Lewis A. Kaplan on 1/18/2021) (Kaplan, Lewis) (Entered: 01/18/2021) |
| 09/15/2021 | 56 | ORDER denying without prejudice 47 Letter Motion to Stay re: 47 LETTER MOTION to Stay addressed to Judge Lewis A. Kaplan from Marc E. Kasowitz dated December 10, 2020. (HEREBY ORDERED by Judge Lewis A. Kaplan)(Text Only Order) (Kaplan, Lewis) (Entered: 09/15/2021) |
| 11/22/2021 | 57 | PROPOSED ORDER FOR SUBSTITUTION OF ATTORNEY. Document filed by Donald J. Trump..(Habba, Alina) (Entered: 11/22/2021) |
| 11/22/2021 | 58 | CONSENT ORDER GRANTING SUBSTITUTION OF ATTORNEY, The substitution of attorney is hereby approved and SO ORDERED. (Attorney Alina Habba for Donald J. Trump added. Attorney Christine A. Montenegro; Paul J. Burgo and Marc E. Kasowitz terminated.) (Signed by Judge Lewis A. Kaplan on 11/22/21) (yv) (Entered: 11/22/2021) |
| 12/01/2021 | 59 | **FILING ERROR – DEFICIENT DOCKET ENTRY –** MOTION to Amend/Correct *Notice of Defendant's Motion for Leave to Amend his Answer*. Document filed by Donald J. Trump. (Attachments: # 1 Affirmation of Alina Habba, Esq. with Exhibits, # 2 Memorandum of Law, # 3 Proposed Order).(Habba, Alina) Modified on 1/10/2022 (kj). (Entered: 12/01/2021) |
| 12/01/2021 | | **\*\*\*NOTICE TO ATTORNEY TO RE–FILE DOCUMENT – DEFICIENT DOCKET ENTRY ERROR. Notice to Attorney Alina Habba to RE–FILE Document 59 MOTION to Amend/Correct *Notice of Defendant's Motion for Leave to Amend his Answer*.. ERROR(S): Supporting Documents are filed separately, each receiving their own document #. (Supporting Documents are found under the Event Type – Replies, Opposition and Supporting Documents; Rule 56.1 Statement is found under Other Answers). Proposed Order(s) and/or Certificate of Service(s) can be filed with the Motion.. (kj)** (Entered: 01/10/2022) |
| 12/06/2021 | 60 | NOTICE OF APPEARANCE by Joshua Adam Matz on behalf of E. Jean Carroll..(Matz, Joshua) (Entered: 12/06/2021) |
| 12/15/2021 | 61 | **FILING ERROR – DEFICIENT DOCKET ENTRY –** MEMORANDUM OF LAW in Opposition re: 59 MOTION to Amend/Correct *Notice of Defendant's Motion for Leave to Amend his Answer*. . Document filed by E. Jean Carroll..(Kaplan, Roberta) Modified on 1/10/2022 (kj). (Entered: 12/15/2021) |

| | | |
|---|---|---|
| 12/15/2021 | | **\*\*\*NOTICE TO ATTORNEY TO RE–FILE DOCUMENT – DEFICIENT DOCKET ENTRY ERROR. Notice to Attorney Roberta Kaplan to RE–FILE Document 61 Memorandum of Law in Opposition to Motion,. ERROR(S): Supporting and or Opposing/Response Document(s) linked to a deficient entry.. (kj)** (Entered: 01/10/2022) |
| 12/22/2021 | 62 | **FILING ERROR – DEFICIENT DOCKET ENTRY** – REPLY MEMORANDUM OF LAW in Support re: 59 MOTION to Amend/Correct *Notice of Defendant's Motion for Leave to Amend his Answer*. . Document filed by Donald J. Trump..(Habba, Alina) Modified on 1/10/2022 (kj). (Entered: 12/22/2021) |
| 12/22/2021 | | **\*\*\*NOTICE TO ATTORNEY TO RE–FILE DOCUMENT – DEFICIENT DOCKET ENTRY ERROR. Notice to Attorney Alina Habba to RE–FILE Document 62 Reply Memorandum of Law in Support of Motion,. ERROR(S): Supporting and or Opposing/Response Document(s) linked to a deficient entry.. (kj)** (Entered: 01/10/2022) |
| 01/11/2022 | 63 | MOTION to Amend/Correct *Defendant's Answer*. Document filed by Donald J. Trump. (Attachments: # 1 Affirmation of Alina Habba, Esq. with Exhibits, # 2 Text of Proposed Order).(Habba, Alina) (Entered: 01/11/2022) |
| 01/11/2022 | 64 | MEMORANDUM OF LAW in Support re: 63 MOTION to Amend/Correct *Defendant's Answer*. . Document filed by Donald J. Trump..(Habba, Alina) (Entered: 01/11/2022) |
| 01/11/2022 | 65 | MEMORANDUM OF LAW in Opposition re: 63 MOTION to Amend/Correct *Defendant's Answer*. . Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 01/11/2022) |
| 01/28/2022 | 66 | REPLY MEMORANDUM OF LAW in Support re: 63 MOTION to Amend/Correct *Defendant's Answer*. . Document filed by Donald J. Trump..(Habba, Alina) (Entered: 01/28/2022) |
| 02/11/2022 | 67 | ORDER, The Court will hear argument on defendant's motion for leave to file an amended answer on February 17, 2022 at 4:00 p.m. SO ORDERED. ( Oral Argument set for 2/17/2022 at 04:00 PM before Judge Lewis A. Kaplan.) (Signed by Judge Lewis A. Kaplan on 2/11/22) (yv) (Entered: 02/11/2022) |
| 02/11/2022 | | Dial in re Oral Argument set for 2/22/2022 at 04:00 PM in Courtroom 21B, 500 Pearl Street, New York, NY 10007 before Judge Lewis A. Kaplan. Public seating in the gallery of courtroom 21B will be limited due to Covid–19 social distancing requirements. However, the public and press may dial in to listen to the oral argument as scheduled at 1–888–363–4749 and entering conference code 7664205#. Please be aware that Court rules prohibit listeners from recording or rebroadcasting the hearing in whole or in part. (Mohan, Andrew) Modified on 2/14/2022 (Mohan, Andrew). (Entered: 02/11/2022) |
| 02/14/2022 | 68 | LETTER addressed to Judge Lewis A. Kaplan from Alina Habba, Esq. dated 2/14/2022 re: rescheduling oral arguments on Defendant's Motion to amend the answer. Document filed by Donald J. Trump..(Habba, Alina) (Entered: 02/14/2022) |
| 02/14/2022 | 69 | MEMO ENDORSEMENT On the 2/14/2022 letter of Ms. Alina Habba requesting an adjournment of the 2/17/2022 oral argument date. Adjourned until 2/22/22 at 4:00 PM. (Signed by Judge Lewis A. Kaplan on 2/14/2022) (Mohan, Andrew) (Entered: 02/14/2022) |
| 02/22/2022 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan in courtroom 21B: Oral Argument held on 2/22/2022 re: 63 MOTION to Amend/Correct *Defendant's Answer*. filed by Donald J. Trump. Public dial–in line was active. Court's decision reserved. (Court Reporter Rebecca Forman) (Mohan, Andrew) (Entered: 02/23/2022) |
| 02/24/2022 | 70 | JOINT LETTER addressed to Judge Lewis A. Kaplan from Roberta A. Kaplan dated February 24, 2022 re: response to the Court's request concerning previous stays. Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 02/24/2022) |
| 02/24/2022 | 71 | TRANSCRIPT of Proceedings re: CONFERENCE held on 2/22/2022 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Rebecca Forman, (212) 805–0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/17/2022. Redacted Transcript Deadline set for 3/28/2022. Release of Transcript Restriction set for 5/25/2022..(Moya, Goretti) (Entered: 02/24/2022) |
