# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

E. JEAN CARROLL,

*Plaintiff-Appellee,*

v.

DONALD J. TRUMP,

*Defendant-Appellant.*

Nos. 23-1045, 23-1146

## BRIEF OF PLAINTIFF-APPELLEE E. JEAN CARROLL IN OPPOSITION TO EMERGENCY MOTION FOR A STAY PENDING APPEAL

JOSHUA MATZ
KAPLAN HECKER & FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
(212) 763-0883
jmatz@kaplanhecker.com

ROBERTA A. KAPLAN
TREVOR W. MORRISON
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883
rkaplan@kaplanhecker.com
tmorrison@kaplanhecker.com

*Counsel for Plaintiff-Appellee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION .............................................................................1

BACKGROUND ...............................................................................2

ARGUMENT ...................................................................................9

   I.   TRUMP IS NOT ENTITLED TO A STAY PENDING APPEAL...............10

     A. Trump Is Unlikely to Succeed on the Merits ...........................10

       1.   Trump Waived His Immunity Defense ................................10

       2.   Trump's Remaining Arguments Are Waived and Meritless .............14

     B. Trump Will Not Suffer Irreparable Injury Absent a Stay .......................16

     C. A Stay Would Injure Carroll and Undermine the Public Interest ............17

   II. THE DISTRICT COURT RETAINS JURISDICTION...............................19

CONCLUSION .................................................................................21

CERTIFICATE OF COMPLIANCE.......................................................22

CERTIFICATE OF SERVICE ..............................................................23

i

# TABLE OF AUTHORITIES

**Cases**                                                 **Page(s)**

*Apostol v. Gallion*,
   870 F.2d 1335 (7th Cir. 1989)....................................................19

*Carroll v. Trump*,
   49 F.4th 759 (2d Cir. 2022)........................................................4

*Carroll v. Trump*,
   66 F.4th 91 (2d Cir. 2023)..........................................................6

*Clinton v. Jones*,
   520 U.S. 681 (1997).......................................................... 11, 12

*Cohen v. United States*,
   No. 21 Civ. 10774, 2022 WL 16925984 (S.D.N.Y. Nov. 14, 2022)...................12

*District of Columbia v. Trump*,
   959 F.3d 126 (4th Cir. 2020).....................................................12

*Griggs v. Provident Consumer Discount Co.*,
   459 U.S. 56 (1982).................................................................19

*Henderson ex rel. Henderson v. Shinseki*,
   562 U.S. 428 (2011)...............................................................12

*In re World Trade Ctr. Disaster Site Litig.*,
   503 F.3d 167 (2d Cir. 2007).......................................... 9, 17, 19

*K&D, LLC v. Trump Old Post Off., LLC*,
   No. 17 Civ. 731, 2018 WL 6173449 (D.D.C. Nov. 26, 2018) ..........................12

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184 (2d Cir. 2007).......................................................15

*Nevada v. Hicks*,
   533 U.S. 353 (2001)...............................................................11

*New York v. United States Dep't of Com.*,
    339 F. Supp. 3d 144 (S.D.N.Y. 2018)................................................................17

*Nixon v. Fitzgerald*,
    457 U.S. 731 (1982)............................................................................. 11, 12, 13

*Nken v. Holder*,
    556 U.S. 418 (2009)..........................................................................................10

*Otal Invs. Ltd. v. M/V CLARY*,
    673 F.3d 108 (2d Cir. 2012)..............................................................................15

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
    324 U.S. 806 (1945).........................................................................................16

*Ruiz v. Estelle*,
    650 F.2d 555 (5th Cir. 1981).............................................................................15

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994).............................................................................15

*Trump v. Carroll*,
    292 A.3d 220 (D.C. 2023)..................................................................................6

*Trump v. Vance*,
    140 S. Ct. 2412 (2020)................................................................ 3, 11, 12, 13

*Yates v. City of Cleveland*,
    941 F.2d 444 (6th Cir. 1991)............................................................................20

**Federal Rules**

Federal Rule of Appellate Procedure 8...................................................................15

Federal Rule of Appellate Procedure 27.................................................................22

Federal Rule of Appellate Procedure 32.................................................................22

Federal Rule of Civil Procedure 12 ........................................................................7

Federal Rule of Civil Procedure 15 .......................................................................7

