# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | 63ᴿᴰ FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL        929.294.2537
DIRECT EMAIL        jmatz@kaplanhecker.com

September 6, 2023

**BY CM/ECF**

Catherine O'Hagan Wolfe
Clerk of the Court
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

    *Re:*  *Carroll v. Trump*, Nos. 23-1045, 23-1146

Dear Ms. Wolfe,

   I write on behalf of Plaintiff-Appellee E. Jean Carroll pursuant to Federal Rule of Appellate Procedure 28(j).

   Yesterday, Carroll submitted her opposition to Defendant-Appellant Donald J. Trump's emergency motion for a stay. There, Carroll explained that Trump's claim of irreparable injury lacked merit for several reasons—and observed that Trump faces "only a limited trial likely to last just two or three days." Opp. 17.

   Today, Judge Kaplan issued a decision resolving the parties' pending cross-motions for summary judgment. Dkt. 214. His decision—which I have attached as Appendix A—grants partial summary judgment on the merits of Carroll's defamation claim and concludes that "the trial in this case shall be limited to the issue of damages only." *Id.* at 4.

          Sincerely,

          Joshua Matz

# APPENDIX A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

E. JEAN CARROLL,

                              Plaintiff,

                   -against-                                        20-cv-7311 (LAK)

DONALD J. TRUMP, in his personal capacity,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-6-2023

## MEMORANDUM OPINION

Appearances:

          Roberta Kaplan
          Joshua Matz
          Shawn Crowley
          Matthew Craig
          Trevor Morrison
          Michael Ferrara
          KAPLAN HECKER & FINK LLP
          *Attorneys for Plaintiff*

          Alina Habba
          Michael T. Madaio
          HABBA MADAIO & ASSOCIATES LLP
          *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

          This is a defamation case against Donald Trump brought by writer E. Jean Carroll for

certain allegedly defamatory statements he made while he was president in 2019 in response to Ms.

Carroll's public accusation that he sexually assaulted ("raped") her in the mid 1990s. In a closely

related second case known as *Carroll II*, Ms. Carroll brought two other claims against Mr. Trump.[1]

The first was a sexual battery claim pursuant to the Adult Survivors Act ("ASA"), a new law enacted

by New York in 2022 that created a one-year period within which persons who were sexually

assaulted as adults could sue their alleged assaulters even if their claims otherwise would have been

untimely. The second was a defamation claim for a statement published by Mr. Trump on social

media in 2022. In that statement, like in his 2019 statements, Mr. Trump denied Ms. Carroll's

accusation, stated that he did not know her, and claimed that she fabricated her accusation for ulterior

and improper purposes.

      *Carroll II* was tried in this Court in April and May 2023. The jury unanimously

determined that Mr. Trump "sexually abused" Ms. Carroll as that term is defined in the New York

---

[1]    The Court assumes familiarity with its prior decisions in this case ("*Carroll I*") and in *Carroll II*, which detail the facts and procedural histories of both cases. *E.g.*, Dkt 32, *Carroll v. Trump*, 498 F. Supp. 3d 422 (S.D.N.Y. 2020), *rev'd in part, vacated in part*, 49 F.4th 759 (2d Cir. 2022); Dkt 73, *Carroll v. Trump*, 590 F. Supp. 3d 575; Dkt 96, *Carroll v. Trump*, 2022 WL 6897075; Dkt 145, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 2441795 (S.D.N.Y. Mar. 10, 2023); Dkt 173, *Carroll v. Trump*, 2023 WL 4393067; Dkt 200, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 5017230, (S.D.N.Y. Aug. 7, 2023); Dkt 208, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 5312894, (S.D.N.Y. Aug. 18, 2023); Doc. No. 22-cv-10016 (*Carroll II*), Dkt 38, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 185507 (S.D.N.Y. Jan. 13, 2023); *Carroll II*, Dkt 56, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2006312 (S.D.N.Y. Feb, 15, 2023); *Carroll II*, Dkt 92, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 3000562 (S.D.N.Y. Mar. 20, 2023); *Carroll II*, Dkt 95, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2652636 (S.D.N.Y. Mar. 27, 2023); *Carroll II*, Dkt 96, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2669790 (S.D.N.Y. Mar. 28, 2023), *Carroll II*, Dkt 212, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 4612082, (S.D.N.Y. July 19, 2023).

Unless otherwise indicated, Dkt references are to the docket in this case.

Penal Law.[2] It found also that he defamed her in his 2022 statement. In doing so, it found by a preponderance of the evidence that his statement was *defamatory* – that it tended to disparage Ms. Carroll in the way of her profession and/or exposed her to contempt or an evil or unsavory opinion in the minds of a substantial number of people in the community. It found also by clear and convincing evidence that his statement was *false* (not substantially true) and made with *actual malice* (knowing that the statement was false or with reckless disregard to its truth or falsity). It awarded Ms. Carroll $5 million in damages: $2.02 million in compensatory and punitive damages for her battery claim, and $2.98 million in compensatory and punitive damages for her defamation claim.

