# 23-1045
# 23-1146

# United States Court of Appeals
# For the Second Circuit

_____

E. JEAN CARROLL,

                *Plaintiff/Appellee,*

-against-

DONALD J. TRUMP,

                *Defendant/Appellant.*

_____

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT-APPELLANT'S EMERGENCY MOTION FOR A STAY PENDING APPEAL**

_____

MICHAEL T MADAIO, ESQ.
ALINA HABBA, ESQ.
HABBA MADAIO & ASSOCIATES, LLP
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
      -and-
112 West 34th Street, 17th & 18th Floors
New York. New York 10120
mmadaio@habbalaw.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

LEGAL ARGUMENT ......................................................................................... 1

   I.   The District Court Has Been Divested of Jurisdiction ................................... 1

   II.  A Stay Is Also Warranted Under The Traditional Factors .............................. 2

      A. Defendant-Appellant Has Three Meritorious Arguments On Appeal ........ 2

         i. Defendant-Appellant Has Established That Presidential Immunity is Not Waivable .................................................................................................. 2

         ii. Plaintiff-Appellee Fails to Address Two of Defendant-Appellant's Primary Arguments .................................................................................... 7

      B. Defendant-Appellant Will Suffer Irreparable Harm Absent a Stay ............... 8

      C. A Stay Pending Appeal Will Cause No Harm to Plaintiff-Appellee and Will Serve Important Public Interest ............................................................ 10

CONCLUSION .................................................................................................. 12

CERTIFICATE OF WORD COUNT .................................................................. 13

# TABLE OF AUTHORITIES

*Cases*

*Apostol v. Gallion,*
 870 F.2d 1335, 1339 (7th Cir. 1989) ............................................................. 2

*Behrens v. Pelletier,*
 516 U.S. 299, 308 (1996) ............................................................................. 9

*Carroll v. Trump,*
 49 F.4th 759, 780 (2d Cir. 2022) ................................................................ 11

*Clinton v. Jones,*
 520 U.S. 681, 682 (1997) ............................................................................. 6

*Ferri v. Ackerman,*
 444 U.S. 193, 204 (1979) ............................................................................. 4

*Harlow v. Fitzgerald,*
 457 U.S. 800 (1982) .................................................................................. 3, 4

*In Re World Trade Ctr. Disaster Site Litig.,*
 503 F.3d 167 (2d Cir. 2007) ..................................................................... 1, 2

*Lujan v. Defenders of Wildlife,*
 504 U.S. 555, 577 (1992) ............................................................................. 6

*Nixon v. Administrator of General Services,*
 433 U.S. 425, 443 (1977) ............................................................................. 5

*Nixon v. Fitzgerald,*
 457 U.S. 731, 479 (1982) ....................................................... 3, 4, 5, 6, 7, 12

*Shields v. Citytrust Bancorp,*
 25 F.3d 1124, 1128 (2d Cir. 1994) ............................................................... 8

*Trump v. Mazars*,
    140 S.Ct. 2019, 2035 (2020).............................................................................3


**Rules and Citations**

Fed.R.App.P. 8 ....................................................................................................8

# LEGAL ARGUMENT

I. **THE DISTRICT COURT HAS BEEN DIVESTED OF JURISDICTION**

Well-settled precedent dictates that the District Court has been divested of jurisdiction since the instant appeal is plainly not frivolous.

In her opposition papers, Plaintiff-Appellee claims that the holding *In Re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167 (2d Cir. 2007), upends the longstanding rule that a district court is inherently divested of jurisdiction during the pendency of an immunity-based appeal, but Plaintiff-Appellee's reading of that case is mistaken. Although Plaintiff-Appellee is correct that *World Trade Ctr.* applied the traditional stay factors, she conveniently overlooks that this Court also found that the District Court had initially been divested of its jurisdiction and only "restored" it after recognizing the unique and exigent circumstances at hand. *Id.* at 171. Namely, *World Trade Center* involved an entire class of plaintiffs who had suffered life-threatening injuries from a widescale terror attack and who were dying at an alarming rate. *Id.* This Court, observing that the "third [stay] factor—substantial injury to the parties opposing the stay—has increased in significance with the passage of time since among the plaintiffs are many people with life-threatening injuries, some of whom have died since the litigation began," determined that the "public interest favors permitting pretrial proceedings to resume, thereby hastening the trial that might result in compensation for at least some plaintiffs during their

1

lifetimes[.]" *Id.* at 170. In other words, this Court's invocation of the stay factors in *World Trade Center* was due to the distinct and pressing circumstances of that case; it did not overturn the well-established rule that an appeal from the denial of an immunity divests the district court of jurisdiction until the appeal is resolved.

