12

and (4) published with actual malice, that is, either knowledge of falsity or reckless disregard of the

truth."[20]  "[W]hen falsity is an element of a state defamation claim, federal courts have required

plaintiffs to plead facts that, if proven, would allow a reasonable person to consider the statement

false. . . . In particular, several courts of appeals have affirmed dismissals of defamation claims

because the material in the complaint cannot be reasonably understood except as being true or

substantially true."[21]  "'[A] statement is substantially true if the statement would not have a different

effect on the mind of the reader from that which the pleaded truth would have produced.'"[22]  To

determine whether a statement is substantially true, "[c]ourts typically compare the complained of

language with the alleged truth to determine whether the truth would have a different effect on the

---

[20]

      *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001).

[21]

      *Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 247 (2d Cir. 2017). *See also, e.g., Nunes v. NBCUniversal Media, LLC*, No. 22-cv-1633 (PKC), 2022 WL 17251981, at *4 (S.D.N.Y. Nov. 28, 2022) ("Whether a statement is substantially true is an issue of law properly decided on a motion to dismiss, provided that the Court limits its consideration to materials appropriately considered on such a motion."); *Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48, 65 (S.D.N.Y. 2021) ("The issue of whether a statement is substantially true may present an issue of law properly decided on a motion to dismiss, provided that the Court limits its consideration to materials appropriately considered on such a motion."); *Marom v. Pierot*, No. 18-cv-12094 (VB) (JCM), 2020 WL 6572509, at *4 (S.D.N.Y. Aug. 30, 2020), *report and recommendation adopted*, No. 18 CV 12094 (VB), 2020 WL 6565199 (S.D.N.Y. Nov. 9, 2020) ("'Because falsity is an element of New York's defamation tort, and 'falsity' refers to material not substantially true, the complaint...must plead facts that, if proven, would establish that the defendant's statements were not substantially true.' . . . Consistent with this requirement, a plaintiff asserting a claim of defamation must not only identify the allegedly defamatory statement, 'but also the respect in which it was allegedly false.'") (first ellipsis in original) (citations omitted); *Verragio, Ltd. v. AE Jewelers, Inc.*, No. 15-cv-6500 (CM), 2017 WL 4125368, at *8 (S.D.N.Y. Aug. 23, 2017) (dismissing counterclaim for defamation on ground of substantial truth).

[22]

      *Tannerite Sports, LLC*, 864 F.3d at 247 (quoting *Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 94 (1st Dept. 2015)).

13

mind of the average reader."[23]  "When the truth is so near to the facts as published that fine and

shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge

of libel, no legal harm has been done."[24]  But Mr. Trump has not plausibly alleged that Ms. Carroll's

statements during the CNN interview were not at least substantially true.

The only basis for Mr. Trump's assertion of falsity is the fact that the jury in *Carroll

II* was not persuaded that Mr. Trump had "raped" her within the meaning of the New York Penal

Law – in other words, that it did not find that he penetrated her vagina with his penis.[25]  And that

indeed was its decision.  But that is insufficient to state a claim for defamation here for two reasons.

The argument presupposes (1) that the jury's answer to the Penal Law "rape" question in *Carroll II*

would establish falsity and, if it did, (2)  that it is binding on Ms. Carroll in this case. Both of those

presuppositions are incorrect. Indeed, the jury's verdict in *Carroll II* establishes, as against Mr.

Trump, the fact that Mr. Trump "raped" her, albeit digitally rather than with his penis. Thus, it

establishes against him the substantial truth of Ms. Carroll's "rape" accusations. In any case, the

*Carroll II* jury's Penal Law rape finding does not even establish, as against Ms. Carroll, Mr. Trump's

contention that he did not penetrate her with his penis, *i.e.*, that he did not rape her within the

meaning of the Penal Law. The Court begins with the latter point.

---

[23]     *Franklin.*, 135 A.D.3d at 94.

[24]     *Cafferty v. S. Tier Pub. Co.*, 226 N.Y. 87, 93 (1919).

[25]     *See, e.g.*, Dkt 181 (Def. Opp. Mem.) at 5-6 ("Here, Plaintiff's statement was demonstrably
false. Plaintiff does not dispute, nor can she, that the jury in *Carroll II* determined that
Defendant did not rape her. . . . In view of the jury's finding, there is simply no argument
that Plaintiff's statement was 'substantially true' as a matter of law.").

14

*The Jury's Penal Law Rape Finding in Carroll II Is Not Conclusive in this Case*

In order for Ms. Carroll to have defamed Mr. Trump by asserting that he "raped" her

as that term is defined in the New York Penal Law (even assuming that her post-verdict statements

reasonably could be construed as meaning what Mr. Trump claims it meant),[26] Mr. Trump was

required to plead sufficient facts to allege that her statements were false or at least not substantially

true.  But, as noted, the only basis for Mr. Trump's claim of falsity is the jury's answer to the Penal

Law rape question in *Carroll II*.  Thus, he invokes the doctrine of issue preclusion, also referred to

as collateral estoppel, to contend that the jury's verdict on the Penal Law rape question precludes Ms.

Carroll from contending that Mr. Trump in fact penetrated her with his penis.[27]

The parties agree that "a party is collaterally estopped from relitigating an issue if a

four-part test is met: '(1) the identical issue was raised in a previous proceeding; (2) the issue was

'actually litigated and decided' in the previous proceeding; (3) the party had a 'full and fair

---

[26]

The parties dispute whether Ms. Carroll was referring to "rape" within the meaning of the New York Penal Law or "rape" as that term is understood more broadly in the allegedly defamatory statements. Drawing all reasonable inferences in favor of Mr. Trump, as the Court must on this motion to dismiss, the Court assumes without now deciding that Ms. Carroll was referring to rape within the meaning of the New York Penal Law in the two allegedly defamatory statements.

[27]

*See also* Dkt 194 (Def. Mem. Issue Preclusion) at 4-6.

Although Mr. Trump has appealed the judgment in *Carroll II*, "it is well established that the fact that . . . an appeal from the judgment has . . . been taken does not divest the judgment of finality for the purposes of collateral estoppel." *Samhammer v. Home Mut. Ins. Co. of Binghamton*, 120 A.D.2d 59, 64 (3d Dept. 1986).  *See also Anonymous v. Dobbs Ferry Union Free Sch. Dist.*, 19 A.D.3d 522, 522 (2d Dept. 2005) ("The rule in New York is that the 'pendency of an appeal does not prevent the use of the challenged judgment as the basis of' collateral estoppel.") (citation omitted).  It is well established also – and neither party contends otherwise – that the preclusive effect of the *Carroll II* judgment is governed by New York law, as *Carroll II* was a diversity case. *E.g., Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508-09 (2001).

15

opportunity' to litigate the issue; and (4) the resolution of the issue was 'necessary to support a valid

and final judgment on the merits.'"[28]   Mr. Trump contends, however, that:

> "[T]he issue of falsity has been conclusively established in Defendant's favor
>
> with respect to the claim for defamation asserted in his counterclaim. . . . First, there
>
> is little question that the issue of whether Defendant raped Plaintiff has always been
>
> a central question in both *Carroll I* and *Carroll II*. . . . Second, the issue was actually
>
> determined in *Carroll II* when the jury expressly found that Plaintiff failed to
>
> demonstrate by a preponderance of the evidence that she was raped by Defendant.
>
> . . . Third, the parties had a full and fair opportunity to litigate the issue throughout
>
> *Carroll II*'s proceedings and trial, and despite Plaintiff's extensive testimony
>
> advancing her claim that she was raped, the jury rejected her account and returned a
>
> verdict in Defendant's favor. Finally, it is readily apparent that the issue of whether
>
> Plaintiff was raped was a material aspect to the jury's finding."[29]

But Mr. Trump entirely ignores the fourth element of the collateral estoppel test, whether the issue

was "'necessary to support a valid and final judgment on the merits.'"[30]

---

28
   *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (citation omitted). *See also* Dkt
   194 (Def. Mem. Issue Preclusion) at 1 ("Under New York law, collateral estoppel applies
   when 'the issue in the second action [(1)] is identical to an issue which was raised, [(2)]
   necessarily decided and material in the first action, and [(3)] the plaintiff had a full and fair
   opportunity to litigate the issue in the earlier action.'") (quoting *Sullivan v. Gagnier*, 225
   F.3d 161, 166 (2d Cir. 2000)).

