# 23-1045
# 23-1146

## United States Court of Appeals
## For the Second Circuit

E. JEAN CARROLL,

*Plaintiff/Appellee,*

-against-

DONALD J. TRUMP,

*Defendant/Appellant.*

## MEMORANDUM IN SUPPORT OF EMERGENT MOTION FOR STAY OF MANDATE AND STAY OF DISTRICT COURT PROCEEDINGS

MICHAEL T MADAIO, ESQ.
ALINA HABBA, ESQ.
HABBA MADAIO &
ASSOCIATES, LLP
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
-and-
112 West 34th Street, 17th & 18th Fl
New York. New York 10120
mmadaio@habbalaw.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..................................................................... *ii*

I.  The Court Should Stay The Mandate ............................................2

II. The Court Should Stay The District Court Proceedings ................................5

    A.  The Court Of Appeals Can Issue The Stay ...............................................5

    B.  The Stay Is Mandatory Because This Appeal Is Not Frivolous ..............3

    C.  A Traditional Factors Militate In Favor Of A Stay ................................10

        i.   The Public Interest Supports A Stay ...................................11

            a.   The Public Has An Interest In Final Resolution Of This Vexing Issue ...................................................................11

            b.   Ongoing District Court Proceedings Abridge First Amendment Rights ...................................................14

        ii.  President Trump Will Suffer Irreparable Injury Absent The Stay.........................................................................................15

        iii. A Stay Will Not Cause Substantial Injury To Plaintiff.................17

        iv.  There Is A Substantial Likelihood Of Success On The Merits ..........................................................................19

# TABLE OF AUTHORITIES

**Cases**                                                              **Page**

*Arbaugh v. Y & H Corp.*
    546 U.S. 500 (2006),..............................................................20

*Bd. of Educ. v. Pico*,
    457 U.S. 853 (1982)..............................................................15

*Blassingame v. Trump*,
    2023 WL 8291481 (D.C. Cir. Dec. 1, 2023) .................................8, 12, 13, 15, 20, 22

*Carroll v. Trump*,
    20-CV-7311-LAK, 2023 WL 5312894 (S.D.N.Y. Aug. 18, 2023).................8, 13, 22

*Chuman v. Wright,*
    960 F.2d 104 (9th Cir. 1992) ....................................................7

*Citigroup v. VCG*,
    598 F.3d 30 (2d Cir. 2010).......................................................19

*Clinton v. Jones*,
    520 U.S. 681 (1997)..............................................................4, 19, 20, 21

*Coinbase, Inc. v. Bielski*,
    599 U.S. 736 (2023)..............................................................7, 9, 16, 17, 18, 20

*Davidson v. Scully*,
    114 F.3d 12 (2d Cir. 1997).......................................................15, 16

*FTC v. Standard Oil*,
    449 U.S. 232 (1980)..............................................................18

*Goodman v Samsung Elec.*,
    17-CV-5539 (JGK), 2017 WL 5636286 (S.D.N.Y. Nov. 22, 2017) ..........................18

*Griggs v. Provident Consumer Discount Co.*,
    459 U.S. 56 (1982)...............................................................5, 6, 9, 11, 16, 17, 19, 20

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)..............................................................6

*Hirschfeld v. Bd. of Elections in City of New York,*
    984 F.2d 35, 39 (2d Cir. 1993) ........................................................ 5, 10, 19

*In re Country Squire Assoc. of Carle Place,*
    203 B.R. 182 (2d Cir. 1996) ............................................................ 1, 9, 16

*In re Drexel Burnham Lambert,*
    1989 WL 58404 (2d Cir. Apr. 19, 1989) .................................................. 2

*Jones v. Clinton,*
    879 F. Supp. 86 (E.D. Ark. 1995) .......................................................... 7

*Landis v. North American,*
    299 U.S. 248 (1936) ......................................................................... 19

*Mississippi v. Johnson,*
    71 U.S. 475 (1867) ....................................................................... 20, 21

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985) ..................................................................... 15, 16

*Mohammed v. Reno,*
    309 F.3d 95 (2d Cir. 2002) .................................................................. 19

*Molo Design v. Chanel,*
    21-CV-01578-VEC, 2022 WL 2135628 (S.D.N.Y. May 2, 2022) ............................ 18

*MyWebGrocer v. Hometown,*
    375 F.3d 190 (2d Cir. 2004) ................................................................ 19