| 02/24/2022 | 72 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 2/22/22 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made |

| | | |
|---|---|---|
| | | remotely electronically available to the public without redaction after 90 calendar days....(Moya, Goretti) (Entered: 02/24/2022) |
| 03/11/2022 | 73 | MEMORANDUM OPINION re: 63 MOTION to Amend/Correct *Defendant's Answer*. filed by Donald J. Trump. Defendant's motion, in his personal capacity, for leave to amend (Dkt. 63) is denied on the ground that the proposed amendment would be futile. In the alternative, it is denied in the exercise of discretion on the grounds that the defendant delayed unduly in seeking leave to amend, that the motion for leave is made at least in part for a dilatory purpose and thus at least in part in bad faith, and that granting the motion would prejudice the plaintiff unduly. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 3/10/22) (yv) (Entered: 03/11/2022) |
| 03/11/2022 | 74 | ENDORSED LETTER addressed to Judge Lewis A. Kaplan from Roberta A. Kaplan dated 3/10/22 re: notify the Court of the attached decision issued by a unanimous panel of the Appellate Division, First Department this afternoon. ENDORSEMENT: The Appellate Division of the New York Supreme Court yesterday held the 2020 amendment to N.Y. Civ. Rts. L. § 76–a has only prospective effect. Gottwald v. Sebert, _ A.D. 3d _, Index No. 653118/2014 (1st Dep'd filed Mar. 10, 2021). Its logic applies equally to the all of the 2020 amendments to the anti–SLAPP law. In the absence of compelling reasons to believe that the New York Court of Appeals would reach a different result, this Court is obliged under Erie to follow it. E.g., Hicks on Behalf of Feiockv. Feiock, 485 U.S. 624, 629–30 & n.3 (1988) (quoting West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237 (1940)); AEI Life LLC v. Lincoln Benfit Life Co., 892 F.3d 126, 138–39 & n.15 (2d Cir. 2018) (quoting Pahuta v. Massey–Ferguson, Inc., 170 F.3d 125, 134 (2d Cir. 1999); Pentech Int'l, Inc. v. Wall Street Clearing Co., 983 F.2d 441, 445 (2d Cir.1993); Deeper Life Christian Fellowship, Inc. v. Sobol, 948 F.2d 79, 84 (2d Cir.1991). Nevertheless, contrary to plaintiff's suggestion, this does not moot the issues addressed in the opinion dated March 10, 2021 (Dkt. 73), as N.Y. Civ. Rts. L. § 70–a applies not only to the commencement of a covered action, but also to its continuation. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 3/11/22) (yv) (Entered: 03/11/2022) |
| 05/05/2022 | 75 | LETTER addressed to Judge Lewis A. Kaplan from Roberta A. Kaplan dated May 5, 2022 re: Agreed discovery schedule. Document filed by E. Jean Carroll. (Attachments: # 1 Text of Proposed Order / [Proposed] Scheduling Order).(Kaplan, Roberta) (Entered: 05/05/2022) |
| 05/05/2022 | 76 | SCHEDULING ORDER: It is hereby ORDERED as follows: 1. The parties shall serve any and all written discovery requests on each other on or before May 27, 2022. 2. The parties shall substantially complete their productions of written discovery and requests for inspection or examination on or before August 3, 2022. 3. Depositions to take place between August 3, 2022, to October 19, 2022. 4. The parties shall make any and all expert disclosures under Rule 26(a)(2) on or before September 16, 2022. 5. The parties shall substantially complete any and all fact discovery on or before October 19, 2022. 6. The parties shall complete any and all expert discovery on or before November 16, 2022. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 5/4/2022) Deposition due by 10/19/2022. Fact Discovery due by 10/19/2022. Expert Discovery due by 11/16/2022. Discovery due by 5/27/2022. (ks) (Entered: 05/05/2022) |
| 07/19/2022 | 77 | SUPPLEMENTAL SCHEDULING ORDER:The existing scheduling order (Dkt 76) is supplemented as follows: 1. All discovery shall be completed on or before November 16, 2022. 2. Any summary judgment motions and a joint pretrial order in the form attached at Annex A to the individual practices of the undersigned (which are posted on the Court's web site) shall be filed on or before December 1, 2022. 3. Absent prior disposition of the case by motion or otherwise, the trial will commence on February 6, 2023 at 9:30 a.m. 4. The parties shall exchange premarked trial exhibits no later than December 8, 2022. 5. Any motions in limine and oppositions thereto shall be filed no later than December 8 and December 15, 2022, respectively. SO ORDERED. Motions due by 12/8/2022. Responses due by 12/15/2022 Discovery due by 11/16/2022. Pretrial Order due by 12/1/2022. Ready for Trial by 2/6/2023. (Signed by Judge Lewis A. Kaplan on 7/19/2022) (tg) (Entered: 07/19/2022) |
| 07/20/2022 | 78 | LETTER MOTION for Conference addressed to Judge Lewis A. Kaplan from Roberta A. Kaplan dated July 20, 2022. Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 07/20/2022) |
| 07/21/2022 | 79 | LETTER addressed to Judge Lewis A. Kaplan from Roberta A. Kaplan, dated July 21, 2022 re: Supplemental Scheduling Order (ECF 77) and Plaintiff's Letter Motion (ECF 78). Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 07/21/2022) |
| 07/26/2022 | 80 | NOTICE OF APPEARANCE by Shawn Geovjian Crowley on behalf of E. Jean Carroll..(Crowley, Shawn) (Entered: 07/26/2022) |
| 07/26/2022 | 81 | NOTICE OF APPEARANCE by Matthew J. Craig on behalf of E. Jean Carroll..(Craig, Matthew) (Entered: 07/26/2022) |

| 08/01/2022 | 82 | LETTER MOTION for Discovery / *Discovery Dispute* addressed to Judge Lewis A. Kaplan from Roberta A. Kaplan, dated August 1, 2022. Document filed by E. Jean Carroll. (Attachments: # 1 Text of Proposed Order [Proposed] Protective and Confidentiality Order).(Kaplan, Roberta) (Entered: 08/01/2022) |
|---|---|---|
| 08/03/2022 | 83 | ORDER: Counsel are advised as follows: 1. Shawn G. Crowley, Esq., who filed a notice of appearance in the first captioned case on July 26, 2022, is a former law clerk to the undersigned. The undersigned co–officiated (with another judge) at the marriage of Ms. Crowley approximately seven years ago. 2. Assistant United States Attorney Jeffrey W. Coyle, who appears for the United States in the second captioned case, which was assigned to the undersigned on August 2, 2022, is a former law clerk to the undersigned. (Signed by Judge Lewis A. Kaplan on 8/3/2022) (rro) (Entered: 08/03/2022) |