**Other Authorities**

Akhil Reed Amar & Neal Kumar Katyal, *Executive Privileges and Immunities: The Nixon and Clinton Cases*, 108 Harv. L. Rev. 701 (1995)............................12

Katie Benner & Charlie Savage, *White House Asked Justice Dept. to Take Over Defamation Suit Against Trump, Barr Says*, N.Y. Times (Sept. 9, 2020).............3

## INTRODUCTION

Defendant-Appellant Donald J. Trump's motion for a stay ignores virtually the entire factual and procedural history of this four-year-old case—and barely responds to Judge Kaplan's decision denying such relief. That is no coincidence. Trump's filing in this Court continues his commitment to procedural gamesmanship.

When tested against precedent and the record, Trump's position collapses. First and most significantly, Trump is highly unlikely to succeed on the merits: his lead argument is foreclosed by authorities to which he does not even attempt a response, and the remaining points that he raises here are waived and meritless. Nor would Trump face substantial injury if he were denied a stay. The harms that he describes are mainly self-inflicted, and his objections to a short trial in January 2024 ring hollow based on his own litigation conduct. Indeed, Trump expressly requested an expedited trial in this case less than six months ago, and changed his mind only after an adverse verdict in a related matter. In contrast, Plaintiff-Appellee E. Jean Carroll, who is 79 years old and faces continuing defamatory attacks from Trump, would suffer significant harm from a stay—and such an order would also undermine core public interests. Although Trump offers a separate, one-page objection to Judge Kaplan's jurisdiction, that argument is foreclosed by Second Circuit law and, in any event, fails because Trump's position is frivolous and his conduct dilatory.

This Court should therefore deny Trump's motion for a stay.

## BACKGROUND

On June 21, 2019, Carroll publicly revealed that Trump had sexually assaulted her decades earlier. Ex. 1 ¶¶ 2-11, 25-81.[1] Trump denied her allegations, but he did not stop there. *Id.* ¶¶ 82-99. In three public statements issued over four days, he accused her of inventing her story to sell books, or to advance a political plot, or because she was paid off. He implied that she had falsely accused other men of sexual assault—and that he wouldn't have assaulted her because she was "not [his] type." *Id.* ¶ 98. As discussed below, a unanimous jury in the Southern District of New York has since determined in a related matter that Trump did, in fact, sexually assault Carroll. *Id.* ¶¶ 150-63. Trump knew what he had done to her when he made the defamatory statements. His attacks aimed to crush her for revealing it.

Faced with Trump's public onslaught, Carroll sought redress through the legal system. In November 2019, she filed a defamation suit in New York state court. Trump initially avoided service and objected to personal jurisdiction; after these evasions failed, he was required to file an answer. Ex. 2. There, he raised nine defenses—but did *not* assert presidential absolute immunity. Instead, he argued only that the Supremacy Clause temporarily shielded him "from suit in state court while serving as President of the United States." *Id.* ¶ 147. Trump then sought a stay on that basis. Ex. 3 at 6 (seeking stay "while he [is] in office"). After Trump filed his

---

[1] "Ex." references are to exhibits attached to the Declaration of Joshua Matz.

stay motion, the U.S. Supreme Court decided *Trump v. Vance*, 140 S. Ct. 2412 (2020), which held that Trump was not immune while serving as president from compliance with a state grand jury subpoena. When Carroll cited *Vance* to argue that a stay should be denied, Trump made a considered strategic choice: he sought to bolster his stay motion by specifically disclaiming any assertion of total immunity from litigation or liability based on his presidential office. He wrote: "[N]o one is seeking to 'escape accountability' here. *Plaintiff is free to pursue this action when the President is no longer in office*." Ex. 4 at 3 (cleaned up, emphasis added).

In August 2020, the state trial court denied Trump's stay motion. Ex. 5. Confronting the onset of fact discovery, Trump pressured the U.S. Department of Justice (DOJ) to remove this case under the Westfall Act and to seek substitution of the United States as the defendant. *See* Katie Benner & Charlie Savage, *White House Asked Justice Dept. to Take Over Defamation Suit Against Trump, Barr Says*, N.Y. Times (Sept. 9, 2020). The case was accordingly removed to the District Court.