The matter now is before the Court on the parties' competing motions with respect to the issue preclusive (or "collateral estoppel") effect of the jury's verdict in *Carroll II* in this action. Ms. Carroll argues also that she is entitled to summary judgment on each liability element of her defamation claim in *Carroll I*. She accordingly contends that the trial in this case need address only the issue of damages. Mr. Trump disputes the issue preclusive effect of the *Carroll II* jury's findings on liability. He contends instead that the verdict in *Carroll II* requires that any compensatory damages that might be awarded to Ms. Carroll in this case must be limited by the compensatory

---

[2]    For the reasons discussed in the Court's recent decisions, "based on all of the evidence at trial and the jury's verdict as a whole, the jury's finding that Mr. Trump 'sexually abused' Ms. Carroll implicitly determined that he forcibly penetrated her digitally – in other words, that Mr. Trump in fact did 'rape' Ms. Carroll as that term commonly is used and understood in contexts outside of the New York Penal Law." *Carroll*, 2023 WL 5017230, at *1. *See also id.*, 2023 WL 4612082, at *20. In the alternative, the Court found, pursuant to Federal Rule of Civil Procedure 49, that "Mr. Trump forcibly digitally penetrated Ms. Carroll's vagina." *Id.*, 2023 WL 4612082, at *19 n.70.

4

damages the jury awarded in *Carroll II*.[3]  For the reasons discussed below, Ms. Carroll's motion for

partial summary judgment is granted. The trial in this case shall be limited to the issue of damages

only. Mr. Trump's motion is denied.

## *Facts*

*Mr. Trump's 2019 Statements*

Ms. Carroll's accusation that Mr. Trump sexually assaulted ("raped") her first became

public on June 21, 2019, when *New York* magazine published on the Internet an excerpt from Ms.

Carroll's then-forthcoming book in which she described the incident with Mr. Trump. In the ensuing

hours and days, Mr. Trump issued three statements that are the subjects of this case:

*Statement One – June 21, 2019*

"Regarding the 'story' by E. Jean Carroll, claiming she once encountered me

at Bergdorf Goodman 23 years ago. I've never met this person in my life. She is

trying to sell a new book – that should indicate her motivation. It should be sold in

the fiction section.

Shame on those who make up false stories of assault to try to get publicity for

themselves, or sell a book, or carry out a political agenda – like Julie Swetnick who

---

[3]

Mr. Trump moved also to preclude Ms. Carroll "from arguing that her defamatory statement
was not false" in relation to his previously filed counterclaim alleging that Ms. Carroll
defamed him in her interview statements following the *Carroll II* verdict. Dkt 194 (Def.
Mem.) at 3. On August 7, 2023, this Court dismissed Mr. Trump's counterclaim.  Dkt 200.
Accordingly, Mr. Trump's application with respect to his previously filed counterclaim is
denied on the ground that it is moot.

5

falsely accused Justice Brett Kavanaugh. It's just as bad for people to believe it, particularly when there is zero evidence. Worse still for a dying publication to try to prop itself up by peddling fake news – it's an epidemic.

Ms. Carroll & New York Magazine: No pictures? No surveillance? No video? No reports? No sales attendants around I would like to thank Bergdorf Goodman for confirming that they have no video footage of any such incident, because it never happened.

False accusations diminish the severity of real assault. All should condemn false accusations and any actual assault in the strongest possible terms.

If anyone has information that the Democratic Party is working with Ms. Carroll or New York Magazine, please notify us as soon as possible. The world should know what's really going on. It is a disgrace and people should pay dearly for such false accusations."[4]

*Statement Two – June 22, 2019*

"[Reporter]: [Y]ou had said earlier that you never met E. Jean Carroll. There was a photograph of you and her in the late 1980's —

[Trump]: I have no idea who this woman is. This is a woman who has also accused other men of things, as you know. It is a totally false accusation. I think she was married – as I read; I have no idea who she is – but she was married to a,

---

[4]

Dkt 157-1 (Pl. Amend. Cpt.) at 15-16, ¶ 83.

actually, nice guy, Johnson – a newscaster.

[Reporter]: You were in a photograph with her.

[Trump]: Standing with coat on in a line – give me a break – with my back to the camera. I have no idea who she is. What she did is – it's terrible, what's going on. So it's a total false accusation and I don't know anything about her. And she's made this charge against others.

And, you know, people have to be careful because they're playing with very dangerous territory. And when they do that – and it's happening more and more. When you look at what happened to Justice Kavanaugh and you look at what's happening to others, you can't do that for the sake of publicity.

New York Magazine is a failing magazine. It's ready to go out of business, from what I hear. They'll do anything they can. But this was about many men, and I was one of the many men that she wrote about. It's a totally false accusation. I have absolutely no idea who she is. There's some picture where we're shaking hands. It looks like at some kind of event. I have my coat on. I have my wife standing next to me. And I didn't know her husband, but he was a newscaster. But I have no idea who she is – none whatsoever.

It's a false accusation and it's a disgrace that a magazine like New York – which is one of the reasons it's failing. People don't read it anymore, so they're trying to get readership by using me. It's not good.

You know, there were cases that the mainstream media didn't pick up. And I don't know if you've seen them. And they were put on Fox. But there were

numerous cases where women were paid money to say bad things about me. You can't do that. You can't do that. And those women did wrong things – that women were actually paid money to say bad things about me.

But here's a case, it's an absolute disgrace that she's allowed to do that."[5]

*Statement Three – June 24, 2019*

"I'll say it with great respect: Number one, she's not my type. Number two, it never happened. It never happened, OK?"[6]

*Mr. Trump's 2022 Statement*

On October 12, 2022, Mr. Trump published the following statement, which was the subject of Ms. Carroll's defamation claim in *Carroll II*, on Truth Social, his social media platform:

"This 'Ms. Bergdorf Goodman case' is a complete con job[.] . . . She completely made up a story that I met her at the doors of this crowded New York

---

[5]

*Id.* at 18, ¶ 92.