Here, no such dire or extraordinary circumstances are at play. Therefore, since Defendant-Appellant's appeal plainly is not frivolous—and since his well-supported presidential immunity defense can by no means be described as a "sham," *Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989)—the District Court has been divested of jurisdiction.

## II. A STAY IS ALSO WARRANTED UNDER THE TRADITIONAL FACTORS

### A. Defendant-Appellant Has Three Meritorious Arguments On Appeal

As outlined in Defendant-Appellant's moving papers, there are three independent arguments which each have a strong likelihood of success on appeal. Yet, Plaintiff-Appellee fails to counter any of these points, much less explain how Defendant-Appellant's *entire* appeal is lacking in merit. As such, this factor weighs decidedly in Defendant-Appellant's favor.

#### i. Defendant-Appellant Has Established That Presidential Immunity Is Not Waivable

With respect to Defendant-Appellant's first argument—that presidential immunity is not waivable because, when applicable, it strips a court of its subject

2

matter jurisdiction—Plaintiff-Appellee fails to offer any meaningful rebuttal, and the arguments she does advance miss the mark entirely.

First, like the District Court, Plaintiff-Appellee mistakenly conflates presidential immunity with the lesser form of absolute immunity afforded to judges and prosecutors, and argues that, since that immunity is waivable, so too must be presidential immunity. Yet, Plaintiff-Appellee fails to appreciate the distinct nature of presidential immunity, which differs from other forms of immunity because it is a product of the President's "unique position in the constitutional scheme," *Nixon v. Fitzgerald*, 457 U.S. 731, 479 (1982), since he is "the only person who alone composes a branch of government," *Trump v. Mazars*, 140 S.Ct. 2019, 2035 (2020). Indeed, the Supreme Court has recognized that presidential immunity stands apart from other forms of immunity because it is "derive[d] in principal part from factors unique to [the President's] constitutional responsibilities and station," *Harlow v. Fitzgerald*, 457 U.S. 800, n. 17 (1982); as such, there is a "special solicitude" afforded to "claims alleging a threatened breach of essential Presidential prerogatives under the separation of powers" which cannot be said for other, lesser forms of immunity. *Nixon*, 457 U.S. at 743.

While Plaintiff-Appellee attempts to argue that the absolute immunity afforded to judges and prosecutors similarly "rests on constitutional separation of powers principles," Opp. Mot. at 11, this is simply not so. For judges and

3

prosecutors, absolute immunity is "seen to derive from the *common law* and *public policy*," *Nixon*, 457 U.S. at 759, n. 2 (Burger, J., concurring) (emphasis added); *see also Ferri v. Ackerman*, 444 U.S. 193, 204 (1979) ("The point of immunity for [judges and prosecutors] is to forestall an atmosphere of intimidation that would conflict with their resolve to perform their designated functions[.]"). It does not arise from the Constitution. *Nixon*, 457 U.S. at 759, n. 2 (Burger, J., concurring) ("[T]he Constitution provides no hint that either judges, prosecutors, or congressional aides should be so protected."). Thus, even if absolute immunity for judges and prosecutors implicates the separation of powers doctrine to some slight degree, it is largely premised on other justifying factors.

Indeed, it is well settled that "[s]uits against other officials...generally do not invoke separation-of-powers considerations to the same extent as suits against the President himself." *Harlow*, 457 U.S. at 800, n. 17. When it comes to the President, "[c]ourts traditionally have recognized the President's constitutional responsibilities and status as factors counseling judicial deference and restraint." *Nixon*, 457 U.S. at 753. Thus, as observed by Chief Justice Burger in his concurring opinion in *Nixon*, presidential immunity is premised *entirely* on separation of powers principles:

> "Absolute immunity for a President for acts within the official duties of the Chief Executive is either to be found in the constitutional separation of powers or it does not exist...[T]he Judiciary always must be hesitant to probe into the elements of Presidential decisionmaking...judicial intrusion through private damages actions improperly impinges on and

4

hence interferes with the independence that is imperative to the functioning of the office of a President."

*Id.* at 761 (Burger, J., concurring); *Nixon v. Administrator of General Services*, 433 U.S. 425, 443 (1977) (the separation of powers "focuses on the extent to which [the act of another branch] prevents the Executive Branch from accomplishing its constitutionally assigned functions.").

Therefore, presidential immunity is founded upon constitutional separation of powers concerns that are simply not present with other forms of absolute immunity. Accordingly, Plaintiff-Appellee's comparison to the absolute immunity afforded to judges and prosecutors is inapposite.