29
   Dkt 194 (Def. Mem. Issue Preclusion) at 4.

30
   *Boguslavsky*, 159 F.3d at 720 (citation omitted). *See also, e.g.*, *PenneCom B.V. v. Merrill
   Lynch & Co.*, 372 F.3d 488, 491 (2d Cir. 2004) ("[A] party is estopped from relitigating an
   issue *when that issue was necessary to the resolution of the prior action*, and the party

**A1288**

16

As noted above and in a prior decision in this case, the issue of whether Mr. Trump "raped" Ms. Carroll within the meaning of the Penal Law was in this case for one and only one reason. As the parties agreed, Ms. Carroll was entitled under the ASA to sue Mr. Trump for sexual battery in 2022, despite the years that had passed since the parties' encounter, only if she could establish that Mr. Trump's conduct met *any one* of three alternative definitions of sex crimes set out in the Penal Law – rape, sexual abuse or forcible touching. The jury was required to answer "yes" to only one of these three theories in order to award damages. It found that Mr. Trump had abused Ms. Carroll sexually, thus satisfying the requirement of the ASA. The issues of whether he "raped" or "forcibly touched" her were entirely extraneous given the sexual abuse finding. Indeed, the verdict form could have omitted the rape question entirely, and the judgment in *Carroll II* would have been unaffected.

The *Carroll II* jury's answer to the Penal Law "rape" question therefore was unnecessary and immaterial. Accordingly, it is not binding on Ms. Carroll in this case. In consequence, there is no merit to Mr. Trump's argument that the jury's finding on the Penal Law "rape" question established that Ms. Carroll's statements were false even if her statements reasonably could be construed as referring to "rape" in that specialized Penal Law sense, a subject on which this Court now expresses no view.

*In Any Case, Ms. Carroll's Statements Were Substantially True*

Unlike the jury's finding on the Penal Law "rape" question, its finding on the sexual

---

against whom estoppel is invoked had a full and fair opportunity to contest that issue in the previous litigation.") (emphasis added) (collecting New York cases).

17

abuse question – and specifically its implicit determination that Mr. Trump digitally raped her – is conclusive with respect to this case. As a result, Ms. Carroll's statements are "substantially true."

      The finding that Mr. Trump digitally raped Ms. Carroll is conclusive because it was necessary to support the judgment in *Carroll II*. As recounted above and in the Court's recent new trial decision in *Carroll II*, "the only remaining conclusion" based on all of the evidence at trial was that the jury implicitly found that Mr. Trump forcibly penetrated Ms. Carroll's vagina with his fingers.[31] "[T]here was ample, arguably overwhelming evidence, that Mr. Trump forcibly digitally penetrated Ms. Carroll, thus fully supporting the jury's sexual abuse finding."[32] The finding of forcible digital penetration "is fully supported by Ms. Carroll's repeated and clear testimony on the digital penetration (more than the penile penetration), Dr. Lebowitz [(Ms. Carroll's damages expert for her battery claim)] specifically mentioning Ms. Carroll squirming in response to an intrusive memory of Mr. Trump's fingers in her vagina, and the evidence at trial taken as a whole. It also is bolstered by the amount of the jury's verdict."[33] Indeed, the finding of digital rape is essential to support the size of the jury's damages award on the battery claim – over $2 million. It accordingly is the "truth," as relevant here, that Mr. Trump digitally raped Ms. Carroll.

      As stated above, a statement is substantially true if it "would not have a different

---

[31]     *Carroll*, 2023 WL 4612082, at *20.

    Moreover, as noted above, the Court in any event determined, in the alternative and pursuant to Rule 49, that Mr. Trump digitally raped Ms. Carroll.

[32]     *Id.*

[33]     *Id.*

18

effect on the mind of the reader from that which the pleaded truth would have produced."[34]  Here, the "pleaded truth" would have been that Mr. Trump forcibly penetrated Ms. Carroll's vagina with his fingers. The difference between Ms. Carroll's allegedly defamatory statements – that Mr. Trump "raped" her as defined in the New York Penal Law – and the "truth" – that Mr. Trump forcibly digitally penetrated Ms. Carroll – is minimal. Both are felonious sex crimes.  If Ms. Carroll had stated that Mr. Trump "raped" her by forcibly digitally penetrating her vagina instead of referring also (allegedly) to forcible penile penetration, there would have been no different effect on the mind of an average listener. Indeed, both acts constitute "rape" in "common modern parlance, its definition in some dictionaries, in some federal and state criminal statutes, and elsewhere."[35]  Given that the anatomical difference between the alleged falsehood and the truth is a "fine and shaded distinction[] [that] must be drawn" in order "to sustain a charge of libel" based on Ms. Carroll's interview statements, "no legal harm has been done."[36]

Mr. Trump accordingly fails to state a claim for defamation because (1) he fails plausibly to allege that Ms. Carroll's statements were not true, and (2) in the alternative, Ms. Carroll's allegedly defamatory statements were substantially true as a matter of law.

*Mr. Trump's Affirmative Defenses*

Ms. Carroll argues that the Court should strike Mr. Trump's first, third, fifth, twelfth,

---

[34]     *Tannerite Sports, LLC*, 864 F.3d at 247 (quoting *Franklin*, 135 A.D.3d at 94).

[35]     *Carroll*, 2023 WL 4612082, at *2 & n. 2-4.

[36]     *Cafferty*, 226 N.Y. at 93.

19

and fifteenth affirmative defenses because the Court "considered and rejected each of these defenses in denying [Mr.] Trump's motion for summary judgment."[37]  She relies on the law-of-the-case doctrine, which provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."[38] Her argument is persuasive with respect to some, but not all, of Mr. Trump's purported affirmative defenses.

Mr. Trump's fifth and fifteenth affirmative defenses are that "[s]ome or all of the statements at issue are matters of opinion that are not capable of being proven true or false" and that "[p]laintiff has not sufficiently pled defamation or defamation *per se*," respectively.[39] In its decision denying Mr. Trump's motion for summary judgment, the Court determined that "Mr. Trump's statements were factual assertions rather than expressions of opinion" and that Ms. Carroll adequately alleged that his 2019 statements are defamatory *per se*.[40]  Nothing in Ms. Carroll's amended complaint – which, as the Court has explained, "did not add any new claims or otherwise change the focus of her original complaint" – would change the Court's prior analysis or decision with respect to those defenses.[41]  However, as the Court noted in its summary judgment decision:

"Neither party addresses specifically Mr. Trump's June 24, 2019 statement, in which he said only: 'I'll say it with great respect: Number one, she's not my type.

---

[37]  Dkt 175 (Pl. Mem.) at 27-28.

[38]  *Pepper v. United States*, 562 U.S. 476, 506 (2011) (citation omitted).

[39]  Dkt 171 (Def. Answer to Pl. Amend. Compl.) at 21, ¶ 5, 22 ¶ 15.

[40]  *Carroll*, 2023 WL 4393067, at *14-17.

[41]  *Id.* at *2 n.6.

20

Number two, it never happened. It never happened, OK?'. In her complaint, Ms.
Carroll alleges that all three June 2019 statements were defamatory. However, as
stated above, the crux of Ms. Carroll's defamation claim lies in Mr. Trump's
statements that Ms. Carroll lied for financial and/or personal gain. Indeed, Mr. Trump
appears to ground his argument that 'the majority' of his statements are
nonactionable opinion on the assumption that Ms. Carroll does not allege his 'general
repudiation of Plaintiff's allegations' in itself was defamatory. . . . As the parties have
not adequately addressed this point, the Court does not now decide it."[42]

Given that the Court has not previously decided the application, if any, of Mr. Trump's fifth and

fifteenth affirmative defenses Mr. Trump's June 24, 2019 statement, it does not strike those defenses

to the extent they might concern only that statement.  Those two affirmative defenses, however, are

stricken insofar as they apply to anything else.

Mr. Trump's twelfth affirmative defense is that Ms. Carroll "is not entitled to punitive

damages as a matter of law."[43]  But the Court rejected that claim when it determined, in denying Mr.

Trump's motion for summary judgment, that "Mr. Trump has failed to establish that there is not a

genuine issue of material fact as to whether the prerequisites to a punitive damages award in this case

have been satisfied."[44]  Mr. Trump's argument that the Court "did not find that there is 'no question

of fact' which could potentially lead to Defendant successfully raising this defense at trial" is

---

[42] *Id.* at *17, n. 85.

[43] Dkt 171 (Def. Answer to Pl. Amend. Compl.) at 22 ¶ 12.

[44] *Carroll*, 2023 WL 4393067, at *20.

21

irrelevant because Mr. Trump's stated defense is that she is not entitled to punitive damages *as a matter of law* – in other words, that she would not be entitled to punitive damages irrespective of the evidence at trial.[45]

He contends also that the amended complaint "adds an entirely new theory of punitive damages, relating to statements Defendant made on May 10, 2023, which Defendant has not yet had an opportunity to challenge."[46] The amended complaint added allegations with respect to Mr. Trump's remarks concerning Ms. Carroll during the CNN Town Hall event on May 10, 2023 as "subsequent statements of the defendant" "which may be considered to establish that Mr. Trump made the 2019 statements that always have been the subject of this action with the deliberate intent to injure or out of hatred, ill will, or spite ('common law malice') in order for Ms. Carroll to obtain punitive damages" with respect to the 2019 statements.[47] She asserts no stand-alone claim based on the post-*Carroll II* verdict statements. The Court's decision with respect to Mr. Trump's defense therefore is unaffected by the inclusion of his subsequent statements in Ms. Carroll's amended complaint. The Court accordingly strikes the twelfth affirmative defense on the grounds that it already decided that this defense is legally insufficient and that nothing in the amended complaint warrants any different result.[48]

---

[45]      Dkt 181 (Def. Opp. Mem.) at 24.