*New York Progress v. Walsh,*
    733 F.3d 483 (2d Cir. 2013) ................................................................ 14

*Nixon v. Fitzgerald,*
    457 U.S. 731 (1982) ................................................................ 4, 13, 20, 21

*Packingham v. North Carolina,*
    582 U.S. 98, 104 (2017) .................................................................... 15

*Patton v. Yount,*
    467 U.S. 1025 (1984) ....................................................................... 17

*Red Lion Broadcasting Co. v. FCC*,
 395 U.S. 367 (1969) ...................................................................... 15

*Reed Elsevier v. Muchnick*,
 559 U.S. 154 (2010) ...................................................................... 21

*Susan B. Anthony List v. Driehaus*,
 573 U.S. 149 (2014) ................................................................. 14, 15

*Texans for Free Enter. v. Texas Ethics Comm'n*,
 732 F.3d 535 (5th Cir. 2013) ......................................................... 14

*United States v. Rodgers*,
 101 F.3d 247 (2d Cir. 1996) ......................................................... 6, 9

*United States v. Trump*,
 2023 WL 8615775 (D.D.C. Dec. 13, 2023) ............................ 7, 12, 15, 20

*United States v. Turkiye Halk Bankasi, A.S.*,
 No. 20-3499 (2d Cir. Dec. 23, 2020) ........................................... 10, 20

*Virginia State Bd. v. Virginia Citizens Consumer Council.*,
 25 U.S. 748 (1976) ........................................................................ 15

*Wilkins v. United States*,
 598 U.S. 152 (2023) ................................................................. 20, 21

*Williams v. Brooks*,
 996 F.2d 728 (5th Cir.1993) ............................................................. 6

*In Re World Trade Ctr. Disaster Site Litig.*,
 503 F.3d 167 (2d Cir. 2007) ........................................................... 17

**Rules and Statutes**                                                                    **Page**

Ct. R. 13(1) ................................................................................................ 2

Fed. R. App. P. 35(c) ................................................................................ 2

Local Rules 40.1 ........................................................................................ 2

Local Rules 40.2 ........................................................................................ 2

Rule 41(d)(1) ................................................................................ 1, 2, 3, 4

Rule 8(a) ................................................................................................ 1, 5

Rule 40(a)(1)(D). ...................................................................................... 2

President Donald J. Trump, Defendant-Counter-Claimant-Appellant herein, hereby moves (1) pursuant to Rule 41(d)(1), for a 90-day stay of the mandate to allow time for evaluation of a petition for writ of certiorari and other procedural options following the Panel's December 13, 2023 Opinion; and (2) pursuant to Rule 8(a), for a stay of the district court proceedings during the remaining pendency of this appeal.

The requested stays are necessary and appropriate to give President Trump an opportunity to fully litigate his entitlement to present an immunity defense in the underlying proceedings, including pursuing the appeal in the Supreme Court if necessary. The denial of this right would upend the longstanding rule that lower courts are divested of jurisdiction for the pendency of an immunity-related appeal. Forcing President Trump to stand trial absent a final determination as to whether his presidential immunity defense is viable would be the "quintessential form of prejudice" and would deprive the immunity of its intended effect. *In re Country Squire Assoc. of Carle Place*, 203 B.R. 182, 183 (2d Cir. 1996).

In addition, the failure to impose a stay would also violate President Trump's constitutional rights. For example, given the ongoing harm arising from foreclosing President Trump's access to this important defense, these motions implicate the First Amendment rights of President Trump and the hundreds of millions of Americans who wish to hear his campaign advocacy—as the leading candidate in the 2024

presidential election—unencumbered by the need to prepare for and attend a January 2024 trial in the district court, in which he is wrongly being denied access to a crucial and meritorious defense.

The significance of these issues is illustrated by, among other things, last week's filings with the Supreme Court by Special Counsel Jack Smith regarding President Trump's presidential immunity appeal arising from a criminal case in the District of Columbia. That case is stayed pending resolution of the appeal, as this case should be, and the possibility that the Supreme Court may soon address President Trump's immunity further supports the requested stays. On the other side of the ledger, there would be no countervailing prejudice to Plaintiff. Accordingly, President Trump respectfully submits that the stay motions should be granted.