| 08/11/2022 | 84 | PROTECTIVE AND CONFIDENTIALITY ORDER...regarding procedures to be followed that shall govern the handling of confidential material...SO ORDERED. (Signed by Judge Lewis A. Kaplan on 8/11/22) (yv) (Entered: 08/11/2022) |
| 08/17/2022 | 85 | ORDER denying 78 Letter Motion for Conference re: 78 LETTER MOTION for Conference addressed to Judge Lewis A. Kaplan from Roberta A. Kaplan dated July 20, 2022. (HEREBY ORDERED by Judge Lewis A. Kaplan)(Text Only Order) (Kaplan, Lewis) (Entered: 08/17/2022) |
| 08/17/2022 | 86 | ORDER terminating 82 Letter Motion for Discovery (HEREBY ORDERED by Judge Lewis A. Kaplan)(Text Only Order) (Kaplan, Lewis) (Entered: 08/17/2022) |
| 08/23/2022 | 87 | PROPOSED STIPULATION AND ORDER. Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 08/23/2022) |
| 08/24/2022 | 88 | STIPULATION AND ORDER. IT IS ACCORDINGLY STIPULATED AND AGREED that the parties' deadline for making their expert disclosures under Rule 26(a)(2) is extended until October 14, 2022. IT IS SO ORDERED. (Signed by Judge Lewis A. Kaplan on 8/24/22) (yv) Modified on 9/13/2022 (yv). (Entered: 08/24/2022) |
| 09/20/2022 | 89 | LETTER addressed to Judge Lewis A. Kaplan from Roberta A. Kaplan dated 8/8/22 re: providing the Court a brief update on discovery; and (2) informing the Court of a case that Plaintiff plans to file against Defendant pursuant to New York's Adult Survivors Act as soon as that statute authorizes us to do so on November 24, 2022. Document filed by E. Jean Carroll.(yv) (Entered: 09/20/2022) |
| 09/20/2022 | 90 | LETTER addressed to Judge Lewis A. Kaplan from Alina Habba dated 8/11/22 re: response to the letter submitted by the plaintiff, E. Jean Carroll ("Plaintiff"), on August 8, 2022. Document filed by Donald J. Trump.(yv) (Entered: 09/20/2022) |
| 09/27/2022 | 91 | USCA OPINION (Certified) as to 46 Notice of Interlocutory Appeal, filed by Donald J. Trump, 45 Notice of Interlocutory Appeal filed by United States of America. USCA Case Number 20–3977–cv (L), 20–3978–cv (Con). Defendant–Appellant Donald J. Trump and Movant–Appellant the United States of America appeal from a judgment of the United States District Court for the Southern District of New York (Kaplan, J.) denying their motion to substitute the United States in this action pursuant to the Westfall Act of 1988. On appeal, appellants argue that substitution is warranted because the President of the United States is a covered government employee under the Westfall Act, and because Trump had acted within the scope of his employment when he made the allegedly defamatory statements denying Plaintiff–Appellee E.Jean Carroll's 2019 sexual1 assault allegations. We REVERSE the District Court's holding that the President of the United States is not an employee of the government under the Westfall Act. And we VACATE the District Court's judgment that Trump did not act within the scope of his employment, and CERTIFY that question to the D.C. Court of Appeals. Judge Calabresi concurs in a separate opinion, and Judge Chin dissents in a separate opinion.. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit. Certified: 9/27/2022. (Attachments: # 1 Concurring by Judge CALABRESI, # 2 Dissenting by Judge Chin).(nd) (Entered: 09/27/2022) |
| 09/27/2022 | | Transmission of USCA Mandate to the District Judge re: 91 USCA Order,,,,,,.(nd) (Entered: 09/27/2022) |
| 09/28/2022 | 92 | LETTER MOTION to Stay addressed to Judge Lewis A. Kaplan from Alina Habba dated 9/28/2022. Document filed by Donald J. Trump..(Habba, Alina) (Entered: 09/28/2022) |
| 09/30/2022 | 93 | LETTER RESPONSE in Opposition to Motion addressed to Judge Lewis A. Kaplan from Roberta A. Kaplan dated September 30, 2022 re: 92 LETTER MOTION to Stay addressed to Judge Lewis A. Kaplan from Alina Habba dated 9/28/2022. . Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 09/30/2022) |

| | | |
|---|---|---|
| 10/03/2022 | 94 | LETTER REPLY to Response to Motion addressed to Judge Lewis A. Kaplan from Alina Habba dated 10/3/2022 re: 92 LETTER MOTION to Stay addressed to Judge Lewis A. Kaplan from Alina Habba dated 9/28/2022. . Document filed by Donald J. Trump..(Habba, Alina) (Entered: 10/03/2022) |
| 10/04/2022 | 95 | LETTER MOTION for Conference re: 92 LETTER MOTION to Stay addressed to Judge Lewis A. Kaplan from Alina Habba dated 9/28/2022. addressed to Judge Lewis A. Kaplan from Alina Habba, Esq. dated 10/4/22. Document filed by Donald J. Trump..(Habba, Alina) (Entered: 10/04/2022) |
| 10/04/2022 | | Set Hearings: Status Conference via–video conference is set for 10/7/2022 at 03:45 PM before Judge Lewis A. Kaplan. Counsel have been sent video–conference invites by email. Public and press may listen in via audio–only by dialing 1–888–363–4749 and entering access code 7664205# Participants and listeners are reminded that recording or re–broadcasting of the conference in whole or in part is prohibited by Court rules. (Mohan, Andrew) (Entered: 10/04/2022) |
| 10/06/2022 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Video–Conference held on 10/6/2022. (Court Reporter Andrew Walker) (Mohan, Andrew) (Entered: 10/06/2022) |
| 10/07/2022 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Interim Pretrial Conference held via video–conference on 10/7/2022. AT&T Line was active for public and press to listen. (Court Reporter Lisa Franko) (Mohan, Andrew) (Entered: 10/07/2022) |
| 10/12/2022 | 96 | MEMORANDUM OPINION: re: 92 LETTER MOTION to Stay. addressed to Judge Lewis A. Kaplan from Alina Habba dated 9/28/2022. filed by Donald J. Trump. The defendant's letter motion [Dkt. 92] is denied. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 10/12/2022) (ama) (Entered: 10/12/2022) |
| 11/10/2022 | 97 | CONSENT LETTER MOTION for Conference addressed to Judge Lewis A. Kaplan from Roberta A. Kaplan dated November 10, 2022. Document filed by E. Jean Carroll. (Attachments: # 1 Exhibit A – D.C. Court of Appeals Order).(Kaplan, Roberta) (Entered: 11/10/2022) |
| 11/17/2022 | 98 | SUPPLEMENTAL LETTER addressed to Judge Lewis A. Kaplan from Roberta A. Kaplan dated November 17, 2022 re: November 11, 2022 LETTER MOTION for Scheduling Conference 97 . Document filed by E. Jean Carroll. (Attachments: # 1 Exhibit A – Correspondence Between Counsel, # 2 Exhibit B – Color–Coded Complaint in Second Action, # 3 Exhibit C – Complaint in Second Action).(Kaplan, Roberta) (Entered: 11/17/2022) |