In October 2020, Judge Kaplan denied DOJ's motion to substitute. Ex. 6. He reasoned that the Westfall Act does not cover the President and that, alternatively, Trump had exceeded the scope of his federal employment in seeking to punish and denigrate Carroll after she revealed his decades-old private sexual misconduct.

Trump and DOJ appealed. Exs. 7, 8. Trump then sought a stay, advancing many of the same arguments that he raises here. Ex. 9. After Judge Kaplan denied

that motion, however, Trump did not seek appellate relief. Ex. 10. Rather than insist (as he does now) that the District Court lacked jurisdiction during his appeal from the denial of an immunity defense, Trump expanded the litigation. He started by seeking leave to amend his answer to add an anti-SLAPP defense and counterclaim. Ex. 11. Judge Kaplan denied that motion as meritless. Ex. 12 at 23.

Trump responded by doubling down on his efforts to wring advantage from his access to federal court. He proposed (and Carroll agreed to) a discovery schedule. Ex. 13. Over the following months, Trump obtained 30,469 pages of documents from Carroll and hundreds more pages through nonparty subpoenas. Ex. 14 at 1. He also deposed Carroll and five nonparties. *Id.* In contrast, Trump produced only eight documents and four incomplete responses. *Id.* He also violated every deadline for his responses and filed yet another stay motion just before his deposition. Ex. 15; *see also* Ex. 16 (denying stay motion and remarking on Trump's gamesmanship).[2]

Following the close of discovery, Trump filed a proposed schedule for the remainder of the case. Ex. 17. Trump urged the District Court to schedule trial in May 2023—and made no mention of any immunity defense that he might assert.

---

[2] Trump based his second stay motion on this Court's partial resolution of his appeal, which held that the Westfall Act covered the President but certified the scope-of-employment inquiry to the D.C. Court of Appeals. *See Carroll v. Trump*, 49 F.4th 759 (2d Cir. 2022). As Judge Kaplan observed, Trump's position in seeking this stay was both defective and inconsistent with his own litigation conduct. Ex. 16 at 10-15.

Four days later, on November 24, 2022, Carroll filed a separate lawsuit against Trump alleging two new claims: a battery claim for the underlying sexual assault and a defamation claim for a statement that Trump had posted on his social media platform in October 2022. *See Carroll v. Trump*, 22 Civ. 10016 (SD.N.Y.).[3] That second case ("*Carroll II*") was marked as related to this one ("*Carroll I*").

Several weeks later, Trump filed his summary judgment motion in *Carroll I*. Ex. 18. This was the first time in over three years of litigation that Trump sought to invoke presidential absolute immunity. When Carroll pointed out that Trump had waived this affirmative defense, *see* Ex. 19 at 10-16, Trump did not dispute the point. Instead, he asserted in his reply that presidential absolute immunity is jurisdictional and thus non-waivable. *See* Ex. 20 at 1-5; *see also* Ex. 21 (Carroll sur-reply brief explaining why that is wrong). Even after first seeking to raise this absolute immunity defense, however, Trump did not seek a stay from Judge Kaplan. Instead, he conferred with Carroll and agreed to a joint pretrial order. Exs. 22, 23.

Even more remarkably, Trump joined a motion on March 17, 2023—several months *after* he purported to raise his supposedly non-waivable immunity defense— urging Judge Kaplan to consolidate *Carroll I* and *Carroll II* for trial on April 25, 2023. Ex. 24. In other words, Trump asked the District Court to hold an expedited, consolidated trial of *Carroll I* over six months ago; he changed his mind only more

---

[3] Carroll's battery claim had been revived by the New York Adult Survivors Act.

recently, after the *Carroll II* jury found him liable (as we discuss below). On March 25, 2023, Judge Kaplan denied the parties' joint motion to consolidate. Ex. 25.

Meanwhile, the Westfall Act appeal in this case had continued. On April 13, 2023, the D.C. Court of Appeals issued an opinion clarifying District law in response to this Court's certified question about the scope-of-employment issue. *Trump v. Carroll*, 292 A.3d 220 (D.C. 2023). This Court then remanded the appeal to the District Court based on that ruling. *Carroll v. Trump*, 66 F.4th 91, 92 (2d Cir. 2023).