[6]

*Id.* at 20, ¶ 98.

Mr. Trump contends that the jury in *Carroll II* did not consider the portion of his statement that Ms. Carroll is not his type. Ms. Carroll counters that she "has never argued that this portion of [Mr.] Trump's June 24, 2019 statement is false or defamatory" and instead contends that this portion "is relevant because it reveals [Mr.] Trump's mental state and malicious intent." Dkt 213 (Pl. Second Reply Mem.) at 4, n. 2. That leaves only the second portion of Mr. Trump's June 24, 2019 statement, "[I]t never happened. It never happened, OK?". Given that neither party adequately has addressed whether or not summary judgment should be granted or denied as to that allegedly defamatory portion of the June 24, 2019 statement, the Court does not now decide the issue.

City Department Store and, within minutes, 'swooned' her. It is a Hoax and a lie[.] . . . She has no idea what day, what week, what month, what year, or what decade this so-called 'event' supposedly took place. The reason she doesn't know is because it never happened, and she doesn't want to get caught up with details or facts that can be proven wrong. If you watch Anderson Cooper's interview with her, where she was promoting a really crummy book, you will see that it is a complete Scam. She changed her story from beginning to end, after the commercial break, to suit the purposes of CNN and Andy Cooper. . . . In the meantime, and for the record, E. Jean Carroll is not telling the truth, is a woman who I had nothing to do with, didn't know, and would have no interest in knowing her if I ever had the chance."[7]

*The Jury's Findings in Carroll II*

As this Court previously has set forth, the jury in *Carroll II* made the following explicit findings reflected in its special verdict form, which consisted of factual questions going to liability and damages on both of Ms. Carroll's claims. With respect to Ms. Carroll's sexual battery claim, the jury found by a preponderance of the evidence that:

- "Mr. Trump sexually abused Ms. Carroll.

- Mr. Trump injured her in doing so.

- Mr. Trump's conduct was willfully or wantonly negligent, reckless, or done with a conscious disregard of the rights of Ms. Carroll, or was so reckless as

---

[7]  *Carroll II*, 22cv10016, Dkt 1 (Cpt.) 18, ¶ 92.

to amount to such disregard.

- Ms. Carroll was entitled to compensatory and punitive damages on the sexual battery claim of $2.02 million ($2 million in compensatory damages and $20,000 in punitive damages)."[8]

With respect to her defamation claim, the jury found by clear and convincing evidence that:

- "Mr. Trump's October 12, 2022 statement was . . . false (*i.e.*, not substantially true).

- Mr. Trump made that statement with actual malice – that is, that when he made the statement, Mr. Trump knew that it was false, had serious doubts as to its truth, or had a high degree of awareness that the statement probably was false."[9]

It found also by a preponderance of the evidence that:

- "Mr. Trump's October 12, 2022 statement was defamatory [(*i.e.*, that the statement tended to disparage Ms. Carroll in the way of her profession and/or exposed her to contempt or an evil or unsavory opinion in the minds of a substantial number of people in the community)] . . . .

- Ms. Carroll was injured as a result of Mr. Trump's publication of the October 12, 2022 statement.

- Mr. Trump acted maliciously, out of hatred, ill will, spite or wanton, reckless,

---

[8]     *Carroll*, 2023 WL 4612082, at *16 (footnote, internal quotation marks, and emphases omitted).

[9]     *Id.* at *16-17 (footnote, internal quotation marks, and emphases omitted).

or willful disregard of the rights of another.

- Ms. Carroll was entitled to $2.98 million in compensatory and punitive damages on the defamation claim relating to the October 12, 2022 statement ($1.7 million in compensatory damages for the reputation repair program only, $1 million in compensatory damages for damages other than the reputation repair program, and $280,000 in punitive damages)."[10]

### *Discussion*

*Legal Standard*

The parties' motions concern the standards governing issue preclusion ("collateral estoppel") as well as summary judgment. In this case, New York law governs the issue preclusive effect of the jury's verdict in *Carroll II*.[11] Under New York law, "[c]ollateral estoppel comes into

---

[10]
    *Id.* (footnotes, internal quotation marks, and emphases omitted).

    The "reputation repair program" refers to the efforts to repair the harm to Ms. Carroll's reputation caused by Mr. Trump's 2022 statement based on the testimony of Ms. Carroll's expert, Professor Ashlee Humphreys.

[11]
    *E.g.*, *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001); *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir.), *certified question accepted*, 36 N.Y.3d 1077, *and certified question answered*, 37 N.Y.3d 591 (2021).