Plaintiff-Appellee next attempts to distinguish the *Nixon* Court's use of the word "jurisdiction" as not "refer[ring] to a federal court's fundamental ability to adjudicate a case on its merits." Opp. Mot. at 13. This argument fares no better. In *Nixon*, the Court's discussion of jurisdiction was tied to its separation of powers analysis. Specifically, the Court noted its obligation to "balance the constitutional weight of the intertest to be served against the dangers of intrusion on the authority and functions of the Executive Branch," and determined that in "private suit[s] for damages based on a President's official acts," the exercise of jurisdiction is *not* "warranted." *Id.* Plaintiff-Appellee's quibbling over the grammatical definition of "jurisdiction" aside, there is only one logical takeaway from this passage: when presidential immunity applies, a court lacks the ability to hear a case because it

5

would be intruding upon the authority and function of the Executive Branch. The Court even included a footnote referring to the President's official conduct as being "beyond the reach" of the Judicial Department. *See Nixon*, 467 U.S. at 753, n. 34.

In sum, presidential immunity, unlike all other forms of immunity, is firmly rooted in the separation of powers doctrine and acts as a safeguard against the judiciary "curtail[ing] the scope of the official powers of the Executive Branch." *Clinton v. Jones*, 520 U.S. 681, 682 (1997). As such, it can never be waived because, when viable, a court is barred from exercising jurisdiction due to the "dangers of intrusion on the authority and function of the Executive Branch." *Nixon*, 457 U.S. at 754; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 577 (1992) (the separation of powers doctrine is violated, and Article III standing is lacking, when the judiciary "'assume[s] a position of authority over the governmental acts of another and co-equal department' and [] become[]s 'virtually continuing monitors of the wisdom and soundness of Executive action.'") (citation omitted).

Therefore, Defendant-Appellant has a strong likelihood of winning this argument on appeal.

> ii. **Plaintiff-Appellee Fails to Address Two of Defendant-Appellant's Primary Arguments**

Astoundingly, Plaintiff-Appellee fails to offer *any* rebuttal to two of the primary arguments that comprise Defendant-Appellant's appeal. Her silence speaks volumes.

6

First, in response to Defendant-Appellant's argument that the District Court should have granted leave to amend to assert a presidential immunity defense, Plaintiff-Appellee has no answer other than to say that the District Court's decision was "well supported" and there is "no basis to disturb" it. Opp. Mot. at 15. By simply deferring to the District Court's holding, without more, Plaintiff-Appellee has conceded that there are no valid counterarguments to be made.

Plaintiff-Appellee similarly fails to respond to Defendant-Appellant's argument that he properly asserted his presidential immunity defense in his Answer to Plaintiff-Appellee's Amended Complaint. Again, Plaintiff-Appellee merely defers to the District Court's ruling. Notably, in another portion of her brief, Plaintiff-Appellee actually confirms that Defendant-Appellant's argument *does* have merit by referring to presidential immunity as a "non-jurisdictional affirmative defense," Opp. Mot. at 13, which, if true, means that it is precisely the type of defense that can be raised for the first time in response to an amended complaint. *See Shields v. Citytrust Bancorp.,* 25 F.3d 1124, 1128 (2d Cir. 1994).

Plaintiff-Appellee attempts to justify her failure to answer these points by arguing that Defendant-Appellant "waived" the arguments by failing to raise them in his stay motion before the District Court. However, this position is mistaken since Defendant-Appellant did, in fact, raise these arguments in both his moving papers and reply papers in his stay motion. *See* Ex. 39; Declaration of Michael Madaio, Ex.

7

Q. Further, Plaintiff-Appellee fails to cite any authority which supports her proposition that an argument is waived in a Fed.R.App.P. 8 stay motion by failing to raise it in the prior stay motion filed with the district court.

Consequently, Plaintiff-Appellee has effectively conceded that Defendant-Appellant's second and third arguments on appeal are meritorious.

### B. Defendant-Appellant Will Suffer Irreparable Harm Absent a Stay

As set forth in Defendant-Appellant's moving papers, there is a wealth of case law which supports the contention that a party will suffer irreparable harm if he is forced to proceed to trial absent a stay pending resolution of an immunity-based appeal.

Rather than grapple with these binding authorities, Plaintiff-Appellee skirts the issue entirely and argues that any harm sustained by Defendant-Appellant absent a stay is, in her eyes, "self-inflicted." Opp. Mot. at 16. In doing so, Plaintiff-Appellee puts forth a one-sided retelling of the procedural history of the underlying action, replete with unsubstantiated narrative, speculation, and conjecture.[1] *Id.* at 16-17. This portion of Plaintiff-Appellee's brief is not only comprised of uninformed

---

[1] For instance, Plaintiff-Appellee repeated assertion that Defendant-Appellant sought an "expedited" trial date is entirely disingenuous. In actuality, after Defendant-Appellee had notified Plaintiff-Appellee of his intention to file a motion to stay before this Court pending resolution of his Westfall Act immunity defense, the parties agreed to jointly request a consolidated trial of *Carroll I* and *Carroll II* and set aside enforcement of any judgment pending final adjudication of all immunity-related defenses (i.e., Westfall Act *and* presidential immunity) on appeal. Ex. 24 at 1.