[46]      *Id.*

[47]      *Carroll v. Trump*, 2023 WL 4744176, at *2.

[48]      *See, e.g., Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-cv-5075 (LJL), 2020 WL 3472597, at *14 (S.D.N.Y. June 25, 2020) ("The Court strikes the First Affirmative Defense to the extent that it seeks to relitigate the legal sufficiency of claims

22

Mr. Trump's first defense is absolute presidential immunity. But the Court previously determined that Mr. Trump waived that defense by failing to raise it in the first three years of litigating this case and, in any case, that it would have been insufficient as a defense.[49] Mr. Trump rejoins that "although this Court has held that the presidential immunity defense was waived when it was not raised in Defendant's initial [a]nswer . . . his defense has now been properly and timely raised since it was asserted in connection with Defendant's [a]mended [a]nswer."[50] He misunderstands, however, the relevant standard. "A defendant who is responding to an amended complaint cannot amend his answer as of right without any regard to the amendments taken by his adversary."[51] There is nothing new in the amended complaint that would make Mr. Trump's presidential immunity defense any more viable or persuasive now than it would have been before. The fact that he has raised it now in an answer does not (1) undo the fact that he waived the defense by failing to raise it in the first three years of litigating this case or (2) change the Court's decision that his purported defense would have been insufficient in any case. The opportunity to answer an amended complaint is not a free pass to correct past wrongs without any justification or basis for doing so. The Court accordingly strikes Mr. Trump's first affirmative defense.

Mr. Trump's third affirmative defense is that "[t]he alleged defamatory statements are privileged or protected by one or more immunities, including, but not limited to, under the

---

already decided.").

[49]    *Carroll*, 2023 WL 4393067, at *8-9.

[50]    Dkt 181 (Def. Opp. Mem.) at 25.

[51]    *Pereira v. Cogan*, No. 00-cv-619 (RWS), 2002 WL 1822928, at *4 (S.D.N.Y. Aug. 7, 2002).

23

Constitution of the United States."[52]  Ms. Carroll does not adequately explain her request to strike this defense. To the extent Mr. Trump claims that his third defense "assert[s] the defense of presidential immunity,"[53] the Court strikes it for the same reasons stated above for striking Mr. Trump's first defense asserting absolute presidential immunity. To the extent, however, that it concerns a different defense or issue not previously decided, the Court does not now decide to strike the defense in those other respects, if any, as the parties have not adequately addressed it.

---

[52]    Dkt 171 (Def. Answer to Pl. Amend. Compl.) at 21 ¶ 3.

[53]    Dkt 181 (Def. Opp. Mem.) at 25.

Although Mr. Trump asserts in his opposition here that this defense relates to presidential immunity, he made no such argument with respect to that defense – which also was included in his original answer – when he moved for summary judgment on the basis of absolute presidential immunity.  In any event, to the extent he now claims it is related to presidential immunity, it is stricken for the same reasons explained above.

24

### Conclusion

For the foregoing reasons, Ms. Carroll's motion to dismiss Mr. Trump's counterclaim (Dkt 174) is granted. Her motion to strike Mr. Trump's affirmative defenses (Dkt 174) is granted in part and denied in part as follows:

(1) Mr. Trump's first and twelfth affirmative defenses are stricken in their entirety.

(2) Mr. Trump's fifth and fifteenth affirmative defenses are stricken except to the extent, if any, that they relate to Mr. Trump's June 24, 2019 statement.

(3) Mr. Trump's third affirmative defense is stricken to the extent it asserts an absolute presidential immunity defense, and is not stricken in any other respect, if there is any. It is denied in its remaining respects.

SO ORDERED.

Dated:        August 7, 2023

_____
Lewis A. Kaplan
United States District Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| E. JEAN CARROLL, | Civil Action No.: 1:20-cv-7311-LAK-JLC |
| *Plaintiff,* | |
| v. | |
| DONALD J. TRUMP, | |
| *Defendant.* | |

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO STAY PENDING APPEAL

Michael T. Madaio, Esq.
**HABBA MADAIO & ASSOCIATES LLP**
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
-and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: mmadaio@habbalaw.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ....................................................................................................................2

    I.      Defendant is Entitled to a Stay Pending Appeal.......................................................2

    A. Defendant Has Demonstrated a Likelihood of Success on the Merits...........................2

    B. Defendant Will Suffer Irreparable Harm Absent a Stay ...................................................4

    C. Plaintiff Has Not Demonstrated That She Will Suffer Any Harm from a
       Stay Pending Appeal............................................................................................5

    D. The Public Interest Weighs Heavily in Favor of a Stay...................................................6

    II.     The Court's Jurisdiction Has Been Divested Pending Appeal ...............................7

CONCLUSION.................................................................................................................10

<u>**TABLE OF AUTHORITIES**</u>

***Cases***

*Clinton v. Jones*,
    520 U.S. 681, 117 S.Ct. 1636 (1997)...................................................................................3

*Cohen v. Beneficial Inus. Loan Corp.*,
    337 U.S. 541, 69 S.Ct. 1221 (1949)...................................................................................3

*Helstoski v. Meaner*,
    442 U.S. 500, 99 S.Ct. 2445 (1979)...................................................................................3

*In re County Squire Assoc. of Carle Place, L.P.*,
    203 B.R. 182, 183 (B.A.P. 2d Cir. 1996). .........................................................................5

*In re World Trade Ctr. Disaster Site Litig.*,
    503 F.3d 167, 170 (2d Cir. 2007) ..................................................................................2, 7

*Massachusetts* v. *Mellon,*
    262 U. S. 447, 489 (1923)...................................................................................................3

*Maricultura del Norte, S. de R.L. de C.V. v. WorldBusiness Capital, Inc.*,
    No. 14 CIV. 10143 (CM), 2019 WL 2117645 (S.D.N.Y. Apr. 26, 2019)............................8

*Mitchell v. Forsyth*,
    472 U.S. 511, 105 S.Ct. 2806 (1985)...................................................................................5

*Nixon v. Fitzgerald*,
    457 U.S. 731, 102 S.Ct. 2690 (1982).............................................................................3, 4, 7

*Trump v. Vance*,
    481 F. Supp. 3d 161 (S.D.N.Y. 2020) ............................................................................2, 3

*United States v. Rodgers*,
    101 F.3d 247 (2d Cir. 1996) ................................................................................................8

<u>**Rules and Statutes**</u>

Rule 8(a)(1)(A) ........................................................................................................................1

Defendant, Donald J. Trump ("Defendant"), by and through his undersigned attorneys, Habba Madaio & Associates LLP, respectfully submits this memorandum of law in further support of his motion, pursuant to Rule 8(a)(1)(A) of the Federal Rules of Appellate Procedure, to stay proceedings pending resolution of his appeal of this Court's July 5, 2023 Order of denial of Defendant's Motion for Summary Judgment (ECF No. 173), which is currently pending before the United States Court of Appeals for the Second Circuit under case no. 23-0793 (the "Appeal").  For the reasons set forth more fully below and in Defendant's moving papers, it is respectfully requested that this Court grant Defendant's Motion to Stay pending the Appeal ("the Motion") in its entirety.

## PRELIMINARY STATEMENT

The application presently before this Court respectfully requests a stay of this action by the Defendant pending resolution of the Appeal.  As set forth, *infra,* and in Defendant's initial moving papers, the four-factor test for the imposition of a stay pending the Appeal has been satisfied.

*First,* Defendant has convincingly established that he has a likelihood of success on the merits of his appeal.  *Second,* it is clear that Defendant would face irreparable harm absent a stay as his absolute presidential immunity defense would essentially be rendered moot should he be forced to proceed to trial absent an adjudication of this defense on the merits.  *Third,* a balancing of the equities weighs heavily in favor of Defendant, as Plaintiff would sustain minimal harm as a result of a stay while Defendant would be severely prejudiced if the underlying action were permitted to proceed forward while the crucial question of whether his presidential immunity defense is viable remains pending before the Second Circuit.  *Fourth,* the public interest favors a stay pending appeal, as the appeal will provide final resolution non important and novel questions

1

concerning the doctrine of presidential immunity, the separation of powers doctrine, and the interplay between the Executive Branch and Judicial Branch.

Accordingly, based upon the reasons of fact and law set forth herein as well as in Defendant's moving papers, a stay of this action pending resolution of the Appeal is clearly warranted.

## ARGUMENT

### I.   DEFENDANT IS ENTITLED TO A STAY PENDING APPEAL

The standard to stay proceedings in a lower court action pending appeal is based upon the following four factors: (1) whether the stay applicant has made a strong showing that there is a likelihood of success on the merits; (2) whether irreparable harm will result absent the issuance of a stay; (3) whether the issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *See In re World Trade Ctr. Disaster Site Litig.,* 503 F.3d 167, 170 (2d Cir. 2007).