## I.    The Court Should Stay The Mandate

Pursuant to Rule 41(d)(1), President Trump seeks a 90-day stay of the mandate as he evaluates appellate options relating to the Panel's ruling, including: (1) petitions for panel reconsideration and/or reconsideration en banc, which are not due until 45 days after the entry of judgment, *see* Fed. R. App. P. 35(c), 40(a)(1)(D), Local Rules 40.1-2; and (2) a petition for a writ of certiorari in the Supreme Court, which is not due until 90 days after entry of the judgment, *see* Sup. Ct. R. 13(1), *see In re Drexel Burnham Lambert*, 1989 WL 58404 (2d Cir. Apr. 19, 1989) ("[F]ollowing this Court's receipt of notice from the Clerk of the Supreme Court that

a petition for certiorari had been filed, the stay of the mandate has continued and it will remain in effect until the Supreme Court disposes of the case. In our view, to give this stay meaning, we must preserve the status quo with regard to the interests of those who petitioned for certiorari.").

Pursuant to Rule 41(d)(1), a stay of mandate is warranted when a party is able to "show that the petition would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(1). Here, both requirements are satisfied.

*First,* any petition for a writ of certiorari would present a "substantial question." *Id.* As the Panel acknowledged, "[t]his case presents a vexing question of first impression: whether presidential immunity is waivable." *See* Declaration of Michael T. Madaio ("Madaio Dec."), Ex. A (the "Opinion") at 2, 5. This question turns on whether, and to what extent, the constitutional separation of powers prohibits the Judicial Branch from exercising dominion over the President's official acts. The scope of issues to be addressed on further review are fundamentally important to the effective functioning of the tripartite government, will impact the delicate balance between two coordinate political branches, and will define the limits of presidential autonomy.

The Supreme Court has expressly acknowledged that there is a "special solicitude due to claims alleging a breach of essential Presidential prerogatives under the separation of powers." *Nixon v. Fitzgerald*, 457 U.S. 731, 743 (1982); *see also*

*id.* at 753 ("Courts traditionally have recognized the President's constitutional responsibilities as factors counseling judicial deference and restraint."). To that end, presidential immunity is more than a mere legal defense; it is a "functionally mandated incident to the President's unique office." *id.* at 749. There "exists the greatest public interest in providing" this protection to Presidents, *id.* at 752, since its absence "would seriously cripple the proper and effective administration of public affairs as entrusted to the executive branch of government," *id.* at 745 (citation omitted).

There is little doubt that the Supreme Court views presidential immunity as indispensable. Although it has had scant opportunity to discuss presidential immunity as a whole, it has made abundantly clear that the defense is "rooted in the constitutional tradition of the separation of powers," *Nixon*, 457 U.S. at 743, and designed to ensure that other branches cannot "curtail the scope of the official powers of the Executive Branch," *Clinton v. Jones*, 520 U.S. 681, 701 (1997). Since these issues are inextricably related to the question of whether presidential immunity is waivable, it is virtually indisputable that this appeal presents a "substantial question." Fed. R. App. P. 41(d)(1).

*Second*, as explained in Section II(c)(iv) below, the stay motions are supported by "good cause" since there is a significant likelihood of success on appeal. *Id.*

Therefore, a stay of the mandate is warranted while President Trump evaluates his appellate options relating to the Panel's ruling.

## II.  The Court Should Stay The District Court Proceedings

A stay of district court proceedings is mandated under the longstanding rule that a lower court is divested of jurisdiction throughout the pendency of an immunity-related appeal. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982). It is also independently warranted under the traditional stay factors. *See Hirschfeld v. Bd. of Elections in City of New York*, 984 F.2d 35, 39 (2d Cir. 1993). Therefore, for the reasons outlined below, the instant motion should be granted.

### A. The Court Of Appeals Can Issue The Stay

As an initial matter, President Trump is seeking this stay in the Court of Appeals because the district court has already denied this relief. *See* Madaio Dec. Ex. C. As such, it would be "impracticable" to renew the application.  Fed. R. App. P. 8(a)(2)(i)-(ii).  As the Panel noted, the district court denied President Trump's stay application based on the claim that this appeal was "frivolous." Opinion at 31. Although the Panel did not address that error directly, the district court's inaccurate characterization is refuted by the Panel's finding that the appeal involved "a vexing question of first impression…" *Id*., at 2, 5. Since the district court has made clear that it will not grant the requested relief based on its view of this appeal, it would be impracticable to renew the stay application at that level.

## B. The Stay Is Mandatory Because This Appeal Is Not Frivolous

President Trump was—and remains—entitled to a stay of proceedings in the district court pending full resolution of his immunity argument. A stay is mandatory under the divesture rule of *Griggs v. Provident Consumer Discount* so long as an appeal is not frivolous. The instant appeal plainly is not.