| 11/18/2022 | | Set/Reset Hearings: Status video–conference set for 11/22/2022 at 03:00 PM to be held by video–conference with audio access for public and press to listen to the proceeding held before Judge Lewis A. Kaplan. Counsel will appear by video. Listeners may dial–in for audio at 1–888–363–4749 and enter conference ID 7664205# Recording or re–broadcasting of the hearing is prohibited by Court rules. (Mohan, Andrew) Modified on 11/20/2022 (Mohan, Andrew). (Entered: 11/18/2022) |
| 11/21/2022 | 99 | LETTER addressed to Judge Lewis A. Kaplan from Alina Habba dated 11/21/2022 Document filed by Donald J. Trump..(Habba, Alina) (Entered: 11/21/2022) |
| 11/22/2022 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan via video–conference: Status Conference held on 11/22/2022. Public dial–in by AT&T conference line was active. (Court Reporter Pam Utter) (Mohan, Andrew) (Entered: 11/22/2022) |
| 11/29/2022 | 100 | ORDER re: Plaintiffs consent letter motion (Dkt 97), as supplemented (Dkt 98), is granted to the extent that (1) the trial of this action is postponed until April 10, 2023, and (2) the Court adopts, for this action only, the proposed schedule for in limine motions and exchange of premarked exhibits. Except as modified by the preceding sentence, the scheduling and supplemental scheduling orders (Dkt 76, Dkt 77) remain in effect. Insofar as plaintiffs motion, as supplemented, relates to the subsequently filed action Carroll v Trump, 22–cv–10016 (LAK), the Court does not now make any rulings. (Signed by Judge Lewis A. Kaplan on 11/29/2022) (Mohan, Andrew) (Entered: 11/29/2022) |
| 11/29/2022 | 101 | LETTER addressed to Judge Lewis A. Kaplan from Alina Habba dated 11/29/2022 re: modified schedule. Document filed by Donald J. Trump..(Habba, Alina) (Entered: 11/29/2022) |
| 11/30/2022 | 102 | MEMO ENDORSEMENT on re: 101 Letter modified schedule filed by Donald J. Trump. ENDORSEMENT: Counsel's understanding is incorrect. As the November 29, 2022 order (Dkt 100) makes quite clear, the scheduling and supplemental scheduling orders remain in effect except to the extent that (I) the trial date has been adjourned until April 10, 2023 and (2) the Court adopted the proposed schedule for in limine motions and exchange of premarked exhibits. It did not adopt the proposal to delay the briefing and filing of any summary judgment motions and the filing of a joint pretrial order for more than two months, which would threaten to delay even the April 10 trial date, should a trial prove necessary. In the circumstances, the Court treats defendant's letter (Dkt 101) as an |

| | | |
|---|---|---|
| | | application for an extension of time for the filing of any summary judgment motions and the joint pretrial order and grants it to the extent that (1) any summary judgment motions shall be filed on or before December 22, 2022, (2) any papers in opposition to any summary judgment motions shall be filed on or before January 12, 2023, (3) any reply papers shall be filed on or before January 19, 2023, and (4) the joint pretrial order shall be filed on or before February 9, 2023. The application is otherwise denied. SO ORDERED., ( Motions due by 12/22/2022., Pretrial Order due by 2/9/2023., Responses due by 1/12/2023, Replies due by 1/19/2023.) (Signed by Judge Lewis A. Kaplan on 11/30/22) (yv) Modified on 12/28/2022 (yv). (Entered: 11/30/2022) |
| 12/02/2022 | 103 | TRANSCRIPT of Proceedings re: CONFERENCE held on 11/22/2022 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Pamela Utter, (212) 805–0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/23/2022. Redacted Transcript Deadline set for 1/3/2023. Release of Transcript Restriction set for 3/2/2023..(McGuirk, Kelly) (Entered: 12/02/2022) |
| 12/02/2022 | 104 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 11/22/2022 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 12/02/2022) |
| 12/05/2022 | 105 | ORDER. If she has not already done so, counsel of record for the defendant in this case shall transmit to the defendant and to any counsel who may have been engaged to represent defendant in Carroll v. Trump, 22–cv–10016 (LAK) ( "Carroll II"), for delivery no later than December 6, 2022, a copy of this Court's order, dated December 2, 2022, in Carroll II Counsel is directed to do so as an officer of the Court. The Court does not imply that she has been or will be engaged to represent the defendant in Carroll II SO ORDERED. (Signed by Judge Lewis A. Kaplan on 12/5/22) (yv) (Entered: 12/05/2022) |
| 12/20/2022 | 106 | PROTECTIVE AND CONFIDENTIALITY ORDER...regarding procedures to be followed that shall govern the handling of confidential material... SO ORDERED. (Signed by Judge Lewis A. Kaplan on 12/20/2022) (vfr) (Entered: 12/20/2022) |
| 12/22/2022 | 107 | MOTION for Summary Judgment . Document filed by Donald J. Trump..(Habba, Alina) (Entered: 12/22/2022) |
| 12/22/2022 | 108 | DECLARATION of Alina Habba in Support re: 107 MOTION for Summary Judgment .. Document filed by Donald J. Trump..(Habba, Alina) (Entered: 12/22/2022) |
| 12/22/2022 | 109 | MEMORANDUM OF LAW in Support re: 107 MOTION for Summary Judgment . . Document filed by Donald J. Trump. (Attachments: # 1 Supplement Statement of Material Facts).(Habba, Alina) (Entered: 12/22/2022) |
| 01/09/2023 | 110 | MOTION for Trevor W. Morrison to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC–27180100. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by E. Jean Carroll. (Attachments: # 1 Affidavit of Trevor W. Morrison, # 2 Exhibit – Certificate of Good Standing, # 3 Text of Proposed Order for Admission Pro Hac Vice).(Morrison, Trevor) (Entered: 01/09/2023) |
| 01/10/2023 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 110 MOTION for Trevor W. Morrison to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC–27180100. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (sgz)** (Entered: 01/10/2023) |
| 01/12/2023 | 111 | LETTER MOTION to Seal addressed to Judge Lewis A. Kaplan from Roberta A. Kaplan dated January 12, 2023. Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 01/12/2023) |
| 01/12/2023 | 112 | MEMORANDUM OF LAW in Opposition re: 107 MOTION for Summary Judgment . . Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 01/12/2023) |