As of April 2023, discovery in this case had concluded, most pre-trial motions had been resolved, the Westfall Act issue had been remanded to Judge Kaplan, and Trump's immunity-based summary judgment motion was pending. At that point, progress in the action paused while *Carroll II* was tried from April 25, 2023 through May 9, 2023. On May 9, 2023, after less than three hours of deliberation, a unanimous nine-person jury found Trump liable for battery (based on a finding of sexual abuse) and defamation (based on his October 2022 statement). *See* Ex. 26. The jury awarded Carroll $5 million in compensatory and punitive damages. *See Id.* As Judge Kaplan has since explained, the *Carroll II* jury found that Trump forcibly inserted his fingers into Carroll's vagina, and that he thus "'raped' her in the broader sense of that word which … includes any penetration by any part of an accused's body (including a finger or fingers) or any other object." Ex. 27 at 41.

After the *Carroll II* trial, Carroll moved to amend her complaint in this action to cover Trump's own testimony, the *Carroll II* verdict, and Trump's post-verdict statements (which made many of the same claims about Carroll that the jury had just found to be defamatory). Exs. 28, 29. Trump responded by lodging yet another counterclaim against Carroll. Ex. 30. Trump's answer also purported to re-raise a defense of presidential absolute immunity. Judge Kaplan subsequently dismissed Trump's counterclaim under Federal Rule of Civil Procedure 12(b)(6); he also struck Trump's attempted reassertion of immunity as legally improper. Ex. 31 at 22, 24.

On June 29, 2023, Judge Kaplan denied Trump's summary judgment motion. Exs. 32, 33. He first explained that presidential absolute immunity is waivable and had been waived. *Id.* at 11-19. He next exercised his discretion under Federal Rule of Civil Procedure Rule 15 to deny leave to amend the answer on two independent grounds: (1) futility and (2) undue delay and unfair prejudice. *Id.* at 19-29.

At this point, Trump could have immediately filed a notice of interlocutory appeal and sought a stay. Instead, he waited another *four weeks*. His delay, moreover, was again strategic. After this Court had remanded the Westfall Act issue to the District Court, DOJ informed Judge Kaplan that it no longer stood by its original Westfall Act certification that Trump had acted within the scope of his employment when he defamed Carroll. Ex. 34. In early July 2023, DOJ was reassessing its position on whether to certify anew that Trump should enjoy Westfall Act immunity.

Ex. 35. Trump wanted such a certification—and apparently had no objection to continued District Court jurisdiction while he waited on DOJ's decision. On July 11, 2023, however, DOJ stated that it would not issue a new certification. Ex. 36.

Trump still did not immediately seek a stay. This was presumably because he hoped that his pending counterclaim would give him the upper hand—a hope that was dashed eight days later, when the District Court denied his motion for a new trial in *Carroll II* in an opinion that rejected the core premise of his counterclaim in *Carroll I* (namely, that the *Carroll II* jury had found that he did not rape Carroll). *See* Ex. 27.[4] Then, on July 25, 2023, it became even clearer to Trump that he faced substantial risk at trial in *Carroll I*: Carroll filed a letter explaining that summary judgment would be warranted on all merits elements of her defamation claim (due partly to collateral estoppel), leaving only a short trial on damages. Ex. 37.

The next day—after these intervening developments had weakened rather than strengthened his position—Trump sought a stay in the District Court. Exs. 38, 39. With respect to likelihood of success on the merits, his motion addressed only Judge Kaplan's holding that presidential absolute immunity is waivable. It did not address any other issue. And it said nothing at all about why Judge Kaplan's thorough analysis of waiver (which it neither quoted nor cited) was mistaken.

---

[4] On August 7, 2023, Judge Kaplan dismissed Trump's counterclaim and struck Trump's effort to re-assert a defense of presidential absolute immunity. Ex. 31.

Judge Kaplan denied Trump's motion. Ex. 40. He found that Trump had not shown a likelihood of success on the merits because Trump "does not address any of this Court's reasoning rejecting his argument." *Id.* at 10. He next found that Trump "effectively has forfeited any claim to irreparable harm in the absence of a stay." *Id.* at 11. Here, Judge Kaplan reasoned that any injury to Trump was the "product of his own decision"—for which Trump "has not offered any explanation"—to wait until the "tail end of this litigation" to attempt to resurrect a defense that he had waived. *Id.* at 11. Turning to the remaining factors, Judge Kaplan found that a stay would cause substantial harm to Carroll and undermine the public interest. *Id.* at 14. Finally, Judge Kaplan held that he retained jurisdiction—and certified that Trump's appeal is frivolous, given Trump's failure to address the District Court's analysis. *Id.* at 17.