    Mr. Trump has appealed the *Carroll II* judgment and claims that he "will be vigorously contesting the jury's verdict before the [Second Circuit]." Dkt 206 (Def. First Opp. Mem.) at 3. He concedes, however, that under New York law "the 'pendency of an appeal does not prevent the use of the challenged judgment as the basis of collateral estoppel[.]'" *Id.* (quoting *Anonymous v. Dobbs Ferry Union Free Sch. Dist.*, 19 A.D.3d 522, 522 (2d Dept. 2005)). His assertion that he "reserves all rights to seek to vacate any preclusive effect that the *Carroll II* judgment may be granted in the instant action" should the Circuit decide in his favor in his appeal is of no relevance or import to this decision. *Id.*

play when four conditions are fulfilled: "(1) the issues in both proceedings are identical, (2) the issue

in the prior proceeding was actually litigated and decided, (3) there was a full and fair opportunity

to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a

valid and final judgment on the merits.'"[12]

       The standards governing summary judgment are well settled:

> "Summary judgment may be granted only where there is no genuine issue as
> to any material fact and the moving party . . . is entitled to a judgment as a matter of
> law. . . . In ruling on a motion for summary judgment, a court must resolve all
> ambiguities and draw all factual inferences in favor of the nonmoving party. . . . To
> grant the motion, the court must determine that there is no genuine issue of material
> fact to be tried."[13]

A party may be entitled to summary judgment based upon the application of facts established by

reason of collateral estoppel.[14]

---

[12]    *Conason v. Megan Holding, LLC*, 25 N.Y.3d 1, 17 (2015) (quoting *Alamo v. McDaniel*, 44
A.D.3d 149, 153, (1st Dept.2007)).

    Ms. Carroll points out that "New York courts are divided on whether there is an additional,
fifth requirement: namely, that the specific issue must also be decisive of the present action
to have preclusive effect." Dkt 190 (Pl. Mem.) at 11. As Mr. Trump does not rely on any
contention that any of the findings in *Carroll II* should be denied issue preclusive effect
because it was not decisive, there is no need to address this question.

[13]    *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (citations omitted).

[14]    *E.g., SEC v. Lorin*, No. 90-CV-7461 (PNL), 1993 WL 77372, at *1 (S.D.N.Y. Mar. 15,
1993), *aff'd*, 14 F.3d 591 (2d Cir. 1993) ("The SEC is entitled to summary judgment by
reason of collateral estoppel as to those facts alleged by the SEC in its complaint that were
necessarily found to have been established by the jury in its return of a verdict of guilty on
the five counts of the criminal indictment against [the defendant]."); *Carney v. Illarramendi*,

*Mr. Trump's 2019 Statements Were Defamatory*

To prevail on her defamation claim, Ms. Carroll bears the burden of proving by a preponderance of the evidence that Mr. Trump's 2019 statements (1) were published to a third party, (2) were of and concerning Ms. Carroll, and (3) were likely to be understood as defamatory by the ordinary person.[15] In addition, she must prove by clear and convincing evidence that Mr. Trump's statements were (4) false, and (5) published with actual malice, "that is, [with] either knowledge of falsity or reckless disregard of the truth."[16]

The jury in *Carroll II* found that Mr. Trump defamed Ms. Carroll in his 2022 statement. In doing so, it determined – in accordance with the Court's instructions – that Mr. Trump's 2022 statement "tend[ed] to disparage a person in the way of that person's business or office or profession or trade" or that "it tend[ed] to expose someone to hatred or contempt or aversion or to induce an evil or an unsavory opinion of that person in the minds of a substantial number of people in the community, even though it may impute no moral turpitude to the person."[17]

As Ms. Carroll contends, "the content of the June 2019 statements and the October

---

No. 3:12-CV-00165 (SRU), 2018 WL 1472510, at *10 (D. Conn. Mar. 26, 2018), *aff'd*, 768 F. App'x 88 (2d Cir. 2019) ("Because the material facts are established by operation of collateral estoppel, all that remains is to determine whether the receiver is entitled to judgment as a matter of law.").

[15]     *E.g.*, *Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 176 (2d Cir. 2000).

Mr. Trump does not dispute the first two liability elements, that his 2019 statements were published to a third party and that they were of and concerning Ms. Carroll. Summary judgment therefore is granted in favor of Ms. Carroll with respect to those two elements.

[16]     *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001).

[17]     *Carroll II*, 22cv10016, Dkt 201 (Trial Tr.) at 1429:17-23 (emphasis added).

2022 statements are 'substantially the same.'"[18]  In each of his first two 2019 statements, Mr. Trump

claimed that Ms. Carroll lied about him sexually assaulting her for improper and ulterior purposes.[19]

He asserted also in those statements a variation of his claim in his 2022 statement that "E. Jean

Carroll is . . . a woman who I had nothing to do with, [and] didn't know . . . ."[20]  Accordingly, given

that the substantive content of Mr. Trump's 2022 statement, which the jury in *Carroll II* found to

be defamatory, is identical to the substantive content of Mr. Trump's 2019 statements, the jury's

finding in *Carroll II* is controlling in this case.

> Mr. Trump contends that "the substance of the June 2019 statements differs in several

significant respects from the October 2022 statement."[21]  He argues first that "the October 2022

statement does not contain any allegation that Plaintiff fabricated the allegations in order to promote

---

[18]  Dkt 190 (Pl. Mem.) at 16 (quoting *Napoli v. Breaking Media, Inc.*, 187 A.D.3d 1026, 1028 (2d Dept. 2020)).

[19]  *E.g.., Carroll II*, 22cv10016, Dkt 1 (Cpt.) 18, ¶ 92 ("She [(Ms. Carroll)] completely made up a story[.] . . . It is a Hoax and a lie[.] . . . If you watch Anderson Cooper's interview with her, where she was promoting a really crummy book, you will see that it is a complete Scam. She changed her story from beginning to end, after the commercial break, to suit the purposes of CNN and Andy Cooper."); Dkt 157-1 (Pl. Amend. Cpt.) at 16, ¶ 83 ("She is trying to sell a new book – that should indicate her motivation. . . . Shame on those who make up false stories of assault to try to get publicity for themselves, or sell a book, or carry out a political agenda."); *Id.* at 18, ¶ 92 ("It is a totally false accusation. . . . When you look at what happened to Justice Kavanaugh and you look at what's happening to others, you can't do that for the sake of publicity.").