8

guesswork, but it is entirely irrelevant to the issue of whether Defendant-Appellant will suffer irreparable harm absent a stay.

As to this operative question, Plaintiff-Appellee argues that there is no irreparable harm because Defendant-Appellant is "facing only a limited trial likely to last just two to three days," Opp. Mot. at 17. But the irreparable harm arises from Defendant-Appellant being forced to stand trial at all. *See Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (noting that one of the purposes of an immunity defense is "to avoid standing trial."). Nothing in the case law suggests that the *length* of the trial is in any way relevant to the harm inflicted. Regardless of the number of days it would take, it is beyond dispute that Defendant-Appellant would be severely and irreparably harmed if he were forced to proceed to trial—for a case in which Plaintiff-Appellee is seeking damages of "at least $10 million" no less, Ex. I—before this Court were to fully adjudicate his presidential immunity defense.

Therefore, this factor weighs conclusively in Defendant-Appellant's favor.

### C. A Stay Pending Appeal Will Cause No Harm to Plaintiff-Appellee and Will Serve Important Public Interest

Plaintiff-Appellee has failed to show that she would sustain *any* harm from a stay pending appeal, much less significant harm.

For starters, Plaintiff-Appellee's argument that a stay "could cause a spiral of further delays in light of [Defendant-Appellant's] presidential campaign and other pending civil and criminal matters" is speculative and hyperbolic, Opp. Mot. at 17;

9

and the fact that Defendant-Appellant is involved in other litigation has no bearing on whether he is entitled to a stay in the instant matter. Even it did, mere delay, on its own, does not constitute prejudice for the purposes of a motion to stay. Therefore, this argument should be summarily dismissed.

Beyond that, Plaintiff-Appellee's remaining argument—that a trial is necessary to "afford the civil justice system an opportunity to more fully remedy and protect [Plaintiff-Appellee]," Opp. Mot. at 18—undercuts her own position and only further demonstrates why a stay is necessary. The underlying action involves a single defamation claim related to alleged defamatory statements made by Defendant-Appellant in June of 2019. Recently, Plaintiff-Appellee amended her Complaint to include additional, subsequent statements made by Defendant-Appellant which she intends to reference at trial in the hopes of amplifying her entitlement to damages. But her inclusion of these subsequent statements only underscores the importance of Defendant-Appellant having his immunity defense be fully adjudicated before trial. Otherwise, Plaintiff-Appellee will be permitted to utilize the subject statements— which are likely immune from suit—as a means of obtaining excess damages liability for other, tangential statements which do not otherwise belong in the case. In this circumstance, this Court's ruling as to whether the June 2019 statements are immune from suit is particularly consequential and must necessarily be decided before trial.

10

Further, Plaintiff-Appellee does not refute Defendant-Appellant's argument that there is a paramount public interest in the important constitutional and separation of powers questions at issue in this appeal. Nor can she. This Court already recognized that whether Defendant-Appellant had immunity under the Westfall Act was a "question of extreme public importance" because it "touches upon the duties of the President of the United States, and the personal tort liability he and his successors may (or may not) face[.]" *Carroll v. Trump*, 49 F.4th 759, 780 (2d Cir. 2022). The same holds true for the instant appeal, which involves these same overarching issues in the context of a presidential immunity defense – which the Supreme Court has recognized as serving "the greatest public interest." *Nixon*, 457 U.S. at 752.

Therefore, the public interest in adjudicating this appeal decisively outweighs any inconvenience that Plaintiff-Appellee may be forced to endure should a stay be imposed.

## **CONCLUSION**

Therefore, Defendant-Appellant respectfully requests his motion be granted in its entirety.

Dated: September 11, 2023  
       New York, New York

Respectfully submitted,

_/s/ Michael T. Madaio_  
Michael T. Madaio, Esq.  
Alina Habba, Esq.  
HABBA MADAIO & ASSOCIATES LLP  
1430 U.S. Highway 206, Suite 240  
Bedminster, New Jersey 07921  
    -and-  
112 West 34th Street, 17th & 18th Floors  
New York, New York 10120  
Phone: (908) 869-1188  
Fax: (908) 450-1881  
Email: mmadaio@habbalaw.com  
*Attorneys for Defendant-Appellant,*  
*Donald J. Trump*

## WORD COUNT CERTIFICATION

I certify that this brief complies with the word limit requirements in Second Circuit Local Rule 27.1 and Federal Rule of Appellate Procedure 27(d)(2) because this brief contains 2600 words.

/s/ Michael T. Madaio\
MICHAEL T. MADAIO