Plaintiff erroneously contends that Defendant failed to establish the requisite elements for this Court to impose a stay pending appeal.  As explained below, this argument is wholly without merit.

### A.  Defendant Has Demonstrated a Likelihood of Success on the Merits

As set forth in greater detail in his moving papers, Defendant has established a likelihood of success on the merits.

While Plaintiff claims that Defendant has failed to sufficiently explain the merits of his Appeal, this is simply not so. Defendant, in his motion papers, set forth many of the well-reasoned arguments to be made on appeal and explained why, in all likelihood, his appeal will be successful. Indeed, Defendant's non-waivability argument is grounded in Supreme Court precedent which stands for the proposition that presidential immunity is an "essential Presidential prerogative" that

is firmly "rooted in the constitutional tradition of the separation of powers," *Nixon v. Fitzgerald*, 457 U.S. 731, 743, 102 S.Ct. at 2698, 2701 (1982). As such, it stands apart from other forms of absolute immunity because it is "derive[d] in principle part from factors unique to [the President's] constitutional responsibilities and station," *Harlow v. Fitzgerald*, 457 U.S. 800, n. 17 (1982), which is necessarily infringed upon when a President's official acts are subject to civil liability because this type of overreach by the judiciary "curtail[s] the scope of the official powers of the Executive Branch," *Clinton v. Jones*, 520 U.S. 681, 682, 117 S.Ct. 1636, 1638 (1997). Consequently, presidential immunity, unlike all other forms of immunity, implicates the separation of powers doctrine to such a degree that it is inherently an issue of subject matter jurisdiction. *See, e.g., Lujan v. Defenders of Wildlife,* 504 U.S. 566. 577, 112 S.Ct. 2130, 2145 (1992) (finding that the separation of powers doctrine is violated, and Article III standing is lacking, when the judiciary "'assume[s] a position of authority over the governmental acts of another and co-equal department' and [] become[]s 'virtually continuing monitors of the wisdom and soundness of Executive action.'") (citing *Massachusetts* v. *Mellon,* 262 U. S. 447, 489 (1923)).

As for Defendant's additional arguments to be made on appeal—including Defendant's position as to why his presidential immunity defense is meritorious, and certainly not futile—those arguments are similarly set forth in Defendant's moving papers, *see* ECF No. 185 at 5, which incorporated by reference the arguments made in connection with Defendant's Motion for Summary Judgment, *see* ECF Nos. 109 and 122. As explained therein, Defendant has convincingly established that he was acting within the "outer perimeter of his authority" as President when he made alleged defamatory statements. *Nixon*, 457 U.S. at 757, 102 S.Ct at 2705.

Further, it is abundantly clear that the issues presented on appeal, *i.e.,* whether presidential immunity can be waived and, separately, under what circumstances it is appropriate to permit leave

to amend to add a defense of presidential immunity, present novel and important question of law that have far-reaching implications moving forward with regard to the level of autonomy afforded to the President of the United States and the degree of separation of power that exists between Executive Branch and Judicial Branch.  Plaintiff fails to present any argument to the contrary with respect to this crucial point, much less explain how Defendant's appeal is lacking in merit.

Therefore, based upon the foregoing, and as articulated in Defendant's moving papers, Defendant has set forth a likelihood of success on the merits with respect to the important and novel arguments that will be determined on appeal.  As such, this factor weighs heavily in Defendant's favor.

**B.  Defendant Will Suffer Irreparable Harm Absent a Stay**

As set forth in Defendant's moving papers, there is a wealth of controlling case law which supports the contention that Defendant will suffer irreparable harm if he is forced to proceed to trial absent a stay pending resolution of the appeal as to the viability of presidential immunity defense. *See* ECF 186 at 7-10.

Rather than address this point in her opposition brief, Plaintiff avoids the issue entirely. Instead, Plaintiff overlooks binding precedent and claims that there is no irreparable harm because any harm sustained by Defendant absent a stay is, in her eyes, "self-inflicted." ECF 202 at 4. In doing so, Plaintiff puts forth a one-sided retelling of the procedural history of this action, replete with unsubstantiated narrative, speculation, and pure conjecture as to why she believes Defendant took certain actions throughout the course of this litigation. *Id.* at 5-8.  This portion of Plaintiff's brief is not only comprised of uninformed guesswork—Plaintiff lacks any insight or knowledge into the motivations underlying any of conduct she questions—but it is entirely irrelevant to the issue of whether Defendant will incur irreparable harm.

As to this operative question, Plaintiff offers no retort. Nor can she. It is well settled that an immunity defense is an "immunity from suit rather than a mere defense to liability" which is "effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). Indeed, the entire purpose underlying an immunity defense is invariably and severely hampered when a court recognizes that immunity only after the conclusion of litigation, at which point that party "loses" that immunity. *See In re County Squire Assoc. of Carle Place, L.P.,* 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996) (noting that it is the "quintessential form of prejudice" when "absent a stay pending appeal . . . the appeal will be rendered moot.").

The current trial date in this matter is January 15, 2024.  If the matter *sub judice* proceeds without the imposition of a stay pending the Appeal, then it appears to be a foregone conclusion that Defendant would be required to proceed to trial without final resolution regarding the viability of absolute presidential immunity by the Second Circuit.  Consequently, the Defendant's potential presidential immunity would be "effectively lost." *See Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815 (1985).

Based upon the foregoing, Defendant will suffer irreparable harm absent the imposition of a stay pending Appeal.

### C. Plaintiff Has Not Demonstrated That She Will Suffer Any Harm from a Stay Pending Appeal

Despite her arguments to the contrary, Plaintiff has not sufficiently established that she would sustain harm from a stay pending appeal.

For starters, Plaintiff's argument that a stay could delay this matter for "possibly years" is speculative and hyperbolic. And the fact that Defendant is involved in other litigation has no bearing on whether he is entitled to a stay in the instant matter. Thus, these arguments are merely red herrings.

Further, Plaintiff's argument that "requiring [her] to endure further delay . . . would [] be deeply unfair" does not present a valid reason to deny a stay. In New York, it is "well established that 'mere delay in the litigation does not establish undue prejudice' for purposes of a motion to stay." *Goodman v Samsung Elecs. Am., Inc.*, 17-CV-5539 (JGK), 2017 WL 5636286, at *3 (S.D.N.Y. Nov. 22, 2017) (citing *Rovi Guides Inc. v. Comcast Corp*, No. 16-cv-9278, 2017 WL 4876305 at *4 (S.D.N.Y. Oct. 27, 2017); *see also Molo Design, Ltd. v. Chanel, Inc.*, 21-CV-01578 (VEC), 2022 WL 2135628, at *3 (S.D.N.Y. May 2, 2022) ("Mere delay does not constitute prejudice."); *CDX Diagnostics, Inc. v. U.S. Endoscopy Group, Inc.*, 13-CV-05669 NSR, 2014 WL 2854656, at *4 (S.D.N.Y. June 20, 2014) ("Mere delay in the litigation does not establish undue prejudice.").

Even if mere delay were a valid point for Plaintiff to raise, any inconvenience Plaintiff is forced to incur as a result of a stay is considerably outweighed by the interest in "vindicating the immunity of a[] defendant[] who might be entitled to immunity from suit." *World Trade Ctr.*, 503 F.3d 167, 170 (2d Cir. 2007). This is especially true where there are important and novel questions involving the boundaries of the separation of powers doctrine and the extent of protection afforded under presidential immunity. These considerations clearly outweigh the minor prejudice, if any, that Plaintiff claims she will suffer if a stay is imposed.

**D.  The Public Interest Weighs Heavily in Favor of a Stay**

It is simply beyond dispute that the public interest weighs in favor of granting a stay of proceedings in the instant matter.

In arguing to the contrary, Plaintiff merely rehashes the same argument raised in the previous section (Point I(C)) of her opposition brief by reiterating that "granting a stay risks unduly prolonging this matter, which Carroll has been litigating for many years." *See* ECF 202 at 11.

Simply put, it strains credulity to argue that this supposed "public interest" is remotely tantamount to the public's interest in obtaining final resolution on the question of whether presidential immunity is underpinned by the separation of powers doctrine, so as to provide the President of the United States as non-waivable immunity from civil liability in the execution of his presidential duties. The Supreme Court has unequivocally acknowledged that there "exists the greatest public interest in providing" the President this form of wide-spanning immunity in performing his official acts, and that deprivation of such immunity would be to the "detriment of not only the President and his office but also the Nation that the Presidency was designed to serve." *Nixon*, 457 U.S. at 752 (internal quotations omitted).

Accordingly, it is respectfully submitted that the public interest in the viability and applicability of the doctrine of presidential immunity—presently on appeal before the Second Circuit—clearly favors the imposition of a stay and this significant public interest would clearly outweigh the purported "delay" that may result in this litigation should a stay be imposed.