"The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs*, 459 U.S. at 58. It therefore is well settled that the filing of an appeal from the denial of an immunity defense divests the district court of jurisdiction from all proceedings until the appeal is resolved. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until this threshold immunity question is resolved, discovery should not be allowed." ); *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) (noting that, in the context of an immunity appeal, the district court is "divest[ed] of jurisdiction" and "does not regain jurisdiction until the issuance of the mandate by the clerk of the court of appeals."); *Williams v. Brooks*, 996 F.2d 728, 729 (5th Cir.1993) ("[T]he traditional rule that the filing of a notice of appeal divests a district court of jurisdiction…applies with particular force in the immunity context."); *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992) (holding that when a defendant files a notice of interlocutory appeal on an issue of qualified immunity, "the district court

is automatically divested of jurisdiction to proceed with trial pending appeal"); *see also Coinbase, Inc. v. Bielski*, 599 U.S. 736, 738 (2023) (reasoning that trial court "must stay its pre-trial and trial proceedings while the interlocutory appeal is ongoing." (emphasis added)).

When an appeal involves presidential immunity in particular, courts are unflinching in their application of the divestiture rule. For example, in *Clinton*, the district court entered a stay order because, "upon the filing of a notice of appeal in an immunity case, '[j]urisdiction has been vested in the court of appeals and the district court should not act further.'" *Jones v. Clinton*, 879 F. Supp. 86, 87-88 (E.D. Ark. 1995) (quotation omitted). More recently, the district court presiding over the District of Columbia criminal case against President Trump stayed its proceedings pending resolution of President Trump's appeal of that court's denial of his immunity and double jeopardy defenses. *See United States v. Trump*, 2023 WL 8615775, at *1 (D.D.C. Dec. 13, 2023) ("[T]he court agrees with both parties that Defendant's appeal *automatically stays* any further proceedings that would move this case towards trial or impose additional burdens of litigation on Defendant." (emphasis added)). Consistent with the court's reasoning regarding the "automatic" nature of the stay, the court cited *Blassingame v. Trump*, which, as here, involves false allegations relating to conduct while President Trump acted as Commander In Chief. *See* 2023 WL 8291481 (D.C. Cir. Dec. 1, 2023). In *Blassingame*, the

necessity of a mandatory stay during the pendency of President Trump's immunity-related appeal was so obvious that it is not referenced on the district court's docket. *See* Dkt. No. 21-cv-400 (D.D.C.).

Here, the district court only managed to circumvent the divestiture rule by certifying that the instant appeal is frivolous. *See Carroll v. Trump*, 20-CV-7311-LAK, 2023 WL 5312894, at *8 (S.D.N.Y. Aug. 18, 2023) ("[T]his Court certifies that Mr. Trump's appeal is frivolous and therefore has not divested this Court of jurisdiction."). It is evident that the Panel did not agree with this frivolity finding based on its acknowledgment that this matter presents a "vexing question of first impression[.]" Opinion at 2, 5. Despite so finding, the Panel declined to affirm that this appeal is not frivolous, reasoning that "under the singular circumstances presented here, considerations of judicial economy and efficiency favor the District Court's retention of jurisdiction." *Id*. at 31. The Panel's sole justification for failing to do so was that it sought to avoid the "rather pointless exercise" of requiring the district court to "re-adopt[] the orders it has issued since July 19, 2023, the date [President Trump] appealed the July 7 Order." *Id.*

The Panel relied on *United States v. Rodgers* to support its conclusion that "considerations of judicial economy and efficiency favor the District Court's retention of jurisdiction." Opinion at 31. *Rodgers*, however, involved "a plainly unauthorized notice of appeal which confers on this court the power to do nothing

but dismiss the appeal." 101 F.3d at 252. The "circumstances" here are not "similar," Opinion at 32, and *Rodgers* is inapposite with respect to the "vexing" issues of "first impression" presented by this appeal, *id*. at 2, 5. In light of those issues and their significance to the public—as well as future presidents—enforcing the *Griggs* principle at this juncture would not be a "rather pointless exercise." *Id.* at 31.