| 01/12/2023 | 113 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Opposition re: 107 MOTION for Summary Judgment . . Document filed by E. Jean Carroll, Donald J. Trump. Motion or Order to File Under Seal: 111 .(Kaplan, Roberta) (Entered: 01/12/2023) |
| 01/12/2023 | 114 | RULE 56.1 STATEMENT. Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 01/12/2023) |

| | | |
|---|---|---|
| 01/12/2023 | 115 | ***SELECTED PARTIES***RULE 56.1 STATEMENT. Document filed by E. Jean Carroll, Donald J. Trump. Motion or Order to File Under Seal: 111 .(Kaplan, Roberta) (Entered: 01/12/2023) |
| 01/12/2023 | 116 | DECLARATION of Roberta A. Kaplan in Opposition re: 107 MOTION for Summary Judgment .. Document filed by E. Jean Carroll. (Attachments: # 1 Exhibit 1 – Excerpts of Deposition of E. Jean Carroll, # 2 Exhibit 2 – New York Magazine Article (Online Version), # 3 Exhibit 3 – June 21, 2019 Statement, # 4 Exhibit 4 – June 22, 2019 Statement, # 5 Exhibit 5 – June 24, 2019 Statement, # 6 Exhibit 6 – Excerpts of Deposition of Donald J. Trump, # 7 Exhibit 7 – Photograph of E. Jean Carroll and Donald Trump, # 8 Exhibit 8 – Excerpts of Deposition of Lisa Birnbach, # 9 Exhibit 9 – Excerpts of Deposition of Carol Martin, # 10 Exhibit 10 – New York Magazine Article (Print Version), # 11 Exhibit 11 – Defendant's Responses and Objections to Plaintiff's First Set of Requests for Admission, # 12 Exhibit 12 – Excerpts of Deposition of Roberta Myers, # 13 Exhibit 13 – Appendix H to Expert Report of Ashlee Humphreys, # 14 Exhibit 14 – Appendix I to Expert Report of Ashlee Humphreys).(Kaplan, Roberta) (Entered: 01/12/2023) |
| 01/12/2023 | 117 | ***SELECTED PARTIES***DECLARATION of Roberta A. Kaplan in Opposition re: 107 MOTION for Summary Judgment .. Document filed by E. Jean Carroll, Donald J. Trump. (Attachments: # 1 Exhibit 1 – Excerpts of Deposition of E. Jean Carroll, # 2 Exhibit 2 – New York Magazine Article (Online Version), # 3 Exhibit 3 – June 21, 2019 Statement, # 4 Exhibit 4 – June 22, 2019 Statement, # 5 Exhibit 5 – June 24, 2019 Statement, # 6 Exhibit 6 – Excerpts of Deposition of Donald J. Trump, # 7 Exhibit 7 – Photograph of E. Jean Carroll and Donald Trump, # 8 Exhibit 8 – Excerpts of Deposition of Lisa Birnbach, # 9 Exhibit 9 – Excerpts of Deposition of Carol Martin, # 10 Exhibit 10 – New York Magazine Article (Print Version), # 11 Exhibit 11 – Defendant's Responses and Objections to Plaintiff's First Set of Requests for Admission, # 12 Exhibit 12 – Excerpts of Deposition of Roberta Myers, # 13 Exhibit 13 – Appendix H to Expert Report of Ashlee Humphreys, # 14 Exhibit 14 – Appendix I to Expert Report of Ashlee Humphreys)Motion or Order to File Under Seal: 111 .(Kaplan, Roberta) (Entered: 01/12/2023) |
| 01/13/2023 | 118 | ORDER granting 110 Motion for Trevor W. Morrison to Appear Pro Hac Vice. (Signed by Judge Lewis A. Kaplan on 1/13/2023) (Mohan, Andrew) (Entered: 01/13/2023) |
| 01/13/2023 | 119 | MEMO ENDORSEMENT Granting the 1/12/2023 letter from Roberta A. Kaplan to Hon. Lewis A. Kaplan requesting provisional approval to file certain materials under seal. (Signed by Judge Lewis A. Kaplan on 1/13/2023) (Mohan, Andrew) (Entered: 01/13/2023) |
| 01/17/2023 | 120 | LETTER addressed to Judge Lewis A. Kaplan from Michael Madaio dated 1/17/2023 re: withdrawing request to seal documents. Document filed by Donald J. Trump..(Madaio, Michael) (Entered: 01/17/2023) |
| 01/18/2023 | 121 | MEMO ENDORSEMENT: on re: 120 Letter filed by Donald J. Trump. ENDORSEMENT: The Clerk Shall unseal the requested portions of defendant's deposition transcript attach by ECF #117. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 1/18/2023) (ama) (Entered: 01/18/2023) |
| 01/19/2023 | 122 | REPLY MEMORANDUM OF LAW in Support re: 107 MOTION for Summary Judgment . . Document filed by Donald J. Trump..(Habba, Alina) (Entered: 01/19/2023) |
| 01/20/2023 | 123 | LETTER addressed to Judge Lewis A. Kaplan from Roberta A. Kaplan, dated January 20, 2023 re: Summary Judgment Reply Brief. Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 01/20/2023) |
| 01/20/2023 | 124 | MEMO ENDORSEMENT on re: 123 Letter Summary Judgment Reply Brief filed by E. Jean Carroll. ENDORSEMENT: Sur–reply due by 1/24/23. No argument. SO ORDERED., ( Surreplies due by 1/24/2023.) (Signed by Judge Lewis A. Kaplan on 1/20/23) (yv) (Entered: 01/20/2023) |
| 01/24/2023 | 125 | SUPPLEMENTAL REPLY MEMORANDUM OF LAW in Opposition re: 107 MOTION for Summary Judgment . . Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 01/24/2023) |
| 02/02/2023 | 126 | LETTER addressed to Judge Lewis A. Kaplan from Cory Gnazzo dated 1/31/23 re: request that the Clerk of Court file a public, unredacted version of ECF No. 112. (yv) (Entered: 02/02/2023) |
| 02/07/2023 | 127 | MEMO ENDORSEMENT: on re: 126 Letter. ENDORSEMENT: The redacted portions of the plaintiffs opposition brief and plaintiffs response to the defendant's Rule 56.1 statement are information drawn from the defendant's deposition transcript,which already has been unsealed pursuant to this Court's order on January 18, 2023 (Dkt 121). The designated portions of plaintiffs opposition filings accordingly no longer need to be sealed. The Clerk shall unseal the designated portions of plaintiffs opposition brief (Dkt 113) and plaintiffs response to defendant's Rule 56.1 statement (Dkt 115). SO ORDERED. (Signed by Judge Lewis A. Kaplan on 2/07/2023) (ama) (Entered: 02/07/2023) |

| 02/09/2023 | 128 | PROPOSED PRE–TRIAL ORDER. Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 02/09/2023) |
|---|---|---|
| 02/13/2023 | 129 | JOINT PRETRIAL ORDER. The parties having conferred among themselves and with the Court pursuant to Fed. R. Civ. P. 16, the following statements, directions and agreements are adopted as the Pretrial Order herein as further set forth in this Order. Carroll and Trump both request that this action be tried by jury. The parties estimate that the trial will take between 5 and 7 days. IT IS SO ORDERED. (Signed by Judge Lewis A. Kaplan on 2/13/23) (yv) (Entered: 02/13/2023) |
| 02/16/2023 | 130 | MOTION in Limine . Document filed by Donald J. Trump..(Habba, Alina) (Entered: 02/16/2023) |
| 02/16/2023 | 131 | MEMORANDUM OF LAW in Support re: 130 MOTION in Limine . . Document filed by Donald J. Trump..(Habba, Alina) (Entered: 02/16/2023) |