## ARGUMENT

"The four factors to be considered in issuing a stay pending appeal are well known: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) ("*In re WTC*") (cleaned up). "The degree to which a factor must be present varies with the strength of the other factors." *Id.* Fundamentally, a stay is "an exercise of judicial discretion,"

and "the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (cleaned up). Here, all four factors weigh heavily against Trump's motion, and his cursory attack on Judge Kaplan's jurisdiction is meritless. Trump's request for a stay should be rejected.

## I.   TRUMP IS NOT ENTITLED TO A STAY PENDING APPEAL

### A.   Trump Is Unlikely to Succeed on the Merits

Trump contends that he is likely to succeed on the merits of three issues that he seeks to raise on appeal. Mot. at 8-17. He is mistaken in every respect.

#### 1.   Trump Waived His Immunity Defense

Trump does not dispute waiving his immunity defense and does not deny that he did so for strategic reasons. Instead, he asserts that he is entitled to change his mind three years later because this defense is a non-waivable issue of jurisdiction. That argument is frivolous—as confirmed by Trump's failure to offer *any* response to Judge Kaplan's thorough explanation of why it is plainly foreclosed.

Trump's argument rests on three premises: (1) presidential absolute immunity is based on the separation of powers; (2) therefore it is "inherently tied to the question of Article III standing"; and (3) therefore it "implicates a court's subject matter jurisdiction." Mot. at 8-11. As Judge Kaplan noted, it "plainly is frivolous" to make these logical leaps, which collapse upon cursory review. Ex. 33 at 18.

10

In *Nixon v. Fitzgerald*, the U.S. Supreme Court held that presidential absolute immunity is a "functionally mandated incident of the President's unique office, rooted in the constitutional tradition of the separation of powers and supported by our history." 457 U.S. 731, 749 (1982). In arriving at this view, *Nixon* first surveyed common law precedents concerning immunity for judges and prosecutors. *See id.* at 744-48. It then drew upon those cases while discussing the "policies and principles" that supported presidential immunity as a constitutional matter. *See id.* at 748-54.

Under these precedents, "[t]here is *no authority whatever* for the proposition that absolute- and qualified-immunity defenses pertain to the court's jurisdiction." *Nevada v. Hicks*, 533 U.S. 353, 373 (2001) (emphasis added). Courts have thus repeatedly held that absolute immunity is an affirmative defense that can be waived and forfeited. *See* Ex. 21 at 2 (collecting cases). As Judge Kaplan recognized, that is true even though the absolute immunity of judges and prosecutors (like that of presidents) rests on constitutional separation-of-powers principles. Ex. 33 at 14-15.

Nothing about *Nixon* suggested a radical departure from this understanding of absolute immunity—let alone that presidential absolute immunity is somehow just like Article III standing. In fact, the opposite is true: *Nixon* "drew a careful analogy to the common law absolute immunity of judges and prosecutors." *Vance*, 140 S. Ct. at 2426. Thus, in both *Clinton v. Jones* and *Trump v. Vance*, *none* of the party briefs and *none* of the opinions described presidential absolute immunity as jurisdictional.

11

*See Clinton*, 520 U.S. 681 (1997); *Vance*, 140 S. Ct. 2412. Nor has any federal appellate court held that presidential absolute immunity is jurisdictional—to the contrary, respected jurists and commentators have confirmed it is not. *See District of Columbia v. Trump*, 959 F.3d 126, 141 (4th Cir. 2020) (en banc) (Niemeyer, J., dissenting) ("[A]ny question of subject matter jurisdiction … must be considered before the merits of the [President's] immunity defense."); Akhil Reed Amar & Neal Kumar Katyal, *Executive Privileges and Immunities: The Nixon and Clinton Cases*, 108 HARV. L. REV. 701, 715 n.53 (1995) ("This immunity is of course waivable.").