[20]  *E.g.*, Dkt 157-1 (Pl. Amend. Cpt.) at 16, ¶ 83 ("I've never met this person [(Ms. Carroll)] in my life."); *Id.* at 18, ¶ 92 ("I have no idea who this woman is.").

[21]  Dkt 211 (Def. Second Opp. Mem.) at 12.

her book."[22] Second, he points to the fact that "the statement made no mention of Plaintiff furthering a political agenda, nor did it assert that she was receiving funding from outside sources to further her claims."[23] These points, however, undermine rather than support Mr. Trump's position.

If the jury in *Carroll II*, as Mr. Trump argues, did not determine that his 2022 statement was defamatory because it accused Ms. Carroll of fabricating her sexual assault allegation to promote her book and/or for political purposes, then by Mr. Trump's own logic, the jury must have determined that his statement was defamatory on the ground that it accused Ms. Carroll of lying about the sexual assault. That issue is common to and decisive of the defamatory nature of Mr. Trump's 2019 statements. The possibility that Mr. Trump's 2019 statements were more egregiously defamatory than his 2022 statement (an issue that the Court need not resolve here) does not diminish the issue preclusive effect of the jury's finding in *Carroll II*. The question is whether Mr. Trump defamed Ms. Carroll in his 2019 statements, not whether he defamed her in those statements to an extent *greater* than he did in his 2022 statement.

In any event, Mr. Trump does not address *at all* Ms. Carroll's alternative argument that she is "entitled to summary judgment because no reasonable juror could find that [Mr.] Trump's June 2019 statements lacked defamatory meaning: he accused [Ms.] Carroll of fabricating a sexual assault allegation in order to make money, advance political goals, and achieve other plainly improper purposes."[24] She contends that "[s]uch statements, especially when issued by the sitting

---

22      *Id.*

23      *Id.*

24      Dkt 190 (Pl. Mem.) at 17.

President and broadcast widely, would inevitably tend to expose [Ms.] Carroll to hatred and contempt or to induce an unsavory opinion of her in the minds of a substantial number of people in the community."[25]  In the absence of any opposition by Mr. Trump, let alone any showing of the existence of a genuine issue of material fact with respect to the defamatory meaning of his 2019 statements, the Court agrees that Ms. Carroll is entitled to summary judgment on this element regardless of any issue preclusive effect of the verdict in *Carroll II*.[26]

### *Mr. Trump's 2019 Statements Were False*

The jury's verdict in *Carroll II* plainly established that Mr. Trump's 2019 statements were false (not substantially true). In *Carroll II*, the truth or falsity of Mr. Trump's 2022 statement – which, as set forth above, accused Ms. Carroll of lying about Mr. Trump sexually assaulting her for improper and ulterior purposes – depended upon whether Mr. Trump sexually assaulted Ms. Carroll. The jury answered that question in the affirmative twice. First, it found by a preponderance of the evidence that Mr. Trump sexually abused Ms. Carroll. Second, it determined by clear and convincing evidence that Mr. Trump's 2022 statement was false. As this Court instructed the jury:

"[W]hether Mr. Trump's [2022] statement is false or true depends *largely or*

---

[25]

    *Id.*

[26]

    *See Curry v. Roman*, 217 A.D.2d 314, 318-19 (4th Dept. 1995) ("Once the court concludes that the statements are reasonably susceptible of a defamatory connotation, it becomes a jury function, if the words are susceptible of several different meanings, to determine whether that was the sense in which the words were likely to be understood by the ordinary and average reader or listener . . . . If the words, however, are unambiguous and admit but one meaning, the court should resolve the issue . . . . We conclude that the words used by defendants, which accused plaintiffs of specific criminal conduct . . . , were clear and unambiguous, and were defamatory as a matter of law.") (citations omitted).

16

> *entirely* on whether you find that Mr. Trump raped or sexually abused or forcibly
> touched or otherwise sexually attacked Ms. Carroll."[27]

Pursuant to the presumption that the jury followed the Court's instructions, its finding that Mr.

Trump's 2022 statement was false necessarily implies that it determined by clear and convincing

evidence that Ms. Carroll did not fabricate her sexual assault accusation.

Mr. Trump's 2019 statements raise this identical issue. "The core of Ms. Carroll's

defamation claim [in this case] is that Mr. Trump *lied in accusing her of fabricating her sexual*

*assault allegation against him in order to increase sales of her book and for other improper*

*purposes* and that he thus caused Ms. Carroll professional and reputational harm as well as emotional

pain and suffering."[28] The truth or falsity of Mr. Trump's 2019 statements therefore depends – like

the truth or falsity of his 2022 statement – on whether Ms. Carroll lied about Mr. Trump sexually

assaulting her. The jury's finding that she did not therefore is binding in this case and precludes Mr.

Trump from contesting the falsity of his 2019 statements.[29]

---

[27]      *Carroll II*, 22cv10016, Dkt 201 (Trial Tr.) at 1431:2-6 (emphasis added).

[28]      *Carroll*, 2023 WL 4393067, at *4 (emphasis added).