## II.   THE COURT'S JURISDICTION HAS BEEN DIVESTED PENDING APPEAL

Defendant respectfully submits that this Court has been divested of jurisdiction pending resolution of the Appeal.

In her opposition papers, Plaintiff claims that the holding *In Re World Trade Ctr. Disaster Site Litig*. dispelled of the notion that a court is divested of jurisdiction during the pendency of an immunity-related appeal, but Plaintiff's reading of that case is mistaken. ECF 202 at 11-12. Although Plaintiff is correct in asserting that *In Re World Trade Ctr. Disaster Site Litig., 503 F.3d 167, 170 (2d Cir. 2007) applied the four-factor test in determining whether a stay pending appeal is warranted (which, as set forth herein and in Defendant's moving papers, Defendant has complied with), she fails to recognize the uniquely imminent nature of the irreparable harm that was present

in that case since it involved an entire class of plaintiffs who had suffered life-threatening injuries as a result of a widescale terror attack. *Id.* The *World Trade Ctr.* court specifically noted that the "third factor—substantial injury to the parties opposing the stay—has increased in significance with the passage of time since among the Plaintiffs are many people with life-threatening injuries, some of whom have died since the litigation began," and, on this basis, determined that the "public interest favors permitting pretrial proceedings to resume, thereby hastening the trial that might result in compensation for at least some Plaintiffs during their lifetimes[.]" *Id.* at 170. Here, on the other hand, no such extraordinary considerations are at play. Further, Plaintiff conveniently glosses over the fact that the Second Circuit recognized in its holding that claims of immunity frequently resulted in the divestiture of a district court's jurisdiction, and in applying the four-factor test, the Second Circuit tasked itself with determining "both whether to vacate the stay and whether to *restore* the District Court's jurisdiction." *Id.* at 170 (emphasis added). In other words, the Second Circuit's mere invocation of the traditional stay factors in the unique circumstances it was faced with in *In Re World Trade Center* did not upend decades of case law affirming the rule on divestiture.

In fact, other courts have recognized the unique nature of the court's holding in *World Trade Center*. For instance, in *Nat'l Rifle Ass'n of Am. v. Cuomo*, No. 1:18-CV-566-TJM-CFH, 2020 WL 7338588, at *4 (N.D.N.Y. Dec. 14, 2020), the court rejected plaintiff's invocation of *In Re World Trade Center*, noting that its case "is not quite comparable to the uniquely urgent situation of the plaintiffs … who the Court noted might not have lived to see the conclusion of the litigation." *Id.* Here, similarly, Plaintiff here has failed to show that her situation compares in any manner to the extreme and unusual circumstances involved in *In Re World Trade Center*.

At bottom, Plaintiff's singular reliance on an inapposite case does not defeat the well-established rule that an appeal from the denial of that immunity divests the Court of jurisdiction to oversee litigation of that appeal. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982) ("Until this threshold immunity question is resolved, discovery should not be allowed." ); *Williams v. Brooks*, 996 F.2d 728, 729 (5th Cir.1993) ("the traditional rule that the filing of a notice of appeal divests a district court of jurisdiction ... applies with particular force in the immunity context."); *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir.1992) (holding that when a defendant files a notice of interlocutory appeal on an issue of qualified immunity, "the district court is automatically divested of jurisdiction to proceed with trial pending appeal"); *Stewart v. Donges*, 915 F.2d 572, 577 (10th Cir. 1990) ("Defendants' right not to be tried while an interlocutory appeal is pending on qualified immunity arises 'automatically' upon the appeal"); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 42 F. Supp. 3d 556 (S.D.N.Y. 2014) (holding that an interlocutory appeal of an order denying a claim of qualified immunity divested the district court of jurisdiction to compel a production of documents); *Hallock v. Bonner*, No. 03-CV-195 (DNH/DRH), 2003 WL 22519644, at *2 (N.D.N.Y. Nov. 4, 2003) (noting that "the filing of a notice of interlocutory appeal divests the district court of jurisdiction" in the qualified immunity context.).

It is undisputed that the main issue of the Appeal is whether absolute presidential immunity is valid defense in this litigation.  Therefore, based upon the foregoing and as a result of this Court's finding that Defendant waived the defense of presidential immunity, it is respectfully submitted that this Court has been divested of jurisdiction until the Second Circuit resolves the question of whether Defendant is immune from this action.

<u>**CONCLUSION**</u>

Based upon the foregoing reasons of fact and law and the reasons set forth in the moving papers, Defendant, Donald J. Trump, respectfully requests that Defendant's Motion for a Stay Pending the Appeal be granted in its entirety.

Dated: August 17, 2023                    Respectfully submitted,

Michael T. Madaio, Esq.
Habba Madaio & Associates LLP
1430 US Highway 206, Suite 240
Bedminster, New Jersey 07921
                    -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: mmadaio@habbalaw.com
*Attorneys for Defendant, Donald J. Trump*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

E. JEAN CARROLL,

                         Plaintiff,


         -against-                                         20-cv-7311 (LAK)


DONALD J. TRUMP, in his personal capacity,

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

```
┌─────────────────────────────────────┐
│ USDS SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____               │
│ DATE FILED: ___8-18-2023___          │
└─────────────────────────────────────┘
```


## MEMORANDUM OPINION DENYING
## DEFENDANT'S MOTION TO STAY


              Appearances:


                         Roberta Kaplan
                         Joshua Matz
                         Shawn Crowley
                         Matthew Craig
                         Trevor Morrison
                         Michael Ferrara
                         KAPLAN HECKER & FINK LLP
                         *Attorneys for Plaintiff*

                         Alina Habba
                         Michael T. Madaio
                         HABBA MADAIO & ASSOCIATES LLP
                         *Attorneys for Defendant*


LEWIS A. KAPLAN, *District Judge.*

         A little less than four years ago, writer E. Jean Carroll commenced this defamation

lawsuit against then-president Donald Trump for certain statements he made in 2019 shortly after

2

Ms. Carroll publicly accused him of sexually assaulting ("raping") her in the mid 1990s. This case was largely stalled for years due in large part to Mr. Trump's repeated efforts to delay, which are chronicled in the Court's prior decisions.[1]  Mr. Trump's latest motion to stay – his *fourth* such request – is yet another such attempt to delay unduly the resolution of this matter.

After litigating this case for over three years, Mr. Trump, in his motion for summary judgment filed in December 2022, for the first time asserted that he has absolute presidential immunity for his 2019 statements about Ms. Carroll. This Court rejected the argument. It first held that Mr. Trump had waived his absolute presidential immunity defense by failing to plead or otherwise raise it earlier. It denied also, on two independent grounds, Mr. Trump's alternative request to amend his answer to raise the defense now: (1) the proposed amendment would be futile because the presidential immunity defense would be without merit, and (2) Mr. Trump in any case delayed unduly in raising the defense, and granting his request would prejudice Ms. Carroll unfairly.

Mr. Trump filed an interlocutory appeal of that decision. He now seeks to stay this case pending resolution of his appeal. For the reasons stated below, his request is denied.

### Facts

The Court assumes familiarity with its prior decisions in this case ("*Carroll I*") and in a second closely related case ("*Carroll II*"), which detail the facts and procedural histories of both

---

[1]    *E.g.*, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 4393067, at *12 (S.D.N.Y. July 5, 2023); *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2022 WL 6897075 (S.D.N.Y. Oct. 12, 2022); *Carroll v. Trump*, 590 F. Supp. 3d 575 (S.D.N.Y. 2022).

3

cases.[2]

*Ms. Carroll Files This Lawsuit In November 2019*

In the hours and days immediately after Ms. Carroll first publicly accused Mr. Trump of sexually assaulting ("raping") her in a department store in New York in the mid 1990s, Mr. Trump issued public statements in which he denied the accusation, stated that he did not know and never had met Ms. Carroll, and claimed that she fabricated the accusation for ulterior and improper purposes. Approximately five months later, in November 2019, Ms. Carroll brought this lawsuit alleging that Mr. Trump defamed her in his statements and seeking damages and other relief. The case was filed originally in a state court in New York before being removed to this Court in September 2020 in circumstances discussed previously.

*Mr. Trump's Previous Motions To Stay This Case*

This motion is Mr. Trump's fourth attempt to stay this case.