In addition, the Panel seemingly failed to consider the significant and irreversible harm that President Trump will suffer if he is forced to stand trial before final resolution of his immunity-related appeal. *See In re Country Squire*, 203 B.R. at 183 (noting that it is the "quintessential form of prejudice" when "absent a stay pending appeal…the appeal will be rendered moot."). The divesture rule applies until the appeal has been *fully* resolved and all potential avenues for appeal have been exhausted. *See Coinbase*, 599 U.S. at 741 ("*Griggs* dictates that the district court must stay its proceedings while the interlocutory appeal…is ongoing."). Therefore, an affirmation that the instant appeal is not frivolous is critically important since it will ensure that district court proceedings are stayed throughout the duration of any remaining appellate proceedings, including those before this Court and/or the Supreme Court.

Finally, assuming, *arguendo*, that the Panel correctly concluded that President Trump's immunity argument is not a matter of subject matter jurisdiction—an issue

we dispute—the stay is still mandatory. This Court made that clear by issuing a stay order in *United States v. Turkiye Halk Bankasi*, which involved immunity arguments under the Foreign Sovereign Immunities Act that were ultimately addressed by the Supreme Court. *See* Doc. 49, *Turkiye Halk Bankasi,* No. 20-3499 (2d Cir. Dec. 23, 2020).

Accordingly, controlling precedent requires this Court to issue a determination as to whether the instant appeal is frivolous. Since it plainly is not, the district court must be divested of jurisdiction until the presidential immunity question has been fully and finally resolved and all appeals have been exhausted.

### C. A Traditional Factors Militate In Favor Of A Stay

Aside from the divesture issue, a stay is also independently supported by the factors that "are considered before staying the actions of a lower court." *Hirschfeld*, 984 F.2d at 39. Namely, those factors are:

> (1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected.

*Id.* (cleaned up).

For the reasons set forth below, these factors weigh decisively in granting a stay pending resolution of President Trump's petition for writ of certiorari and any resulting proceedings before the Supreme Court.

### i.     The Public Interest Supports A Stay

The public interest supports staying the district court proceedings so that President Trump can litigate the "vexing" issues presented.  Opinion at 2, 5.

First, this appeal involves fundamentally important issues which touch upon the president's independence and autonomy, the separation of powers between the Judicial and Executive Branches, and structural protections which help maintain the effective functioning of government. Second, the public has a First Amendment interest in President Trump's campaign advocacy that is parallel to the First Amendment's protections of President Trump's campaign speech.  Consequently, continued proceedings in the district court during the pendency of this appeal violates *Griggs* and harms the public's interest in a full and fair airing of the questions presented by this appeal.

### a. The Public Has An Interest In Final Resolution Of This Vexing Issue

Any appeal involving presidential immunity is inherently important because the results are effectively certain to guide the manner in which future Presidents carry out their presidential duties. This case is no different.

In contrast to the district court's dismissive treatment of President Trump's immunity argument, Special Counsel Jack Smith asserted to the Supreme Court last week that the immunity issue presents a "weighty and consequential…constitutional question[]," which is of "exceptional national importance."  Motion to Expedite

Briefing at 1, 4, *United States v. Trump*, No. 23-624 (Dec. 11, 2023). In a related filing, the Special Counsel asserted that "[i]t is of imperative public importance" that President Trump's "claims of immunity be resolved by this Court" because "only" the Supreme Court "can definitely resolve them." Petition for a Writ of Certiorari Before Judgment at 2-3, *United States v. Trump*, No. 23-624 (Dec. 11, 2023). While President Trump disagrees with the Special Counsel's view on the merits and the Special Counsel's efforts to prevent the D.C. Circuit from first addressing the appeal, Mr. Smith is correct about the significance of the moment.

Plaintiff's counsel took a position similar to the Special Counsel's in an amicus brief filed in *Blassingame*. There, counsel argued that (1) "the doctrine of absolute immunity vindicates important constitutional principles, including the separation of powers"; (2) "the doctrine of absolute presidential immunity serves important purposes in our legal system"; (3) "[d]enying absolute immunity to a President (or former President) is rightly a rare thing"; and (4) "[t]hese principles have significant real-world implications." Amicus Br. at 4, 6, 8, 25, *Blassingame v. Trump*, No. 22-5069 (D.C. Cir. Sept. 30, 2022) (Document #1967073).

Likewise, in a prior appellate ruling, this Court opined that whether President Trump's conduct is immune from liability is a "question of extreme public importance" because it "touches upon the duties of the President of the United States,

and the personal tort liability he and his successors may (or may not) face[.]" *Carroll v. Trump*, 49 F.4th 759, 780 (2d Cir. 2022).