| 02/16/2023 | 132 | DECLARATION of Alina Habba in Support re: 130 MOTION in Limine .. Document filed by Donald J. Trump. (Attachments: # 1 Exhibit A – Deposition of Natasha Stoynoff, # 2 Exhibit B – Deposition of Jessica Leeds).(Habba, Alina) (Entered: 02/16/2023) |
| 02/16/2023 | 133 | MOTION in Limine . Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 02/16/2023) |
| 02/16/2023 | 134 | MEMORANDUM OF LAW in Support re: 133 MOTION in Limine . . Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 02/16/2023) |
| 02/16/2023 | 135 | DECLARATION of Roberta A. Kaplan in Support re: 133 MOTION in Limine .. Document filed by E. Jean Carroll. (Attachments: # 1 Exhibit 1 Excerpts of Deposition of Lisa Birnbach, # 2 Exhibit 2 Excerpts of Deposition of Carol Martin, # 3 Exhibit 3 Excerpts of Deposition of Donald J. Trump, # 4 Exhibit 4 Excerpts of Deposition of Natasha Stoynoff, # 5 Exhibit 5 Excerpts of Deposition of Jessica Leeds, # 6 Exhibit 6 Excerpt of Deposition of E. Jean Carroll, # 7 Exhibit 7 Exhibit 33 from the Deposition of Donald J. Trump, # 8 Exhibit 8 Expert Report of Ashlee Humphreys, PhD, # 9 Exhibit 9 Rebuttal Expert Report of Robert J. Fisher, # 10 Exhibit 10 Excerpts of Deposition of Robert J. Fisher, # 11 Exhibit 11 Trumps Initial Disclosures, # 12 Exhibit 12 Trumps Supplemental Expert Disclosures, # 13 Exhibit 13 Trumps Initial Disclosures in Carroll II, # 14 Exhibit 14 – Trumps Supp. Responses to Interrogatories, # 15 Exhibit 15 Aug. 24, 2022 Email from M. Madaio, # 16 Exhibit 16 Exhibit 20 from the Deposition of Donald J. Trump, # 17 Exhibit 17 – Excerpts of Deposition of Stephanie Grisham).(Kaplan, Roberta) (Entered: 02/16/2023) |
| 02/23/2023 | 136 | MEMORANDUM OF LAW in Opposition re: 133 MOTION in Limine . . Document filed by Donald J. Trump..(Habba, Alina) (Entered: 02/23/2023) |
| 02/23/2023 | 137 | DECLARATION of Alina Habba in Opposition re: 133 MOTION in Limine .. Document filed by Donald J. Trump. (Attachments: # 1 Exhibit A – Deposition of Natasha Stoynoff, # 2 Exhibit B – Deposition of Jessica Leeds, # 3 Exhibit C – Expert Report of Robert Fisher, # 4 Exhibit D – Deposition of Robert Fisher, # 5 Exhibit E – Deposition of E. Jean Carroll, # 6 Exhibit F– Deposition of E. Jean Carroll, # 7 Exhibit G – Plaintiff's Second Supplemental Disclosure, # 8 Exhibit H – Plaintiff's Third Supplemental Disclosure).(Habba, Alina) (Entered: 02/23/2023) |
| 02/23/2023 | 138 | MEMORANDUM OF LAW in Opposition re: 130 MOTION in Limine . . Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 02/23/2023) |
| 02/23/2023 | 139 | DECLARATION of Roberta A. Kaplan in Opposition re: 130 MOTION in Limine .. Document filed by E. Jean Carroll. (Attachments: # 1 Exhibit 1 – Excerpts of Deposition of Natasha Stoynoff, # 2 Exhibit 2 – Excerpts of Deposition of Jessica Leeds, # 3 Exhibit 3 – Access Hollywood Video, # 4 Exhibit 4 – Excerpts of Deposition of Donald J. Trump, # 5 Exhibit 5 – Sept. 26, 2016 Debate Video, # 6 Exhibit 6 – Excerpts of Deposition of E. Jean Carroll, # 7 Exhibit 7 – Oct. 13, 2016 Campaign Video 1, # 8 Exhibit 8 – Oct. 13, 2016 Campaign Video 2, # 9 Exhibit 9 – Oct. 13, 2016 Campaign Video 3, # 10 Exhibit 10 – Oct. 14, 2016 Campaign Video 1, # 11 Exhibit 11 – Oct. 14, 2016 Campaign Video 2, # 12 Exhibit 12 – Oct. 21, 2016 Campaign Video, # 13 Exhibit 13 – June 21, 2019 Statement, # 14 Exhibit 14 – June 22, 2019 Statement, # 15 Exhibit 15 – June 24, 2019 Statement, # 16 Exhibit 16 – Oct. 12, 2022 Statement).(Kaplan, Roberta) (Entered: 02/23/2023) |
| 03/02/2023 | 140 | REPLY MEMORANDUM OF LAW in Support re: 130 MOTION in Limine . . Document filed by Donald J. Trump..(Habba, Alina) (Entered: 03/02/2023) |
| 03/03/2023 | 141 | LETTER addressed to Judge Lewis A. Kaplan from Roberta A. Kaplan, dated March 3, 2023 re: Defendants Unauthorized Reply Brief. Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 03/03/2023) |

| 03/03/2023 | 142 | MEMO ENDORSEMENT on re: 141 Letter Defendants Unauthorized Reply Brief filed by E. Jean Carroll. ENDORSEMENT : Reply brief not to exceed 5 pages due by March 9, 2023. SO ORDERED., ( Replies due by 3/9/2023.) (Signed by Judge Lewis A. Kaplan on 3/3/23) (yv) (Entered: 03/03/2023) |
|---|---|---|
| 03/09/2023 | 143 | REPLY MEMORANDUM OF LAW in Support re: 133 MOTION in Limine . . Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 03/09/2023) |
| 03/09/2023 | 144 | DECLARATION of Roberta A. Kaplan in Support re: 133 MOTION in Limine .. Document filed by E. Jean Carroll. (Attachments: # 1 Exhibit 1 – Excerpts of Deposition of Robert J. Fisher in Carroll I, # 2 Exhibit 2 – Excerpt of Deposition of Robert J. Fisher in Carroll II).(Kaplan, Roberta) (Entered: 03/09/2023) |
| 03/10/2023 | 145 | MEMORANDUM OPINION re: 130 MOTION in Limine , filed by Donald J. Trump. For the foregoing reasons, Mr. Trump's in limine motion (Dkt. 130) is denied in all respects. This ruling is without prejudice to renewing his objection to the campaign speech excerpts in the event they are offering at trial. Unless otherwise ordered, those excerpts shall not be mentioned in opening statements. (Signed by Judge Lewis A. Kaplan on 3/10/2023) (tro) (Entered: 03/10/2023) |
| 03/10/2023 | 146 | NOTICE OF APPEARANCE by Michael Ferrara on behalf of E. Jean Carroll..(Ferrara, Michael) (Entered: 03/10/2023) |
| 03/17/2023 | 147 | LETTER MOTION to Consolidate Cases 1:22−cv−10016 for Trial addressed to Judge Lewis A. Kaplan from Roberta A. Kaplan, dated March 17, 2023. Document filed by E. Jean Carroll. (Attachments: # 1 Text of Proposed Order / Stipulation and [Proposed] Order).(Kaplan, Roberta) (Entered: 03/17/2023) |
| 03/20/2023 | 148 | ORDER denying 147 Letter Motion to Consolidate Cases. The letter motion to consolidate these cases for trial, filed in the first captioned case as Dkt 14 7, is denied. The parties overestimate both the judicial economy benefits that would be achieved and the risk of inconsistent rulings that would be eliminated by consolidation. Issue preclusion appears to the Court adequate to achieve appropriate conservation of judicial resources and avoidance of inconsistent rulings even if the two cases were tried separately. Moreover, a trial in 20−cv−7311 conceivably could prove unnecessary. In addition, approval of the consolidation proposal would be in tension with the deference to the Second Circuit and the District of Columbia Court of Appeals that this Court believes appropriate in the circumstances. 2.The trial of 20−cv−7311, previously scheduled tentatively to begin on April 10, 2023, is adjourned sine die. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 3/20/23) (yv) (Entered: 03/20/2023) |