That logic is reflected in district court decisions that have dismissed claims on the merits without first considering a presidential absolute immunity defense. *See, e.g.*, *Cohen v. United States*, No. 21 Civ. 10774, 2022 WL 16925984, at *10 n.6 (S.D.N.Y. Nov. 14, 2022) (Liman, J.). Indeed, in one federal case, Trump himself conceded that "absolute presidential immunity" was *not* a "threshold issue[] that *must* be decided before reaching the merits." *K&D, LLC v. Trump Old Post Off., LLC*, No. 17 Civ. 731, 2018 WL 6173449, at *3 n.2 (D.D.C. Nov. 26, 2018).

To be sure, *Nixon* styled part of its discussion as referring to "jurisdiction." 457 U.S. at 753-54. But that was long before the Supreme Court's modern effort to "bring some discipline to the use of this term," *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011), as confirmed by the cases cited in this part of *Nixon*, *see* 457 U.S. at 753-54 (discussing *Steel Seizure* and the Nixon tapes case).

As the opinion makes clear—and as Judge Kaplan observed—*Nixon* did not use "jurisdiction" to refer to "a federal court's fundamental ability to adjudicate a case on its merits." Ex. 33 at 17. Indeed, this would be inconsistent with *Nixon* itself. *See id.* The reference to "jurisdiction" instead occurred in *Nixon*'s broader weighing of interests as to whether absolute immunity should exist in the first place. The Court was not pronouncing on jurisdictional boundaries, but was instead deciding whether federal courts should generally be open to hearing private damages suits against presidents without any absolute immunity defense. *See* 457 U.S. at 754.

This leaves two more serious and unaddressed defects in Trump's position. *First*, the concerns underlying absolute immunity—the risk of distracting a President, or of diverting him from fearless and impartial attention to his duties— offer no support for treating it as non-waivable. *See Vance*, 140 S. Ct. at 2425-26. Presidents do not lightly waive absolute immunity. So there is little risk that Article II functions would be burdened by application of the traditional rule that absolute immunity is a non-jurisdictional affirmative defense that must be properly invoked.

*Second*, as Judge Kaplan highlighted, Trump's position would effectively strip presidents of the choice whether to assert absolute immunity or instead meet a case on the merits. Ex. 33 at 19. This strange result—forcing courts to raise the issue *sua sponte* regardless of a president's preferences—defies precedent and would itself burden Article II prerogatives. *See id.* at 18 (noting that *Nixon* "sought to protect the

president's autonomy, not diminish it by denying the president the ability to choose whether or not to defend himself or herself in a civil lawsuit in federal court").

Given all this, Trump's position is not merely incorrect: it is patently wrong and precluded by the crushing weight of authority. Even more remarkably, Trump has seen all these arguments before and still offers no response to *any* of them in his motion. A position beset by so many (and such grievous) flaws is unlikely to prevail on appeal, especially where its advocates decline to respond to judicial analysis.

Here, Trump expressly waived his immunity as part of a calculated gambit for strategic advantage. Three years later, he changed his mind. But no principle of law or equity supports his effort to declare "backsies." In these circumstances, whether applying ordinary waiver rules or even a heightened standard (though Trump does not urge one), Trump's position utterly "lacks logical coherence." Ex. 33 at 18.

## 2. Trump's Remaining Arguments Are Waived and Meritless

Trump asserts that he is likely to prevail on two other contentions: first, that even if he waived his immunity defense, Judge Kaplan should have revived it by granting Trump leave to amend his answer; and second, that Judge Kaplan erred in striking this defense from Trump's answer to Carroll's amended complaint. These positions should be rejected on waiver grounds. In all events, they are baseless.

14

Starting with waiver: Trump did not present either of these arguments to Judge Kaplan in seeking a stay.[5] This Court "will not consider an issue raised for the first time on appeal." *Otal Invs. Ltd. v. M/V CLARY*, 673 F.3d 108, 120 (2d Cir. 2012). That principle applies with added force under Fed. R. App. P. 8(a), whose principal purpose is to afford the District Court "the opportunity to rule on the reasons and evidence presented in support of a stay." *Ruiz v. Estelle*, 650 F.2d 555, 567 (5th Cir. 1981). For this reason alone, Trump's reliance on these issues must be rejected.