[29]      In theory, it is possible that the jury in *Carroll II* could have determined that Mr. Trump's 2022 statement was false because Ms. Carroll did not possess any nefarious purpose, without regard to whether she lied about the assault. Mr. Trump does not make this argument. In fact, he repeatedly contends the opposite. *E.g.*, Dkt 206 (Def. First Opp. Mem.) at 5 ("The only question that the jury considered on the issue of falsity was whether it believed that the sexual assault occurred."); Dkt 211 (Def. Second Opp. Mem.) at 13-14 ("[I]n the context of the October 2022 statement, the jury was singularly tasked with determining whether the sexual assault occurred[.]"); ("[T]he jury was specifically tasked to consider whether the sexual assault occurred[.]"); ("At bottom, the only true question the *Carroll II* jury was tasked with finding is whether it believed that the sexual assault occurred."). Moreover, crediting this theoretical possibility would require assuming that (1) the jury did not follow the Court's instruction that is stated above, and (2) the jury found

Mr. Trump's contrary arguments are all unpersuasive. He contends that "the jury was not asked to – and in fact did not – consider whether the October 2022 statement was made pursuant to a 'nefarious purpose' to [Ms. Carroll's] sexual assault allegations, nor whether [Mr. Trump] lied when he claimed that he did not know [Ms. Carroll]."[30] His argument defies common sense and mischaracterizes Ms. Carroll's defamation claim. Of course, the jury's finding that the sexual assault occurred necessarily implies that Ms. Carroll did not lie about it for a nefarious or any other purpose and that Mr. Trump met and knew her.[31] In any event, Ms. Carroll did not sue Mr. Trump simply for stating that he did not know her. His statement that he did not know her is a subcomponent of the core of Ms. Carroll's defamation claim, which, as stated above, is that Mr. Trump defamed her in this case and in *Carroll II* by accusing her of concocting a sexual assault allegation for improper

---

that the statement was not substantially true *solely* because it was convinced that Ms. Carroll did not lie – if she did – "to suit the purposes of CNN and Andy Cooper" "where she was promoting a really crummy book." *Carroll II*, 22cv10016, Dkt 1 (Cpt.) 18, ¶ 92. There is no support for either proposition. In any event, Mr. Trump does not dispute, and implicitly concedes by his repeated assertions, that the jury in *Carroll II* found by clear and convincing evidence that his 2022 statement was false because it determined that Ms. Carroll did not fabricate her sexual assault accusation.

[30] Dkt 206 (Def. First Opp. Mem.) at 5.

[31] Mr. Trump argues also that "a finding that [he] lied when he asserted that [Ms. Carroll] may have been motivated for financial or political purposes was clearly not essential to the ultimate judgment, given that the jury had not been instructed as such, nor were these assertions even contained in the October 12[, 2022] Statement." Dkt 211 (Def. Second Opp. Mem.) at 14. For the reasons discussed above, his argument is inapposite. Even assuming for the sake of argument that Mr. Trump's 2022 statement did not include those specific assertions, the jury's determination in *Carroll II* that Ms. Carroll did not fabricate her sexual assault accusation necessarily subsumes any assertion that she did so for any reason.

Mr. Trump's other argument, that the jury's finding that he sexually abused Ms. Carroll cannot be afforded preclusive effect because that finding was made by a preponderance of the evidence rather than by clear and convincing evidence, similarly is irrelevant. Neither the Court nor Ms. Carroll rely on the jury's sexual abuse finding to determine that the verdict in *Carroll II* establishes the falsity of Mr. Trump's 2019 statements.

18

purposes. There accordingly is no merit to Mr. Trump's arguments with respect to the falsity of his 2019 statements.

*Mr. Trump's 2019 Statements Were Made With Actual Malice*

The verdict in *Carroll II* established also that Mr. Trump's 2019 statements were made with actual malice. "To show actual malice, a plaintiff must prove that the defendant either knew his statements were false or acted with reckless disregard as to whether they were false."[32] A defendant acted with reckless disregard if he or she was "entertaining serious doubts as to the truth of the statement or having a high degree of awareness that the statement is probably false."[33] In *Carroll II*, the jury found by clear and convincing evidence that Mr. Trump made the 2022 statement with actual malice. In other words, it determined – as this Court instructed the jury – that:

> "Mr. Trump, when he made his October 12[, 2022] statement, *knew that it was false, had serious doubts as to its truth, or had a high degree of awareness that the statement probably was false.*"[34]

To be more specific, the jury found that Mr. Trump knew that his statement that Ms. Carroll lied about him sexually assaulting her for improper and ulterior purposes was false or that he acted with reckless disregard to whether it was false.

Whether Mr. Trump made the 2019 statements with actual malice raises the same

---

[32]      *Conti v. Doe*, 535 F. Supp. 3d 257, 279 (S.D.N.Y. 2021).