---

[2]

*E.g.*, Dkt 32, *Carroll v. Trump*, 498 F. Supp. 3d 422 (S.D.N.Y. 2020), *rev'd in part, vacated in part*, 49 F.4th 759 (2d Cir. 2022); Dkt 73, *Carroll*, 590 F. Supp. 3d 575; Dkt 96, *Carroll*, 2022 WL 6897075; Dkt 145, *Carroll v. Trump*, No. 20-cv-7311 (LAK), 2023 WL 2441795 (S.D.N.Y. Mar. 10, 2023); Dkt 173, *Carroll*, 2023 WL 4393067; Dkt 200, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 5017230, (S.D.N.Y. Aug. 7, 2023); Doc. No. 22-cv-10016 (*Carroll II*), Dkt 38, *Carroll v. Trump*, No. 22-cv-10016 (LAK), 2023 WL 185507 (S.D.N.Y. Jan. 13, 2023); *Carroll II*, Dkt 56, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2006312 (S.D.N.Y. Feb, 15, 2023); *Carroll II*, Dkt 92, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 3000562 (S.D.N.Y. Mar. 20, 2023); *Carroll II*, Dkt 95, *Carroll v. Trump*, No. 22-cv-10016 (LAK), 2023 WL 2652636 (S.D.N.Y. Mar. 27, 2023); *Carroll II*, Dkt 96, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2669790 (S.D.N.Y. Mar. 28, 2023), *Carroll II*, Dkt 212, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 4612082, (S.D.N.Y. July 19, 2023).

Unless otherwise indicated, Dkt references are to the docket in this case.

4

He first moved to stay it while it still was in state court, where he moved to stay the proceedings pending a decision by the New York Court of Appeals in a different lawsuit against him.[3]  The state court denied that motion, and the case was removed to this Court a month later.

Mr. Trump's second and third motions to stay, made before this Court, also were denied.  Both were related to a motion by the Department of Justice to substitute the United States for Mr. Trump as the defendant in this case pursuant to the Westfall Act based on the theory that Mr. Trump was an "employee" of the United States within the meaning of the Westfall Act and that he had acted within the scope of his employment as president when he made the allegedly defamatory statements. In October 2020, this Court denied the government's then motion to substitute the United States in place of Mr. Trump.[4]  Both Mr. Trump and the government appealed, and Mr. Trump moved in this Court to stay all proceedings pending appeal. He argued that this Court was "divested of jurisdiction" because its "'rejection of certification and substitution effectively denied [defendant] the protection afforded by the Westfall Act, a measure designed to immunize covered federal employees *not simply from liability, but from suit*.'"[5]  The Court denied Mr. Trump's motion to stay

---

[3]

     *Carroll v. Trump*, Index No. 160694/2019 (NY. Sup. Ct.), Dkt 43.

[4]

     In June 2023, the government stated that in its view, "the prior certification [under the Westfall Act] and motion to substitute have been overtaken" by developments subsequent to the government's initial certification, which included decisions on the substitution issue by the Second Circuit and the District of Columbia Court of Appeals. Dkt 166. On July 11, 2023, the government informed the Court and the parties of its decision not to renew its Westfall Act certification in this case. Dkt 177.

[5]

     Dkt 47 (Def. Letter Request to Stay) at 1 (emphasis and alteration in original) (quoting *Osborn v. Haley*, 549 U.S. 225, 238 (2007)).

5

without prejudice.[6]  Mr. Trump neither sought a stay from the Second Circuit nor renewed his

motion in this Court.

Mr. Trump moved a third time to stay this case in conjunction with a second motion,

that one filed by Mr. Trump, to substitute the United States in his place. Both requests came shortly

after the Second Circuit's decision on Mr. Trump's and the government's appeal of this Court's

Westfall Act decision, in which the Circuit certified the question of the whether Mr. Trump had

acted within the scope of his employment to the District of Columbia Court of Appeals. This Court

denied both motions – the stay motion and Mr. Trump's motion to substitute the United States, and

explained:

> "As an initial matter, discovery in this case has virtually concluded. Mr.
> Trump has conducted extensive discovery of the plaintiff, yet produced virtually none
> himself. The principal open items, as the Court understands it, are the depositions of
> Ms. Carroll and Mr. Trump, scheduled for October 14 and 19, respectively.
> Completing those depositions – which already have been delayed for years – would
> impose no undue burden on Mr. Trump, let alone any irreparable injury. . . . Given
> his conduct so far in this case, Mr. Trump's position regarding the burdens of
> discovery is inexcusable. On December 10, 2020, he moved for a stay pending
> appeal. His arguments then in support of that motion were almost identical to those
> advanced here. This Court denied the motion on September 15, 2021. And since that
> motion was denied, he has taken discovery against plaintiff when the circumstances

---

[6]   Dkt 56.

6

were not materially different.

"[A] stay [also] would cause substantial injury to plaintiff. As the Court noted in an earlier opinion in this case, 'defendant's litigation tactics have had a dilatory effect and, indeed, strongly suggest that he is acting out of a strong desire to delay any opportunity plaintiff may have to present her case against him.' Delay is a more serious concern in this case than usual for several reasons. First, the appeal from my order denying substitution already has consumed 20 months from the day it was noticed and it is not over yet. The remaining question has been certified to the D.C. Court of Appeals, a process that reasonably may be expected to be lengthy. Perhaps most significant, both plaintiff and defendant – and perhaps other witnesses – already are of advanced age. The defendant should not be permitted to run the clock out on plaintiff's attempt to gain a remedy for what allegedly was a serious wrong."[7]

*Current Status Of This Case*

There have been several developments relevant to this case following the Court's October 2022 denial of Mr. Trump's third motion to stay. Most significantly, in November 2022, Ms. Carroll filed a second lawsuit against Mr. Trump in a case now known as "*Carroll II*" in which she brought two claims. The first was a sexual battery claim under the Adult Survivors Act ("ASA"), a new law enacted by New York in 2022 that created a one-year period within which persons who were sexually assaulted as adults could sue their alleged assaulters even if their claims otherwise

---

[7]   *Carroll*, 635 F. Supp. 3d at 236-37.

7

would have been untimely.  She brought also a defamation claim for a statement Mr. Trump published on social media in 2022 that was substantially similar to his 2019 statements.

By the time *Carroll II* was filed, discovery in this case had been completed.[8]  The parties submitted a joint pretrial order, which this Court approved, and decided Mr. Trump's motion for summary judgment and both parties' pretrial *in limine* motions.[9]  This case originally was set for trial on February 6, 2023, and later was adjourned until April 10, 2023. The Court subsequently adjourned the April 10, 2023 trial date *sine die* given the then still pending certified questions in the District of Columbia Court of Appeals on the Westfall Act issue. Following the D.C. court's ruling on the certified questions, a remand of this case by the Second Circuit, and completion of the trial in *Carroll II*, the Court set a new trial date of January 15, 2024 in this case. At present, the only matter that remains open prior to trial is completion of reply memoranda on the issue of preclusive effect, if any, of the findings in *Carroll II* in this action.

*Carroll II* was tried in this Court from April 25, 2023 to May 9, 2023.  The jury in that case unanimously determined that Mr. Trump "sexually abused" Ms. Carroll and that he defamed her in his 2022 statement, awarding her $2.02 million for her sexual battery claim and $2.98

---

[8]  The deadline to complete all discovery in this case was November 16, 2022. Dkt 77.

[9]  Ms. Carroll notes that "[i]f cross-applied to this proceeding, as they should be, the Court's decisions on the motions *in limine* submitted in *Carroll II* would resolve the bulk of the outstanding *Carroll I* evidentiary issues (though of course the parties may wish to submit additional motions in limine in advance of the trial scheduled for January 2024)."  Dkt 202 (Pl. Opp. Mem.) at 6 n.7. As this issue is not presently before the Court, it does not now decide or take any position with respect to it.

8

million for her defamation claim.[10]

***Discussion***

*Legal Standard*

The legal standards governing a motion to stay are well settled:

"'The proponent of a stay bears the burden of establishing its need.' *Clinton v. Jones*, 520 U.S. 681, 708 (1997). Even where irreparable injury might result, a stay is 'not a matter of right.' *Virginian Ry. Co.*, 272 U.S. 658, 672 (1926). Rather, it is 'an exercise of judicial discretion,' and '[t]he propriety of its issue is dependent upon the circumstances of the particular case.' *Id.* at 672–73. Yet the Court's discretion is not unguided. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Courts weighing motions to stay consider four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.' *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also Sailor v. Scully*, 666 F.Supp. 50, 51 (S.D.N.Y.1987) (describing the four factors regulating issuance of a stay pursuant to Federal Rule of Civil Procedure 62). Courts treat these four factors 'like a sliding scale.' *Thapa v. Gonzales*, 460 F.3d 323, 334

---

[10] The precise meaning of the jury's "sexual abuse" finding has been detailed in the Court's prior decisions and need not be repeated here. *E.g.*, *Carroll*, 2023 WL 5017230; *Carroll*, 2023 WL 4612082.

9

(2d Cir.2006). '[M]ore of one excuses less of the other.' *Id.* (quoting *Mohammed v.*

*Reno*, 309 F.2d 95, 101 (2d Cir.2002))."[11]

Mr. Trump contends that this case should be stayed pending appeal because (1) there is a substantial

likelihood he will succeed in his appeal, (2) he would suffer irreparable harm in the absence of a

stay, (3) a stay would not harm Ms. Carroll, and (4) the public interest favors a stay. His argument

fails on each criterion.