The Supreme Court has also recognized that there "exists the greatest public interest" in ensuring that the President is immunized from liability for the performance of his official acts, and that the absence of such immunity "would seriously cripple the proper and effective administration of public affairs as entrusted to the executive branch of government," *Nixon*, 457 U.S. at 745. The Supreme Court has reasoned that this protection is necessary to afford the President the "the maximum ability to deal fearlessly and impartially with the duties of his office" since he is an "easily identifiable target for suits for civil damages." *Id.* at 752-753 (citations omitted). The Panel's finding that presidential immunity is waivable, however, cuts against the spirit of *Nixon* Supreme Court's and diminishes the latitude of protection afforded to all future Presidents. The possibility that presidential immunity could be forfeited, even unintentionally, will render Presidents "unduly cautious in the discharge of [their] duties," which would be to "the detriment of not only the President and his office but also the Nation that the Presidency was designed to serve." *Id.* at 752.

Therefore, there is a tremendous public interest in obtaining final resolution as to nature and extent to which presidential immunity protects a President from liability in the performance of his official acts.

### b. Ongoing District Court Proceedings Abridge First Amendment Rights

The district court has scheduled a trial in the proceedings below to begin on January 16, 2024. The public has an interest in a stay of the trial pending final resolution of this appeal for the additional reason that the trial will interfere with campaign-related First Amendment rights. *See, e.g.*, *New York Progress v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) ("[S]ecuring First Amendment rights is in the public interest."); *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) ("'[I]junctions protecting First Amendment freedoms are always in the public interest.'" (quotation omitted)).

The First Amendment's "constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014) (quotation omitted). The "protection afforded is to the communication, to its source and to its recipients both." *Virginia State Bd. v. Virginia Citizens.*, 425 U.S. 748, 756 (1976); *Red Lion Broadcasting v. FCC*, 395 U.S. 367, 390 (1969) ("It is the right of the viewers and listeners, not the right of the broadcasters, which is paramount."). "[T]he right to receive ideas follows ineluctably from the sender's First Amendment right to send them." *Bd. of Educ. v. Pico*, 457 U.S. 853, 867 (1982). And this "right to receive ideas," *id.*, and right to "listen," *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017), have their "fullest and most urgent application" when it comes to voters'

ability to receive the campaign message of the leading candidate for the highest office in the Nation. *Susan B. Anthony List*, 573 U.S. at 162. These First Amendment rights provide additional support for President Trump's stay motions.

> ii. **President Trump Will Suffer Irreparable Injury Absent The Stay**

Subjecting President Trump to continued merits litigation in the district court while he vindicates his ability to present an immunity defense will result in irreparable injury.

While the immunity issue is pending, President Trump must not be subject to "additional burdens of litigation." *Trump*, 2023 WL 8615775, at *1; *Blassingame*, 2023 WL 8291481, at *22 ("Official immunity, including the President's official-act immunity…is 'an entitlement not to stand trial or face the other burdens of litigation.'" (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)); *cf. Davidson v. Scully*, 114 F.3d 12, 14 (2d Cir. 1997) (reasoning that qualified immunity "is designed to relieve government officials of the burdens of litigation as well as of the threat of damages." (cleaned up)); *Mitchell*, 472 U.S. at 525 ("[T]he essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action.").

Indeed, the very purpose of immunity is inherently and unavoidably frustrated by acknowledging a defendant's immunity only *after* he is forced to stand trial. Forcing President Trump to stand trial before he is able to obtain final resolution on

his presidential immunity defense would be the "quintessential form of prejudice" since, after the trial is concluded, "the appeal will be rendered moot." *In re Country Square*, 203 B.R. at 183; *see also Brooks*, 996 F.2d at 730 n.2 (immunity "'is effectively lost' if a case is erroneously permitted to proceed…while an interlocutory appeal of a denial of immunity is pending."). Stated differently, President Trump's "right to interlocutory appeal…without an automatic stay of the district court proceedings…is therefore like a lock without a key, a bat without a ball, a computer without a keyboard—in other words, not especially sensible." *Coinbase*, 599 U.S. at 741. Therefore, in this scenario, "*Griggs* dictates that the district court *must* stay its proceedings while the interlocutory appeal…is ongoing."[1] *Id.*