| 04/21/2023 | 149 | OPINION of USCA (Certified Copy) as to 46 Notice of Interlocutory Appeal, filed by Donald J. Trump, 45 Notice of Interlocutory Appeal filed by United States of America USCA Case Number 20−3977−cv (L), 20−3978−cv (Con). Having vacated in our prior opinion the District Court's judgment that Trump did not act within the scope of his employment, Carroll I, 49 F.4th at 761, we now REMAND to the district court for further proceedings consistent with the detailed guidance provided by the D.C. Court of Appeals. The Clerk is directed to issue the mandate forthwith. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit. Certified: 4/21/2023. (tp) Modified on 4/21/2023 (tp). (Entered: 04/21/2023) |
| 04/21/2023 | 150 | MANDATE of USCA (Certified Copy) as to 46 Notice of Interlocutory Appeal, filed by Donald J. Trump, 45 Notice of Interlocutory Appeal filed by United States of America USCA Case Number 20−3977−cv (L), 20−3978−cv (Con). IT IS HEREBY ORDERED, ADJUDGED and DECREED that the cause is REMANDED to the district court for further proceedings consistent with the detailed guidance provided by the D.C. Court of Appeals. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit. Issued As Mandate: 4/21/2023. (Attachments: # 1 Appendix Supporting Document). (tp) (Entered: 04/21/2023) |
| 05/11/2023 | 151 | LETTER addressed to Judge Lewis A. Kaplan from Susan S. Harmon, Esq. dated 5/1/2023 re: Alleged 1996 Rape at Bergdorf Goodman. I have some exculpatory evidence and material to offer in this case in favor of defendant.(Mohan, Andrew) (Entered: 05/11/2023) |
| 05/11/2023 | 152 | MOTION to Intervene. Document filed by Reuben Larson. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Certificate of Service.(vba) (Entered: 05/12/2023) |
| 05/15/2023 | 153 | ORDER. Reuben Larson, appearing prose, has petitioned to "address" and "remonstrance" this Court in relation to the above−captioned matter. Applying a liberal interpretation of his pro se filing, the Court construes his petition as a motion to intervene. That motion is denied both as a matter of law and in the Court's discretion. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 5/11/23) (yv) |

| | | (Entered: 05/15/2023) |
|---|---|---|
| 05/22/2023 | 154 | LETTER addressed to Judge Lewis A. Kaplan from Roberta A. Kaplan, dated May 22, 2023 re: Proposed Schedule. Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 05/22/2023) |
| 05/22/2023 | 155 | MOTION to Amend/Correct . Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 05/22/2023) |
| 05/22/2023 | 156 | MEMORANDUM OF LAW in Support re: 155 MOTION to Amend/Correct . . Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 05/22/2023) |
| 05/22/2023 | 157 | DECLARATION of Roberta A. Kaplan in Support re: 155 MOTION to Amend/Correct .. Document filed by E. Jean Carroll. (Attachments: # 1 Exhibit A – Amended Complaint, # 2 Exhibit B – Redline Comparison).(Kaplan, Roberta) (Entered: 05/22/2023) |
| 05/24/2023 | | ORDER terminating 152 Motion to Intervene (HEREBY ORDERED by Judge Lewis A. Kaplan)(Text Only Order) (Kaplan, Lewis) (Entered: 05/24/2023) |
| 05/24/2023 | 158 | ORDER, 1.Any response to plaintiff's letter of May 22, 2023 shall be filed on or before May 26, 2023. Unless otherwise ordered, any opposition to plaintiff's motion to amend, and any reply in support thereof, under the Rules of this Court, is due on or before June 5, 2023 and June 12, 2023, respectively. 3. Government counsel promptly should begin their review of deposition and other discovery material and such other material as may be appropriate that the United States has not previously considered and that the patties have suggested may be relevant "to the substitution issue." SO ORDERED. ( Replies due by 6/12/2023.) (Signed by Judge Lewis A. Kaplan on 5/24/23) (yv) (Entered: 05/24/2023) |
| 05/26/2023 | 159 | LETTER addressed to Judge Lewis A. Kaplan from Stephen Terrell dated 05/26/2023 re: May 22, 2023, Letter; Order of May 24, 2023. Document filed by United States of America..(Terrell, Stephen) (Entered: 05/26/2023) |
| 05/26/2023 | 160 | LETTER addressed to Judge Lewis A. Kaplan from Alina Habba dated May 26, 2023 re: Response to Plaintiff's Letter. Document filed by Donald J. Trump..(Habba, Alina) (Entered: 05/26/2023) |
| 05/31/2023 | 161 | AFFIDAVIT IN SUPPORT OF MOTION TO INTERVENE(MOTION to Intervene).Document filed by James H. Brady, proposed intervenor. (Attachments: # 1 Exhibit 1, # 2 Certificate of Service)(sc) Modified on 6/1/2023 (sc). (Entered: 06/01/2023) |
| 06/01/2023 | 162 | MEMO ENDORSED ORDER denying 161 Motion to Intervene. ENDORSEMENT: There are only two bases on which one may intervene in a civil action. The first is intervention as of right, which is available only to one who "is given an unconditional right to intervene by a federal statute" or "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless the existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). The second is intervention by permission of the court, which in an appropriate case may be granted if the putative intervenor "is given a conditional right to intervene by a federal statute" or "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Mr. Brady does not satisfy any of these criteria. Accordingly, this motion is denied. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 6/1/23) (yv) (Entered: 06/01/2023) |
| 06/01/2023 | 163 | ORDER: The government shall advise the Court on or before June 9, 2023, whether it is the government's position that the filing of an amended complaint in this case would render the government's previous Westfall Act certification ineffective and moot the government's motion to substitute itself for Mr. Trump under that Act. The Court implies no determination or view as to whether plaintiff's motion for leave to amend the complaint should be granted or denied. (Signed by Judge Lewis A. Kaplan on 6/1/2023) (ate) (Entered: 06/01/2023) |
| 06/05/2023 | 164 | MEMORANDUM OF LAW in Opposition re: 155 MOTION to Amend/Correct . . Document filed by Donald J. Trump..(Habba, Alina) (Entered: 06/05/2023) |