Regardless, Trump's position is incorrect. "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Here, Judge Kaplan reasonably exercised that discretion: his futility analysis is well supported and there is no basis to disturb his reasoned, record-based finding that Trump acted with undue delay, dilatory motive, and bad faith. *See* Ex. 33 at 26-29. The same holds true for Judge Kaplan's ruling on Trump's attempted post-amendment resurrection of his previously waived (and ultimately futile) absolute immunity defense. *See* Ex. 31 at 22; *accord Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

---

[5] Trump filed his stay motion with Judge Kaplan on July 27, 2023. Ex. 38. On August 7, 2023, Judge Kaplan struck Trump's attempt to re-raise immunity. Ex. 31. Trump then had ample opportunity to present this issue to Judge Kaplan, either in his later-filed reply brief or in a new stay motion. But he never did so.

15

**B.      Trump Will Not Suffer Irreparable Injury Absent a Stay**

Trump's motion should also be denied because any injury resulting from the denial of a stay will be wholly self-inflicted and the result of his own gamesmanship. *See Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) ("[H]e who comes into equity must come with clean hands."). Absolute immunity serves important purposes, but can achieve them only if invoked diligently. Here, Trump's litigation conduct has made a mockery of that purpose, undermining his last-minute assertion that proceeding to a short trial (which is virtually all that remains) would burden him intolerably. Ex. 40 at 11-12.

Trump could have raised presidential absolute immunity when this suit was filed in November 2019. Instead, he waived it in state court as part of a strategic decision. When that failed, he solicited a notice of removal to federal court—where he pursued aggressive party and non-party discovery and attempted to lodge a counterclaim against Carroll. His gamesmanship in the case then persisted for years, as he "slow-rolled his defenses, asserting or inventing a new one each time his prior effort to delay the case fail[ed]." Ex. 12 at 19. It was not until December 2022 that Trump sought to assert immunity on a theory of non-waivability at odds with his position in another recent case. *See supra* at 12. While this motion was pending, moreover, Trump sought to lodge yet another counterclaim against Carroll. In that period, Trump also asked Judge Kaplan to *expedite* the trial in this case—the very

same trial that he now claims would constitute irreparable injury. Even after Judge Kaplan denied that motion and later denied his immunity defense, Trump did not seek swift relief. He waited a month, hoping to obtain other strategic advantages. Only after he came up short did Trump finally file a stay motion—in which he did not address two of the three merits arguments that he now attempts to advance here.

As a result, Trump's effort to stay this case has been made with manifestly unclean hands. Indeed, because of Trump's own strategy, many of the harms that he warns against (including discovery) are already in the rear-view mirror. *See* Mot. at 17-18. In these circumstances—and facing only a limited trial likely to last just two or three days—Trump's motion fails to make a showing of harm that justifies a stay. *See New York v. United States Dep't of Com.*, 339 F. Supp. 3d 144, 148 (S.D.N.Y. 2018) ("'Inexcusable delay in filing' a motion to stay 'severely undermines the … argument that absent a stay irreparable harm would result.'" (citation omitted)).

### C.    A Stay Would Injure Carroll and Undermine the Public Interest

Granting a stay would not only unjustly reward Trump's gamesmanship, but would also inflict substantial harm on Carroll, who is 79 years old and has litigated this case for nearly four years. *See In re WTC*, 503 F.3d at 170. A stay would be especially burdensome here because it could cause a spiral of further delays in light of Trump's presidential campaign and other pending civil and criminal matters. *See* Ex. 41 at 9. In contrast, the public interest would be served by the resolution of this

17

case, in which Trump (a candidate for office) is alleged to have used the bully pulpit to defame a private citizen for revealing his personal misconduct. Ex. 40 at 14.

Delay would also injure Carroll for an independent reason: notwithstanding the verdict in *Carroll II* holding him liable for battery and defamation, Trump has continued (as recently as a week ago) to repeat many of the same attacks on Carroll. *See* Ex. 42; *id.* at 6 (Trump statement on August 30, 2023: "The woman that I never met that they accused me of rape; that's being run by a Democrat, a Democrat operative, and paid for by the Democrat Party … These are sick people. These are evil people."); *see also* Ex. 1 ¶ 168 (Trump statement on May 10, 2023: "I have no idea who this woman [is]. This is a fake story, made up story. We had a horrible Clinton-appointed judge. He was horrible … I have no idea who the hell—she's a whack job."). These statements have predictably prompted other chilling online comments about Carroll. *See, e.g.*, Ex. 1 ¶ 172. At trial, Carroll will offer proof of Trump's continuing attacks to support an award of punitive damages—in part, to specifically deter Trump from continuing to target her. Holding a trial in this matter will thus afford the civil justice system an opportunity to more fully remedy and protect Carroll. In contrast, staying proceedings all but indefinitely would reward Trump's behavior and exacerbate concrete, ongoing injuries to Carroll.