[33]      *Id.*

[34]      *Carroll II*, 22cv10016, Dkt 201 (Trial Tr.) at 1431:25-1432:3 (emphasis added).

issue. Accordingly, as Ms. Carroll argues, "[n]o reasonable person could believe that [Mr.] Trump acted with actual malice in October 2022, but lacked it in June 2019."[35] "To do so, [a reasonable person] would have to believe that [Mr.] Trump willfully lied (or doubted the truth of his own statement) in October 2022, but somehow did not willfully lie (or doubt his own statements) in June 2019, even though the statements were substantively identical, even though [Mr.] Trump's attacks on [Ms.] Carroll never wavered and never varied, and even though [Mr.] Trump (by his own admission) made absolutely no effort in this time period to investigate the issue or to discover any new information about the truth of [Ms.] Carroll's underlying allegations."[36]

Alternatively, even if the jury's finding in *Carroll II* that Mr. Trump made his 2022 statement with actual malice was not issue preclusive in this case, Ms. Carroll nonetheless has satisfied her burden on summary judgment. As discussed above, the jury's finding that Mr. Trump's 2022 statement was false is controlling in this case. And that is significant with respect to actual malice because, as Ms. Carroll argues, given that Mr. Trump's "2022 statement concerned his own personal conduct and knowledge, no reasonable juror could find that [Mr.] Trump's October 2022 statement was false, but also conclude that Trump was unaware of the relevant facts in June 2019."[37] Moreover, as Ms. Carroll points out:

> "The record makes clear that [Mr.] Trump's conduct in 2019 reflected gross
> and willful disregard for the truth. As [Mr.] Trump testified, he never read [Ms.]

---

[35]      Dkt 190 (Pl. Mem.) at 20.

[36]      *Id.*

[37]      *Id.* at 21.

Carroll's book or the excerpt of it published in *New York* Magazine, . . . he never contacted Bergdorf's despite representing otherwise in his public statements, . . . [Mr.] Trump had absolutely no personal knowledge as to [Ms.] Carroll's financial circumstances, the details of [Ms.] Carroll's book deal, or her political affiliation or party registration, . . . nor did he remember anyone contacting him with such information despite asking for people do to so in his June 21[, 2019] statement, . . . [Mr.] Trump took no steps to investigate [Ms.] Carroll's account, nor did he direct anyone in the White House or the administration to do so, . . . and [Mr.] Trump did not consult with any other White House or administration official (apart from his wife and daughter) in making the June 2019 statements . . . ."[38]

Mr. Trump does not point to any genuine issue of material fact with respect to whether he knew that his 2019 statements were false or acted with reckless disregard to their truth or falsity.[39] Indeed, he has not contended – either here or in *Carroll II* – that he would not have acted with actual malice even if his denial that the alleged incident ever occurred was proven false. He instead argues that "the record does not establish . . . that [Mr. Trump] published the June 2019

---

[38]      *Id.* at 21-22 (citations omitted).

[39]      In his response to Ms. Carroll's Rule 56.1 Statement of Facts, Mr. Trump disputes some of the facts recited by Ms. Carroll that are reproduced above. For example, he contends that "the cited deposition testimony of Defendant can support only that he could not recall each and every person he may have spoken with about Plaintiff's allegations" and that "the cited deposition testimony of Defendant can support only that he could not [*sic*] whether a member of his team performed research as it relates to Plaintiff's claims." Dkt 212 (Def. Response to Pl. 56.1 Statement) at 6, ¶ 14, 7, ¶ 17. Based upon this record and in these circumstances, these disagreements do not constitute genuine issues of material fact. Even accepting Mr. Trump's versions of these facts, Ms. Carroll has satisfied her burden on summary judgment with respect to actual malice.

statements with actual malice" because (1) "the jury in *Carroll II* was specifically precluded from considering the statements made in June 2019," and (2) there is not "any actual solidarity" between the 2019 statements and the 2022 statement because the 2022 statement "does not contain a single reference to [Ms. Carroll's] potential political motivations, nor does it directly state that [Ms. Carroll] made her allegations to advance her book sales."[40]

Both arguments are unpersuasive. Although he is correct that the Court instructed the jury in *Carroll II* not to consider the 2019 statements, that point does not change the fact that the jury considered and decided issues that are common to both cases – including whether Mr. Trump falsely accused Ms. Carroll of fabricating her sexual assault charge and, if that were so, that he did it with knowledge that his accusation was false and the he knew it was false or acted with reckless disregard as to its truth. And his second argument is irrelevant to actual malice. It again misses the common sense point.  If he knew his statements concerning Ms. Carroll were false (or had a high degree of awareness of probable falsity) – as the jury in *Carroll II* found – he of course knew that she did not lie for political or any other reasons. The jury's verdict in *Carroll II*, as well as (and alternatively) the undisputed facts, establish that Mr. Trump's 2019 statements were made with actual malice.

*The Carroll II Verdict Does Not Warrant a Reduction Of Any Damages In Carroll I*

Mr. Trump contends that any damages award Ms. Carroll might receive in this case "must be limited in accordance with the judgment of *Carroll II*."[41]  As noted above, the jury in

---

[40]     Dkt 211 (Def. Second Opp.) at 17.

[41]     Dkt 194 (Def. Mem.) at 7.

*Carroll II* awarded Ms. Carroll $2.7 million in compensatory damages for her defamation claim –

$1.7 million for the reputation repair program based on Professor Humphreys's testimony, and $1

million for damages other than the reputation repair program. Professor Humphreys submitted an

expert report in this case as well, in which she calculated that "the minimum appropriate corrective

campaign . . . would cost at least $10 million."[42]  Ms. Carroll alleges also – as she did in *Carroll II*

with respect to Mr. Trump's 2022 statement – that his 2019 statements caused her professional harm

as well as emotional pain and suffering.