*Likelihood of Success*

       Mr. Trump argues that there is a sufficient probability of success on the merits of his

---

[11]

*Whitehaven S.F., LLC v. Spangler*, No. 13-CV-8476 (ER), 2014 WL 5510860, at *1 (S.D.N.Y. Oct. 31, 2014) (footnote omitted). *See also, e.g.*, *New York v. United States Dep't of Homeland Sec.*, 974 F.3d 210, 214 (2d Cir. 2020) ("The factors relevant in assessing a motion for a stay pending appeal are the applicant's 'strong showing that he is likely to succeed on the merits,' irreparable injury to the applicant in the absence of a stay, substantial injury to the nonmoving party if a stay is issued, and the public interest.") (citation omitted); *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) ("The four factors to be considered in issuing a stay pending appeal are well known: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'") (footnote omitted) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

Mr. Trump points out that courts in this Circuit have differed in the "exact phrasing" of the four factors relevant to a motion to stay, specifically with respect to the first factor on likelihood of success. Dkt 186 (Def. Mem.) at 2. The Second Circuit has acknowledged that "some uncertainty has developed as to the first factor because of the various formulations used to describe the *degree* of likelihood of success that must be shown," and has stated that "'[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other [stay] factors.'" *Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2002) (emphasis in original) (quoting *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir.1977)). Mr. Trump identifies "[m]ore recent holdings" that he claims have "recogniz[ed] the appropriateness of staying litigation where there is at least a 'serious question going to the merits' pending appeal." Dkt 186 (Def. Mem.) at 3 (citing *Trump v. Vance*, 481 F.Supp.3d 161, 164 (S.D.N.Y. 2020)). The Court need not and does not now decide between these various formulations because it finds that Mr. Trump's motion would fail under any of the applicable formulations.

10

appeal of the absolute presidential immunity decision principally for the same reasons he advanced

unsuccessfully in his summary judgment motion. Indeed, many of Mr. Trump's points in his current

motion repeat almost verbatim those offered in his prior briefing in support of his assertion that

presidential immunity is a non-waivable issue of subject matter jurisdiction. But he does not address

any of this Court's reasoning in rejecting his argument. Nor does he engage in any meaningful way

with this Court's conclusion that permitting him amend to raise his purported presidential immunity

defense at this late date in any event would be futile because the defense is legally insufficient. His

only other argument – that the Second Circuit has jurisdiction immediately to review the Court's

decision that he waived his presidential immunity defense – is irrelevant to the question of whether

he has any significant likelihood of success on appeal.

In sum, Mr. Trump has not provided a single reason for the Court to find that there

is any likelihood that he will succeed on appeal, let alone a "strong showing." Accordingly, this

factor weighs against Mr. Trump.[12]

*Irreparable Harm*

Mr. Trump's arguments with respect to irreparable harm also are unpersuasive. He

contends that  he would be subjected to irreparable harm in the absence of a stay because, he argues,

---

[12]    To the extent Mr. Trump relies on the court's articulation of the standard in *Trump v. Vance*,
481 F.Supp.3d 161 (S.D.N.Y. 2020), that "[t]he movant must show . . . either (a) a likelihood
of success on the merits or (b) sufficiently serious questions going to the merits to make them
a fair ground for litigation and a balance of hardships tipping decidedly in the movant's
favor,'" his argument fares no better. *Id.* at 164 (citation omitted). Even accepting for the sake
of argument that the latter standard would apply here and that Mr. Trump's appeal presents
"sufficiently serious questions going to the merits," the "balance of hardships" in this case is
far from "decidedly in the movant's favor" for the reasons discussed below.  *Id.* Indeed, the
balance of hardships in these circumstances strongly disfavors a stay.

"the entire purpose of an immunity is inherently and unavoidably frustrated when a Court acknowledges the viability of an immunity only *after* the conclusion of litigation, at which point the immunity from suit has already been irreparably and indisputably forfeited."[13]  While that argument is convincing in many circumstances, it entirely is without merit in the unusual circumstances in this case.

First, by litigating this case for *over three years* before even raising his presidential immunity defense – and waiting another *seven months* between first raising his immunity defense and moving to stay this case on that basis – Mr. Trump effectively has forfeited any claim to irreparable harm in the absence of a stay. He has not offered any explanation for either delay despite ample opportunity to do so.[14]  Although he now argues that his "presidential immunity defense will be 'effectively lost'" without a stay because he otherwise "will be required to proceed to trial without final resolution as to whether his presidential immunity defense is viable," his loss of that defense was the product of his own decision not to raise it until the tail end of this litigation.[15]  In other words, any purported harm resulting from his having to stand trial despite a potential claim to immunity would be entirely of his own doing.

Second, Mr. Trump's argument for irreparable harm is even weaker in this case's current posture.  As noted above, discovery in this case was completed in November 2022.  Almost

---

13

Dkt 186 (Def. Mem.) at 8 (emphasis in original).

14

*New York v. United States Dep't of Com.*, 339 F. Supp. 3d 144, 148 (S.D.N.Y. 2018) ("'[I]nexcusable delay in filing' a motion to stay 'severely undermines the . . . argument that absent a stay irreparable harm would result.'") (quoting *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993)).

15

Dkt 186 (Def. Mem.) at 10 (citation omitted).

12

all of the pretrial litigation is complete, and trial is less than five months away.  Moreover, while the

precise scope of the trial in this case is yet to be determined, the Court already has concluded that

the jury's finding in *Carroll II* that Mr. Trump sexually abused Ms. Carroll "is conclusive with

respect to this case."[16]  Thus, having completed already the pretrial burdens to which he refers in his

argument, the only purported harm Mr. Trump reasonably may claim he would suffer in this case

would be having to stand trial. In these somewhat unusual and extraordinary circumstances where

immunity is being litigated essentially on the eve of trial, Mr. Trump has not satisfied his burden of

establishing that he would suffer irreparable harm in the absence of a stay.


*Injury to Plaintiff and Public Interest*

By contrast, a stay almost certainly would injure both Ms. Carroll and the public

interest.

Mr. Trump contends that a stay would cause minimal harm, if any, to Ms. Carroll.

He argues that:

"While it is true that this action has been pending for several years, Plaintiff

was able to utilize discovery gathered in this action to proceed to trial in an expedited

basis in the related matter of *Carroll II*. In this context, the harm of delay is

significantly diminished. Indeed, it cannot be reasonably disputed that Defendant's

entitlement to be heard on the threshold question of whether he is entitled to absolute

immunity from liability outweighs Plaintiff's desire to expeditiously hold a second

---

[16]

*Carroll*, 2023 WL 5017230, at *7.

13

trial on similar and related claims. Therefore, this factor tips in Defendant's favor."[17]

But his argument mistakenly conflates the relief Ms. Carroll was awarded in *Carroll II* (which now

is pending on appeal) and the relief she seeks for the distinct injuries she allegedly suffered as a

result of the alleged defamation asserted in this case.   The fact that the claims in both cases are

"similar and related" has nothing to do with whether Ms. Carroll would be injured by a stay in this

case. And for reasons this Court has discussed previously, she almost certainly would. As the Court

explained in denying Mr. Trump's request for leave to raise his absolute immunity defense on the

alternative basis of undue delay and unfair prejudice:

> "Ms. Carroll now has litigated this case for more than three and a half years.
>
> She has completed discovery, engaged in extensive motion practice, resisted the
>
> government's attempt to defeat her claim before [this] Court, the Second Circuit and
>
> the D.C. Court of Appeals, and devoted untold hours and resources to pursuing her
>
> claim. . . . [A]n appeal likely would cause 'significant additional delays in this
>
> litigation arising from a defense that Trump chose not to assert for the first three
>
> years of the proceedings.' Were this Court's rejection of his defense upheld on
>
> appeal, those additional delays would further prejudice Ms. Carroll unfairly. She now
>
> is 79 years old and, as just mentioned, has been litigating this case for more than
>
> three and a half years. There is no basis to risk prolonging the resolution of this
>
> litigation further by permitting Mr. Trump to raise his absolute immunity defense

---

[17] Dkt 186 (Def. Mem.) at 11.

14

now at the eleventh hour when he could have done so years ago."[18]

That analysis applies here too. In addition to all of these reasons that delaying trial would injure Ms. Carroll, a stay in these circumstances also could – as Ms. Carroll points out – "cause a spiral of further delays" given that "a rescheduled trial may have to compete with the end of [Mr.] Trump's presidential campaign, any number of other civil and criminal trials [that Mr. Trump currently faces], the possibility of a prison sentence, and/or conceivably the start of a second Trump presidency."[19] The injury likely to result to Ms. Carroll therefore counsels against a stay.