Further, in the absence of the requested stays, subjecting President Trump to continued litigation in the district court will cause irreparable harm and damage to his Sixth Amendment right to prepare his defenses in the criminal cases pending against him.  Media coverage relating to the January 2024 trial, which should not occur until the immunity issue is fully resolved, will also prejudice President Trump by tainting the pools of potential jurors for scheduled criminal trials in the District of Columbia (March 4), the Supreme Court of New York (March 25), and the

---

[1] While *Coinbase* concerned a stay under the Federal Arbitration Act, the case presented a straightforward application of the *Griggs* principle that "[a]n appeal…divests the district court of its control over those aspects of the case involved in the appeal." *Coinbase*, 599 U.S. at 740.  In *Coinbase*, as here, "the entire case [was] essentially 'involved in the appeal.'" *Id.* at 741.

Southern District of Florida (May 20). *See, e.g.*, *Patton v. Yount*, 467 U.S. 1025, 1031 (1984) ("[A]dverse pretrial publicity can create such a presumption of prejudice in a community that the jurors' claims that they can be impartial should not be believed.").

Therefore, President Trump will be irreparably harmed absent a stay of proceedings.

### iii.    A Stay Will Not Cause Substantial Injury To Plaintiff

To overcome the irreparable harm a defendant will suffer when litigation is not stayed pending review of their claim for immunity, a plaintiff must make a showing of significant and particularized hardship. *See e.g.*, *In Re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007). Here, Plaintiff is unable to make any such showing.

Mere delay, on its own, is not sufficient justification to deny a stay pending appeal. *See*, *e.g.*, *Goodman v Samsung Elecs.*, 17-CV-5539 (JGK), 2017 WL 5636286, at *3 (S.D.N.Y. Nov. 22, 2017) ("[M]ere delay in the litigation does not establish undue prejudice for purposes of a motion to stay."); *Molo Design v. Chanel*, 21-CV-01578-VEC, 2022 WL 2135628, at *3 (S.D.N.Y. May 2, 2022) ("Mere delay does not constitute prejudice."). Likewise, "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *FTC v.*

*Standard Oil*, 449 U.S. 232, 244 (1980); *see also Coinbase*, 599 U.S. at 746 (noting that "litigation-related burdens" do not "constitute irreparable harm.").

Further, President Trump disputes that Plaintiff was in any was prejudiced by the timing of his presentation of the immunity defense. The type of focused and narrow discovery relating to immunity that would be required here is exactly what the D.C. Circuit recently suggested in *Blassingame*. *See* 2023 WL 8291481, at *22 ("[D]iscovery bearing on the immunity question itself might be in order if the circumstances warrant it."). In any event, these stay motions would not require any discovery or impose additional costs on Plaintiff during the pendency of the appeal. Rather, the motions would simply require Plaintiff and the district court to maintain the *status quo* while President Trump evaluates and pursues legal options that are well within his rights. "[I]n cases of extraordinary public moment," a party "may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Landis v. North American.*, 299 U.S. 248, 256 (1936). This appeal presents such a case.

### iv.     There Is A Substantial Likelihood Of Success On The Merits

President Trump respectfully submits that there is also a "substantial possibility" of success on the merits. *Hirschfeld*, 984 F.2d at 39.

"The necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other stay factors." *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002); *see*, *e.g.*, *MyWebGrocer v. Hometown*, 375 F.3d 190, 192 (2d Cir. 2004) (noting that "sufficiently serious questions going to the merits" will satisfy this prong); *Citigroup v. VCG.*, 598 F.3d 30, 37 (2d Cir. 2010) (applying the "serious questions" standard).

Here, it is beyond dispute that this appeal presents serious questions since it involves the novel and unresolved question of whether presidential immunity is waivable. Regardless, under any standard, President Trump has a substantial likelihood of success on appeal.

For the reasons stated above in Part II(B), the district court's failure to stay the proceedings pending resolution of this appeal violated binding appellate precedent in *Griggs*, as illustrated by the stays that were imposed in *Clinton* and *Halkbank*, as well as the more recent stays in *Trump* and *Blassingame*. As discussed *supra*, the Panel's reliance on *Rodgers* was misplaced since the instant appeal does not involve "a plainly unauthorized notice of appeal which confers on this court the power to do nothing but dismiss the appeal." 101 F.3d at 252. To the contrary, it involves a "vexing" question of "first impression." Opinion at 2, 5. Therefore, under the controlling precedent of *Griggs* and *Coinbase*, a stay of district court proceedings is mandatory.

Moreover, the Panel's reasoning regarding subject matter jurisdiction turns in large part on the precarious—and, we submit, erroneous—decision to discard as a series of "'drive-by jurisdictional ruling[s]" the Supreme Court's binding jurisdictional analysis in *Nixon*, *Clinton*, and *Mississippi v. Johnson*. Opinion at 16 (quoting *Wilkins v. United States*, 598 U.S. 152, 159-60 (2023)). A "drive-by jurisdictional ruling" is a decision that "simply states that 'the court is dismissing for lack of jurisdiction when some threshold fact has not been established.'" *Wilkins*, 598 U.S. at 160 (quoting from *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 512 (2006)). Unlike this appeal, *Wilkins* and *Arbaugh* are statutory interpretation cases. The "drive-by" concept discussed in those opinions concerns whether an allegation relating to a statutory element is properly characterized as jurisdictional. *See Wilkins*, 598 U.S. at 165 ("[N]either this Court's precedents nor Congress' actions established that § 2409a(g) is jurisdictional."); *Arbaugh*, 546 U.S. at 516 ("[W]e hold that the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue."); *see also Reed Elsevier v. Muchnick*, 559 U.S. 154, 161 (2010) (describing "a marked desire to curtail…drive-by jurisdictional rulings" that "have sometimes mischaracterized claim-processing rules or elements of a cause of action as jurisdictional limitations, particularly when that characterization was not central to the case, and thus did not require close analysis").

*Wilkins* did not authorize this intermediate appellate court to depart from the Supreme Court's pertinent guidance. In *Nixon*, the Court devoted a paragraph-long subsection of the opinion to "exercising jurisdiction" and "whether separation-of-powers doctrine" barred "every exercise of jurisdiction over the President of the United States." 457 U.S. at 753-54. *Clinton* was hardly a "drive-by," either. The Court repeatedly discussed "jurisdiction" throughout the opinion, including three references to the scope of "Article III jurisdiction." 520 U.S. at 701, 702, 703. The Panel's distinction regarding the type of claim in *Mississippi v. Johnson*, Opinion at 15-16, does no violence to the fact that the decision represents another example of the Supreme Court addressing presidential immunity in jurisdictional terms: "[W]e are fully satisfied that this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties." 71 U.S. 475, 501 (1866). Accordingly, the reasoning of *Nixon*, *Clinton*, and *Johnson* supports President Trump's position to a much greater extent than the Panel acknowledged.

Finally, in light of the extraordinary importance of presidential immunity, which has been consistently recognized by the Supreme Court, was largely conceded by Plaintiff's counsel in *Blassingame*, and is further illustrated by the Special Counsel's recent filings, there is a substantial likelihood that President Trump will ultimately prevail on his argument that the district court abused its direction by declining to allow him to amend his answer to include the defense. Plaintiff would

not have been prejudiced in a cognizable way by such an amendment, as Plaintiff's fees and costs were being covered by a wealthy Democratic donor and discovery has continued on other issues (including a deposition on December 11, 2023).[2]  For all of these reasons, this Court should stay the district court proceedings until President Trump has had a complete opportunity to pursue all procedural operations and vindicate the important rights at issue.

WHEREFORE, President Trump respectfully requests that the instant motion be granted in its entirety.

Date: December 21, 2023
     New York, New York

*/s/ Michael T. Madaio*
Michael T. Madaio, Esq.
Alina Habba, Esq.
HABBA MADAIO & ASSOCIATES LLP
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
-and-
112 West 34th Street, 17th and 18th Floors
New York, New York 10120
Phone: (908) 869-1188
E-mail: mmadaio@habbalaw.com
*Attorneys for Defendant-Appellant,*
*President Donald J. Trump*

---

[2] *See* D.Ct. Doc. 237-2; Br. of Defendant-Appellant at 41, *Carroll v. Trump*, 23-0793 (2d Cir. Nov. 20, 2023) (Document 74) ("In April 2023, two weeks prior to trial, Plaintiff disclosed through counsel that she 'now recalls that at some point her counsel secured additional funding from a nonprofit organization to offset certain expenses and legal fees.'").

## **WORD COUNT CERTIFICATION**

I certify that this brief complies with the word limit requirements in Second Circuit Local Rule 27.1 and Federal Rule of Appellate Procedure 27(d)(2) because this brief contains 5,158 words.

*/s/ Michael T. Madaio*
MICHAEL T. MADAIO