| 06/05/2023 | 165 | DECLARATION of Alina Habba in Opposition re: 155 MOTION to Amend/Correct .. Document filed by Donald J. Trump. (Attachments: # 1 Exhibit A– New York Magazine Article, # 2 Exhibit B – Complaint, # 3 Exhibit C – Carroll II Complaint, # 4 Exhibit D – Relevant Portion of Plaintiff's Trial Testimony, # 5 Exhibit E – Carroll II Jury Verdict, # 6 Exhibit F – Notice of Appeal, # 7 Exhibit G – Defendant's CNN Town Hall Transcript, # 8 Exhibit H – Deposition of E. Jean Carroll).(Habba, Alina) (Entered: 06/05/2023) |

| | | |
|---|---|---|
| 06/09/2023 | 166 | LETTER addressed to Judge Lewis A. Kaplan from Stephen Terrell dated June 9, 20203 re: Order of June 1, 2023. Document filed by United States of America..(Terrell, Stephen) (Entered: 06/09/2023) |
| 06/09/2023 | 167 | LETTER addressed to Judge Lewis A. Kaplan from Roberta A. Kaplan dated 06/09/2023 re: Department of Justice Letter. Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 06/09/2023) |
| 06/12/2023 | 168 | REPLY MEMORANDUM OF LAW in Support re: 155 MOTION to Amend/Correct . . Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 06/12/2023) |
| 06/13/2023 | 169 | ORDER granting 155 Motion to Amend/Correct 155 MOTION to Amend/Correct ., 6 Notice of Removal. The plaintiff's motion for leave to amend [Dkt 155] is granted. A memorandum opinion may follow. The amended complaint is deemed served and filed today. Defendant has requested that the Court, "[s]hould the Court... deny Plaintiff's Motion to Amend" [Dkt 164, at 19], grant defendant permission to file a supplemental motion for summary judgment. As the Court has granted plaintiff's motion, that request is moot. In all the circumstances, any further submission by the United States (including any new or amended certification and/or motion to substitute) and/or the defendant with respect to substitution of the United States for the defendant shall be served and filed no later than July 13, 2023. Any response by the plaintiff shall be served and filed no later than July 27, 2023. Any reply(ies) by the United States and/or the defendant shall be served and filed no later than August 3, 2023. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 6/13/23) (yv) (Entered: 06/13/2023) |
| 06/13/2023 | | Set/Reset Deadlines: Motions due by 7/13/2023. Responses due by 7/27/2023. Replies due by 8/3/2023. (yv) (Entered: 06/13/2023) |
| 06/15/2023 | 170 | ORDER, Unless this case previously has been entirely disposed of, trial of this action shall commence on January 15, 2024 absent contrary order of the Court. ( Jury Trial set for 1/15/2024 at 09:30 AM before Judge Lewis A. Kaplan.) (Signed by Judge Lewis A. Kaplan on 6/15/2023) (Mohan, Andrew) (Entered: 06/15/2023) |
| 06/27/2023 | 171 | AMENDED ANSWER to., COUNTERCLAIM against E. Jean Carroll. Document filed by Donald J. Trump..(Habba, Alina) (Entered: 06/27/2023) |
| 06/29/2023 | 172 | MEMORANDUM OPINION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT re: 107 MOTION for Summary Judgment . filed by Donald J. Trump. For the foregoing reasons, Mr. Trump's motion for summary judgment dismissing the complaint (Dkt 107) and his alternative request for leave to amend his answer to assert the absolute presidential immunity defense are denied. (Signed by Judge Lewis A. Kaplan on 6/29/2023) (tro) (Entered: 06/29/2023) |
| 07/05/2023 | 173 | MEMORANDUM OPINION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (CORRECTED): For the foregoing reasons, Mr. Trump's motion for summary judgment dismissing the complaint (Dkt 107) and his alternative request for leave to amend his answer to assert the absolute presidential immunity defense are denied. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 7/5/2023) (tg) (Entered: 07/05/2023) |
| 07/11/2023 | 174 | MOTION to Dismiss *and Motion to Strike*. Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 07/11/2023) |
| 07/11/2023 | 175 | MEMORANDUM OF LAW in Support re: 174 MOTION to Dismiss *and Motion to Strike*. . Document filed by E. Jean Carroll..(Kaplan, Roberta) (Entered: 07/11/2023) |
| 07/11/2023 | 176 | DECLARATION of Roberta A. Kaplan in Support re: 174 MOTION to Dismiss *and Motion to Strike*.. Document filed by E. Jean Carroll. (Attachments: # 1 Exhibit A – Excerpts of Carroll II Trial Transcript, # 2 Exhibit B – Video Recording of Carroll Interview on CNN, # 3 Exhibit C – Transcript of Carroll Interview on CNN).(Kaplan, Roberta) (Entered: 07/11/2023) |
| 07/11/2023 | 177 | LETTER addressed to Judge Lewis A. Kaplan from James G. Touhey, Jr. dated July 11, 2023 re: Westfall Act Certification. Document filed by United States of America. (Attachments: # 1 Exhibit July 11, 2023, Ltr from Boynton to Counsel).(Terrell, Stephen) (Entered: 07/11/2023) |
| 07/19/2023 | 178 | ORDER, The Court hereby establishes the following procedure. I. On or before August 2, 2023, each party shall file a motion setting forth precisely each fact or proposition of law, if any, as to which the moving party claims Carroll II has preclusive effect in this action. The motion shall be supported by a memorandum of law setting forth the bases for the moving party's claim.No fact or proposition of law not identified in such a motion shall be regarded as having been established by Carroll II 2. Answering and reply papers with respect to any such motion shall be filed on or before August 16, 2023 and August 23, 2023, respectively. SO ORDERED. ( Motions due by 8/2/2023., Replies due by 8/23/2023., Responses due by 8/16/2023) (Signed by Judge Lewis A. Kaplan on 7/19/23) (yv) |

| | | (Entered: 07/19/2023) |
|---|---|---|
| 07/19/2023 | 179 | NOTICE OF INTERLOCUTORY APPEAL from 173 Memorandum & Opinion,. Document filed by Donald J. Trump. Filing fee $ 505.00, receipt number ANYSDC−28020542. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Attachments: # 1 Exhibit Memorandum Opinion Denying Defendant's Motion for Summary Judgment (Corrected)).(Madaio, Michael) (Entered: 07/19/2023) |
| 07/19/2023 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 179 Notice of Interlocutory Appeal. (km) (Entered: 07/19/2023) |
| 07/19/2023 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 179 Notice of Interlocutory Appeal, filed by Donald J. Trump were transmitted to the U.S. Court of Appeals. (km) (Entered: 07/19/2023) |