These points give lie to Trump's assertion that Carroll would endure only a "minor inconvenience" from a stay. Mot. at 22. They also outweigh his invocation

of the public interest in official immunities, which Trump has hardly sought to vindicate given his waiver of immunity and subsequent procedural gamesmanship.

## II.   THE DISTRICT COURT RETAINS JURISDICTION

This leaves only Trump's assertion that the District Court lacks jurisdiction by virtue of his notice of interlocutory appeal. That argument fails for three reasons.

To start, it is foreclosed by *In re WTC*, 503 F.3d 167. There, Judge Hellerstein denied summary judgment motions based on immunity from suit and the defendants then took an interlocutory appeal. *See id.* at 169. This Court initially stayed all trial court proceedings. *Id.* But after holding oral argument, this Court vacated that stay. *Id.* In so doing, it reasoned that the pending "motion to vacate the stay is inextricably intertwined with the issue of whether the Appellants' notice of appeal from the denial of their [immunity motions] divested the District Court of jurisdiction to proceed with the litigation." *Id.* (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). To answer both of those questions—including, as relevant here, whether the district court retained jurisdiction—this Court applied the standard four-factor framework rather than a formalistic approach. *Id.* at 170-71. And under that traditional framework, as explained above, Trump's motion fails.

Alternatively, Trump's objection to jurisdiction fails both because his appeal is frivolous and because of the dilatory way he sought to assert a defense he waived. The leading case here is *Apostol v. Gallion*, which held that "[c]ourts are not helpless

in the face of manipulation" by defendants who seek to frustrate trial proceedings through abusive invocation of immunities. 870 F.2d 1335, 1339 (7th Cir. 1989). Under *Apostol*, "a district court may certify to the court of appeals that the appeal is frivolous and get on with the trial." *Id.* In addition, "if [defendants] wait too long after the denial of summary judgment, or if they use claims of immunity in a manipulative fashion, they surrender any entitlement to obtain an appellate decision before trial." *Id.* Here, Judge Kaplan has certified Trump's appeal to be frivolous. Ex. 40 at 17. And by any measure, Trump's behavior—waiving absolute immunity for strategic gain, failing to mention it for years, pursuing offensive discovery and counterclaims in the interim, urging Judge Kaplan to hold an expedited trial even after first attempting to raise his immunity, changing his mind after losing *Carroll II*, but still engaging in a month of strategic delay before seeking a stay—qualifies as the sort of conduct supporting the denial of a stay. *See Yates v. City of Cleveland*, 941 F.2d 444, 448-49 (6th Cir. 1991); *id.* at 450-51 (Joiner, J., concurring).

## CONCLUSION

For the foregoing reasons, Trump's motion for a stay should be denied.


Dated:  Washington, D.C.
         September 5, 2023

Respectfully submitted,

*/s/ Joshua Matz*
Joshua Matz
KAPLAN HECKER & FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
(212) 763-0883
jmatz@kaplanhecker.com

Roberta A. Kaplan
Trevor W. Morrison
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883
rkaplan@kaplanhecker.com
tmorrison@kaplanhecker.com

*Counsel for Plaintiff-Appellee*

21

## CERTIFICATE OF COMPLIANCE

This brief complies with the length limits requirements of Fed. R. App. P. 27(d)(2)(A) because this brief contains 5,189 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in size 14 Times New Roman font.

Dated:  September 5, 2023               */s/ Joshua Matz*
                                         Joshua Matz

                                         *Counsel for Plaintiff-Appellee*

## CERTIFICATE OF SERVICE

I, Joshua Matz, counsel for Plaintiff-Appellee and a member of the Bar of this Court, certify that, on September 5, 2023, a copy of the attached brief of Plaintiff-Appellee E. Jean Carroll in opposition to emergency motion for a stay pending appeal and accompanying declaration and exhibits was filed with the Clerk through the Court's electronic filing system.

Dated: September 5, 2023                    */s/ Joshua Matz*
                                            Joshua Matz

                                            *Counsel for Plaintiff-Appellee*