       Mr. Trump first argues that any compensatory damages in this case other than those

in relation to the reputation repair program "cannot exceed the one million dollar award in *Carroll*

*II*" because in *Carroll II*, he argues that Ms. Carroll "explained that the damage she suffered as a

result of the October 12, 2022 statement was identical to – potentially even greater than – the harm

she incurred as a result of the June 2019 statements."[43]  He relies on Ms. Carroll's testimony at trial

in *Carroll II* that the messages she received after Mr. Trump's 2022 statement were "*equally*

*disparaging and hurtful*" to those she received after his 2019 statements, "but these [(post-2022

messages)] particularly hurt because [she] thought [she] had made it through and there they are

again."[44]  He contends that Ms. Carroll's "testimony that the impact of the October 2022 statement

---

[42]

       Dkt 157-1 (Pl. Amend. Cpt.) at 29 ¶ 147.  *See also* Dkt 204 (Pl. Opp. Mem.) at 2 ("In her
expert report, Professor Humphreys designed a program to remedy the negative impressions
associated with [Mr.] Trump's June 2019 statements; she estimated that the cost of such a
reputation repair program would fall between $3,333,058.72 and $20,998,861.18, depending
upon factors she described, with a conservative, middle range between $9,999,176.17 and
$12,599,316.71.").

[43]

       Dkt 194 (Def. Mem.) at 7-8.

[44]

       *Carroll II*, 22cv10016, Dkt 189 (Trial Tr.) at 329:5-7 (emphasis added).

was 'equally disparaging and hurtful' as that of the June 2019 statements" is controlling in this case because it satisfies the four elements of issue preclusion.[45]   There is no merit to Mr. Trump's argument.

As an initial matter, issue preclusion is available only with respect to determinations by the Court or jury of issues necessary to support the judgment. It has nothing to do with testimonial statements by parties. Mr. Trump's contention thus mixes apples with oranges.

In any case, his argument misinterprets the jury's findings on damages in *Carroll II*. This Court instructed the jury that, with respect to compensatory damages other than the reputation repair program, it should:

> "[A]ward an amount that, in the exercise of your good judgment and common
>
> sense, you decide is fair and just compensation for the injury to the plaintiff's
>
> reputation and the humiliation and mental anguish in her public and private life
>
> which you decide was caused by the defendant's [2022] statement. In fixing that
>
> amount, if you fix one, you should consider the plaintiff's standing in the community,
>
> the nature of Mr. Trump's statement made about Ms. Carroll, the extent to which the
>
> statement was circulated, the tendency of the statement to injure a person such as Ms.
>
> Carroll, and all of the other facts and circumstances in the case."[46]

At no point was the jury instructed to determine whether the harm Ms. Carroll suffered as a result of Mr. Trump's 2022 statement was equal to the harm she allegedly suffered as a result of his 2019

---

[45]     Dkt 209 (Def. Reply Mem.) at 2.

[46]     *Carroll II*, 22cv10016, Dkt 201 (Trial Tr.) at 1433:1-11.

statements. Nor is there any permissible inference from the jury's $1 million award in *Carroll II* that

it implicitly determined Ms. Carroll could not be accorded more for the alleged harm she suffered

from Mr. Trump's 2019 statements simply based on Ms. Carroll's "equally disparaging and hurtful"

testimony. Indeed, as Mr. Trump acknowledges, the Court explicitly instructed the jury that "the

question of whether there was any adverse effect by virtue of the 2019 statements and, if there was,

how much adverse effect is not at issue in this case. It is not for you to determine."[47] Given that the

issue Mr. Trump seeks to "carr[y] over" from the *Carroll II* trial to this action was never actually

decided, there is no basis to prospectively cap any damages award Ms. Carroll might receive other

than for the reputation repair program at $1 million.[48]

Nor is there any merit to Mr. Trump's second argument, *i.e.*, that any award Ms.

Carroll might receive in relation to the reputational repair program must be reduced by $1.7 million

to avoid double recovery. Mr. Trump contends that "[g]iven that the two programs are identical in

their design and function, there will be a complete overlap in their remedial effect on [Ms. Carroll's]

reputation."[49] His argument ignores the fact that even if Professor Humphreys "utilized the same

methodologies and criteria" to determine the reputation repair programs in *Carroll I* and *Carroll II*,

those proposed programs – and the ultimate calculations Professor Humphreys reaches – are different

in both cases.[50] In any event, Mr. Trump fails to demonstrate how the jury in *Carroll II* decided the

---

[47]     *Id.*, Dkt 197 at 1158:3-6.

[48]     Dkt 209 (Def. Reply Mem.) at 2.

[49]     Dkt 194 (Def. Mem.) at 15.

[50]     *Id.* at 14.

25

monetary value, if any, to accord to Professor Humphreys' reputational repair program with respect to Mr. Trump's 2019 statements. For the reasons stated above, it of course did not do so. I have considered Mr. Trump's other arguments and found them all unpersuasive.[51]

### Conclusion

For the foregoing reasons, Ms. Carroll's motion for partial summary judgment (Dkt 189) is granted except with respect to Mr. Trump's June 24, 2019 statement.  Mr. Trump's motion with respect to the issue preclusive effect of the *Carroll II* verdict in this action (Dkt 193) is denied.

SO ORDERED.

Dated:          September 6, 2023

Lewis A. Kaplan
United States District Judge

---

[51]    In a footnote, Ms. Carroll "contend[s] that it would be appropriate for the Court to consider drawing on its inherent authority to issue an order to show cause why [Mr.] Trump's counsel should not be required to pay our attorneys' fees in connection with responding to his motion" "[g]iven the manifest frivolity of [Mr.] Trump's legal arguments."  Dkt 204 (Pl. Opp. Mem.) at 9 n.2.  The Court declines to do so in this instance.