Finally, public interest considerations disfavor a stay.  Mr. Trump contends that "there 'exists the greatest public interest in providing' the President immunity from his official acts, and that deprivation of such immunity would be to the 'detriment of not only the President and his office but also the Nation that the Presidency was designed to serve.'"[20]  His argument again fails to take into account the fact that this Court already has held that his immunity defense, even if his answer were amended to assert it at this late date, would fail on the merits, a determination with which Mr. Trump has not engaged at all other than by incorporating his prior unsuccessful arguments by reference. While there is a public interest in immunizing presidents for actions properly taken within the scope of their duties, there is a public interest also in ensuring that even presidents will be held accountable for actions that – as this Court already has determined in this case – do not come within

---

[18]

*Carroll*, 2023 WL 4393067, at *12-13.

[19]

Dkt 202 (Pl. Opp. Mem.) at 9.

[20]

Dkt 186 (Def. Mem.) at 12 (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 752 (1982)).

15

that scope.[19]  Moreover, although the Second Circuit has acknowledged "a public interest in

vindicating the immunity of [a defendant] who might be entitled to immunity from suit," it has

recognized also – as Mr. Trump concedes –  "a public interest in having [a plaintiff] who might be

entitled to recovery receive compensation while still living and able to use it to . . . improve the

quality of [his or her life]."[20]  As noted above, both parties are of advanced age, and a stay of this

case pending resolution of Mr. Trump's appeal would threaten delaying any compensation to which

Ms. Carroll might be entitled by at least several months, if not a year or more.  The public interest

therefore weighs against a stay.

Given that all four factors weigh against Mr. Trump's request to stay this case, his

motion is denied on that basis.


*This Court Has Not Been Divested Of Jurisdiction*

In a one page argument at the end of his brief, Mr. Trump contends that this action

"must also be stayed on the independent basis that this Court is currently divested of jurisdiction"

because "as presidential immunity confers immunity from suit in its entirety, appeals involving

immunity from suit therefore pertain to – and divest jurisdiction from the trial court over – the

---

[19]

   Mr. Trump argues also that the public interest favors a stay because he claims his appeal raises "important and novel questions concerning the doctrine of presidential immunity, the separation of powers doctrine, and the interplay between the Executive Branch and Judicial Branch."  Dkt 207 (Def. Reply Mem.) at 1-2.  His bare assertion that the issues raised by his immunity defense are "important and novel," without demonstrating that there is any merit to those issues, plainly is irrelevant to the question of where the public interest lies.

[20]

   *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d at 170.

16

entirety of the litigation."[21]  His argument is without merit.

Without now deciding the issue, the Court assumes *arguendo* that its decision that

Mr. Trump waived his immunity defense properly is immediately appealable under the collateral

order doctrine.[22]  It does not follow, however, that this Court is divested of jurisdiction as a result

of that appeal. Even where an interlocutory appeal of a denial of an immunity defense otherwise

might divest a district court of jurisdiction, "[c]ourts having considered this question have uniformly

applied the 'dual jurisdiction rule' . . . , under which 'the filing of an appeal under the collateral order

doctrine respecting a right not to be tried divests the district court of jurisdiction to proceed with the

trial [against the appealing defendant] *unless the district court certifies that the appeal is*

---

[21]

Dkt 186 (Def. Mem.) at 13.

[22]

Ms. Carroll contends that "the Second Circuit has made clear that '[t]he divestiture of
jurisdiction rule is … not a *per se* rule'" and instead "'is a judicially crafted rule' grounded
in 'concerns of efficiency.'" Dkt 202 (Pl. Opp. Mem.) at 12 (emphasis in original) (quoting
*United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996)).  The question in *Rodgers*,
however, was "whether filing a notice of appeal from a district court order that is *patently
nonappealable* divested the district court of jurisdiction to resentence." 101 F.3d at 251
(emphasis added). *See also  In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 42 F. Supp.
3d 556, 561 (S.D.N.Y. 2014) ("*Rodgers*, . . . however, is not directly on point as it does not
bear directly on cases involving the appeal of a denial of qualified immunity."). Ms. Carroll
does not argue that Mr. Trump's appeal is "patently nonappealable." Moreover, courts in this
Circuit have adopted the principle, as discussed above, that *unless an appeal is frivolous*, a
district court is divested of jurisdiction "immediately upon the filing of a request for
interlocutory review under the collateral order doctrine . . . in cases 'respecting a right not to
be tried,' such as double jeopardy, foreign sovereign immunity, Eleventh Amendment
immunity, and qualified immunity." *In re S. Afr. Apartheid Litig.*, No. 02-CV-4712 (SAS),
2009 WL 5183832, at *1 (S.D.N.Y. July 7, 2009) (citation omitted) (emphasis added).
Accordingly, and in the absence of fuller briefing by the parties on this issue, the Court
assumes without now deciding that Mr. Trump's appeal is immediately reviewable but
nonetheless determines that it is not divested of jurisdiction because the appeal is frivolous.

17

*frivolous*[.]'"[23]

As stated above, Mr. Trump has not made any argument different from the points contained in his summary judgment briefing – all of which this Court has rejected – that would permit a determination that absolute presidential immunity is a nonwaivable question of subject matter jurisdiction. What is more, even if the Circuit were to disagree on that question, this Court already has determined also that Mr. Trump's immunity defense would fail on the merits. He has not engaged with this Court's analysis of either question and thus shown no likelihood of success on appeal.  Accordingly, this Court certifies that Mr. Trump's appeal is frivolous and therefore has not divested this Court of jurisdiction.

### Conclusion

For the foregoing reasons, Mr. Trump's motion for a stay pending appeal (Dkt 185) is denied.  This Court certifies that the appeal itself is frivolous.

SO ORDERED.

Dated:          August 18, 2023

_____
Lewis A. Kaplan
United States District Judge

---

[23]

New York v. Locke, No. 08-CV-2503 (CPS) (RLM), 2009 WL 2413463, at *3 (E.D.N.Y. Aug. 3, 2009) (second and third alterations in original) (emphasis added) (citation omitted). *See also, e.g.*, *Davis v. City of New York*, No. 12-CV-3297 (PGG), 2018 WL 10070503, at *1 (S.D.N.Y. Dec. 14, 2018) ("The Supreme Court has approved the 'dual jurisdiction' approach as an appropriate method to deal with frivolous interlocutory appeals. *Behrens v. Pelletier*, 516 U.S. 299, 310 (1996). Accordingly, this Court must determine whether [defendant's] appeal [(including of the denial of qualified immunity)] is frivolous."); *Garcia v. Bloomberg*, No. 11-CV-6957 (JSR), 2012 WL 3127173, at *1 (S.D.N.Y. July 27, 2012) ("An interlocutory appeal, *unless frivolous*, generally divests the district court of jurisdiction respecting the issues raised and decided in the order on appeal . . . .") (emphasis added); *In re World Trade Ctr. Disaster Site Litig.*, 469 F. Supp. 2d 134, 137 (S.D.N.Y. 2007) ("I hold, following full consideration of Defendants' arguments, that their notice of appeal is legally ineffective to divest the district court of its jurisdiction."); *City of New York v. Beretta U.S.A. Corp.*, 234 F.R.D. 46, 51-53 (E.D.N.Y. 2006) (Weinstein, J.).

S.D.N.Y. – N.Y.C.
20-cv-7311
Kaplan, J.

# United States Court of Appeals

FOR THE
SECOND CIRCUIT

_____

      At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of September, two thousand twenty-three.

Present:

      Reena Raggi,
      Raymond J. Lohier, Jr.,
      Susan L. Carney,
          *Circuit Judges.*

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: Sep 13 2023

_____

E. Jean Carroll,

          *Plaintiff-Counter-*
          *Defendant-Appellee,*

      v.                      23-1045, 23-1146

Donald J. Trump, in his personal capacity,

          *Defendant-Counter-*
          *Claimant-Appellant.*

_____

Absent any objection from the parties, the appeals docketed under 23-1045 and 23-1146 will be consolidated seven days from the date of this order. Appellant moves for a stay pending appeal on both dockets. Appellee opposes.

The decision to grant a stay pending appeal is "an exercise of judicial discretion" requiring a balancing of four factors: (1) likely success on the merits, (2) irreparable harm, (3) the effect of a stay on the other parties, and (4) a determination of where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). Upon due consideration of these factors, the parties' submissions, and our own careful and independent review of the record, it is hereby ORDERED that Appellant's motions for a stay pending appeal are DENIED.

CERTIFIED COPY ISSUED ON 09/13/2023

Although we do not grant a stay pending appeal, it would be in the interest of the parties, as confirmed during oral argument, for the Court to resolve the issue of absolute presidential immunity as presented in the two appeals expeditiously.   Moreover, the parties' extensive briefing thus far makes clear that they have already substantially developed their arguments on the merits of that and related issues.   Accordingly, it is further ORDERED that these appeals be expedited. Appellant's brief on the merits will be due 15 days after the entry of this order; Appellee's response brief, 15 days after the filing of Appellant's brief on the merits; and Appellant's reply brief, if any, 5 days after the filing of Appellee's response brief.   The appeals will be assigned to the first available panel to hear the cases on the merits.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit